# EXHIBIT B

Pl.'s App. 034

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DIGERATI DISTRIBUTION & MARKETING, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CONRADICAL SÀRL; and CONRAD GRINDHEIM, <br><br> Defendants and Counter Plaintiffs, <br><br> v. <br><br> DIGERATI DISTRIBUTION & MARKETING, LLC; BIG SUGAR LLC; and SARAH ALFIERI, <br><br> Counter Defendants. | Civil Action No. 1:22-cv-1302-LY |

## DECLARATION OF TIM ILSLEY

I, Tim Ilsley, hereby state and declare as follows:

1.      My name is Tim Ilsley.   I am currently the financial controller of Digerati Distribution & Marketing, LLC and Big Sugar LLC.

2.      Unless otherwise stated, all the statements contained in this Declaration are within my personal knowledge or, as indicated, based on my review of business records of an act, event, or condition that were made at or near the time by—or from information transmitted by—someone with knowledge, kept in the course of regularly conducted business activities of Digerati or Big Sugar, and making the record was a regular practice of such business activities.

– 1 –

3.      I am knowledgeable about or have access to business records concerning key aspects of the business, including financial payments, accounts receivables, and sales reports from the platforms.    I am also familiar with parts of Digerati's relationship with Defendants Conradical Sarl and Conrad Grindheim based on seeing, hearing, and learning about several events during the time I worked at Digerati and based on the term of my work, my role at the company, and my review of business records.

4.      Digerati is a video game publisher.  Digerati makes investments into independent developers of video games to help bring their creations to market and into the hands of consumers through funding, distribution, marketing, and production; and in exchange, the developers grant Digerati licensing rights to their video games and branding so that Digerati may sell, sublicense, distribute, and publish the games and use the trademarks associated with a game.

5.      Digerati's video game portfolio is widely available in the United States and other international marketplaces to consumers for a fee and sold across a variety of platforms and in a variety of formats.   Digerati has earned a reputation for quality, reliability, and value.   Over the years, Digerati has earned significant goodwill by publishing over 60 video game titles.

6.      On September 10, 2021, Digerati and Conradical Sarl entered into the Video Game Licensing Agreement regarding the licensing of *The Outbound Ghost* ("Licensing Agreement").

7.      Digerati has not assigned or licensed the Licensed Rights in The Outbound Ghost back to Defendants.   Digerati has also not terminated the Licensing Agreement.

– 2 –

8.    Digerati was able to exploit *The Outbound Ghost* on the following platforms beginning around the respective period: (a) PC via Steam, GOG, Greenman Gaming, Humble, Epic, and Fanatical in September 2022, (b) PlayStation via Sony in November 2022, (c) Nintendo Switch via Nintendo in December 2022, and (d) physical products for the major consoles via Merge Games in December 2022.   Digerati has not been able to consistently exploit *The Outbound Ghost*.   Presently, most of the major Platforms are not allowing Digerati to sell the Game because of Defendants' statements contained in the DMCA takedown notices.

9.    Under the terms of the Licensing Agreement, Digerati had to pay advances to Conradical, advance funds for the porting and localization of the Game, and Revenue Share Payments.   Digerati paid approximately $66,072.63 in advances to Conradical.   Digerati paid $30,000 to Bromio for porting expenses related to the Game.   Digerati paid €10,744.72 to Locadile in localization fees.   Digerati paid $37,224.01 to Conradical as Revenue Share payment for the 4th Quarter of 2022.   Digerati set aside $30,102.73 for payment to Conradical as Revenue Share payment for the 1st Quarter of 2023 under the Licensing Agreement.   Attached as **Exhibit 1** to this Declaration is a true and correct copy of this summary with the corresponding documents upon which the summary is based.

10.    Under the terms of the Licensing Agreement, Digerati had to provide Conradical with a Statement showing the revenue that Digerati received at the end of each quarter and indicate the amount of Revenue Share payment that will be made to Conradical based on the respective percentage.   For each quarterly period, revenue does not include amounts for sales of the Game where Digerati has not received the net royalty payment from the platform within that quarter.   Digerati received $146,448.01 in revenue during the 4th

– 3 –

Quarter of 2022 related to the exploitation of the Game.   For this period, Conradical's Revenue Share payment was $37,224.01 as follows: (a) under the 20% share, $24,000 based on the Recoupable amount being $96,000—the Recoupable amount did not include the €10,744.72 to Locadile, and (b) under the 50% share, $13,224.01.   Digerati received $60,205.35 in revenue during the 1st Quarter of 2023.   For this period, Conradical's Revenue Share payment was $30,102.68 under the 50% share.   Attached as **Exhibit 2** to this Declaration is a true and correct copy of this summary with the corresponding documents upon which the summary is based.

11.   Under the terms of the Licensing Agreement, Digerati had to pay for revenues received within the quarter based on the date the monies were received.   The platforms make the royalty payments to Digerati based on their own reporting and pay periods—some are monthly and other are quarterly.   While sales may have occurred in September (or the 3rd Quarter), such revenue may not have been received by Digerati until the 4th Quarter.   As such, these reports and invoices are provide to corroborate the underlying information for the Quarterly Statements.   Further, Digerati has included records from Merge Games regarding their sales of the Game.   While these sales may have occurred, Digerati had not received payment from Merge Games within either the 4th Quarter of 2022 or the 1st Quarter of 2023. Attached as **Exhibit 3** to this Declaration is a true and correct copy of this summary with the corresponding documents upon which the summary is based.

12.   Financial compensation will not be enough to account for the Defendants' breaching actions because the Defendants' actions have caused and are still causing harm arising from Digerati's inability to exercise its Licensed Rights, causing Digerati's and Big Sugar's loss of quality control over the Game, causing damage to their reputation and

Pl.'s App. 038

goodwill, and causing harm to the video game portfolio offered by Digerati and Big Sugar and the other independent developers associated with such games. Such damage is irreparable.

13. Permitting Defendants to continue to prevent the Platforms from allowing Digerati to exercise its Licensed Rights to the Game would foreseeably cause an enormous financial loss for the business as a result of the past harm from the breaches, the inability to remedy the harm, and the likelihood that Defendants may encourage other developers to engage in similarly unlawful tactics to evade permitting others to sell their games despite prior written authorization.

14. Ordering as soon as possible that Defendants to specifically perform their obligations under the Licensing Agreement, retract the take-down requests submitted to the Platforms, consent to the Platforms replacing the Game with Digerati as the publisher, and permit Digerati to exploit the Game on the Platforms is likely to prevent this immediate harm from happening and prevent the harm from becoming irreparable.

15. Monetary damages alone cannot adequately compensate Digerati for ongoing breaches and misstatements because monetary damages fail to address the loss of control over and damage to the business's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to Digerati's business reputation and goodwill by acts of misleading the public and platforms.

16. Digerati's goodwill and reputation are irreparably damaged when its licensed rights to copyrights are interfered with by creators and then the creators misrepresent that Digerati is not an authorized seller, publisher, or distributor. Moreover, consumer brand

confidence is damaged, which can result in a loss of future sales and market share.   The extent of harm to Digerati's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

17.     Digerati is further irreparably harmed by the unauthorized interference with its exclusive rights to the copyrights because creators take away Digerati's ability to reproduce the copyrighted game and impacting resellers and purchasing consumers who relied upon these Licensed Rights.   Loss of copyright protections and remedies for the video games and, in turn, attempted involuntary transfers are neither calculable nor precisely compensable.

18.     Defendants' misstatements cause consumer confusion, which weakens Digerati's brand recognition and reputation.   Defendants' refusal to assist in ensuring the Game is free of defects results in an inferior quality product, which will result in increased skepticism and hesitance in consumers presented with genuine products of Digerati, resulting in a loss or undermining of Digerati's reputation and goodwill.

19.     Digerati is further irreparably damaged due to a loss of exclusivity.   Digerati's products are meant to be exclusive, which has been hindered by Defendants' indication that Defendants will independently release the Game. These statements damage and erode the exclusivity of the Game, as well as Digerati's reputation—resulting in a loss of unquantifiable future sales.

20.     Digerati and its business model and partners will suffer immediate and irreparable injury, loss, or damage if an injunction is not issued.

Pl.'s App. 040

I declare under penalty of perjury under the laws of the United State and the State of Texas that the foregoing is true and correct.

Executed on ___June_____ __9th____, 2023, at Montgomery County, Pennsylvania.


_Tim Ilsley_
Tim Ilsley (Jun 9, 2023 12:36 EDT)
**TIM ILSLEY**

Pl.'s App. 041