# EXHIBIT C

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DIGERATI DISTRIBUTION & MARKETING, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>CONRADICAL SÀRL; and CONRAD GRINDHEIM,<br><br>    Defendants and Counter Plaintiffs,<br><br>v.<br><br>DIGERATI DISTRIBUTION & MARKETING, LLC; BIG SUGAR LLC; and SARAH ALFIERI,<br><br>    Counter Defendants. | Civil Action No. 1:22-cv-1302-LY |

## DECLARATION OF ANDREW DENNIS

I, Andrew Dennis, hereby state and declare as follows:

1. My name is Andrew Dennis. I am currently the head of finance and the acting CEO of Digerati Distribution & Marketing, LLC and Big Sugar LLC.

2. Unless otherwise stated, all the statements contained in this Declaration are within my personal knowledge or, as indicated, based on my review of business records of an act, event, or condition that were made at or near the time by—or from information transmitted by—someone with knowledge, kept in the course of regularly conducted business activities of Digerati or Big Sugar, and making the record was a regular practice of such business activities.

– 1 –

3. I am knowledgeable about or have access to business records concerning key aspects of the business, including licensing agreements, development information, sales, advertising, marketing, and media coverage. I am also familiar with parts of Digerati's relationship with Defendants Conradical Sarl and Conrad Grindheim based on seeing, hearing, and learning about several events during the time I worked at Digerati and based on the term of my work, my role at the company, and my review of business records.

4. Digerati is a video game publisher. Digerati invests into independent developers of video games to help bring their creations to market and into the hands of consumers through funding, distribution, marketing, and production; and in exchange, the developers grant Digerati licensing rights to their video games and branding so that Digerati may sell, sublicense, distribute, and publish the games and use the trademarks associated with a game.

5. Digerati's video game portfolio is widely available in the United States and other international marketplaces to consumers for a fee and sold across a variety of platforms and in a variety of formats. Digerati has earned a reputation for quality, reliability, and value. Over the years, Digerati has earned significant goodwill by publishing over 60 video game titles.

6. On September 10, 2021, Digerati and Conradical Sarl entered into the Video Game Licensing Agreement regarding the licensing of The Outbound Ghost ("Licensing Agreement"). Based on my experience of the terms agreed with Defendants and my experience in the industry, the Licensing Agreement occurred under normal circumstances and has typical terms for the industry.

7. Digerati has not assigned or licensed the Licensed Rights in The Outbound Ghost back to Defendants. Digerati has also not terminated the Licensing Agreement

8. Despite Digerati's overall efforts to protect the brand and reputation of the company and *The Outbound Ghost*, Defendants have persisted in causing harm to the goodwill of Digerati and *The Outbound Ghost*.

9. Digerati was able to exploit *The Outbound Ghost* on the following platforms beginning around the respective period: (a) PC via Steam, GOG, Greenman Gaming, Humble, Epic, and Fanatical in September 2022, (b) PlayStation via Sony in November 2022, (c) Nintendo Switch via Nintendo in December 2022, and (d) physical products for the major consoles via Merge Games in December 2022. The physical products for the major consoles via Soft Source did not occur due to the actions of Defendants.

10. Digerati has not been able to consistently exploit *The Outbound Ghost*. Defendants have made several false statements regarding Digerati and *The Outbound Ghost* both to the Platforms and the public causing harm to the goodwill of Digerati and *The Outbound Ghost*. These statements have also made it difficult for Digerati to sell the Game and even completely prevented Digerati from selling the Game.

11. Defendants interfered with the Store Page for the Game by making changes without Digerati's approval and detrimentally impacted Digerati's ability to continue exercising its Licensed Rights. Around December 8, 2022, Defendants modified the Steam page for *The Outbound Ghost*, which made it difficult to exploit the Game on Steam. Attached as **Exhibit 1** to this Declaration is a true and correct copy of a screenshot of the Steam page for The Outbound Ghost and is a fair and accurate depiction of Defendants' modifications. On December 9, 2022, Digerati received an email from Steam informing

Digerati that it was removing *The Outbound Ghost* from Steam. Based on Digerati's records, Defendants requested that Steam reinstate The Outbound Ghost on December 10, 2022.

12. Defendants submitted takedown notices with the Platforms and several Platforms have refused to allow Digerati to continue exercising its Licensed Rights because of Defendants' false statements to the Platforms and Defendants' unauthorized removal of the Game from the Platforms. On December 7, 2022, Defendants submitted a "DMCA Request Inquiry" to Nintendo based on a copy of the email received by Digerati. Attached as **Exhibit 2** to this Declaration is a true and correct copy of the email and email chain received by Digerati.

13. Beginning on February 15, 2023, Defendants submitted a "DMCA Takedown Notice" to the Platforms Valve (Steam), Focus (Fanatical), GOG, Merge Games, Nintendo, Soft Source, Tesura, Greenman Gaming, Epic, and Sony based on Digerati's records. Attached as **Exhibit 3** to this Declaration are true and correct copies of Defendants' DMCA Takedown Notices to the Platforms in its possession and e-mail notifications from certain Platforms related to such notices. As a result of these initial notices, the Platforms generally removed The Outbound Ghost from their storefronts.

14. Beginning on February 21, 2023, Digerati submitted a "DMCA Counter Notification" to the Platforms Valve (Steam), Focus (Fanatical), GOG, Merge Games, Nintendo, Soft Source, Greenman Gaming, and Sony. Attached as **Exhibit 4** to this Declaration are true and correct copies of Defendants' DMCA Counter Notifications to the Platforms that Digerati was aware removed *The Outbound Ghost*. As a result of these counter notifications, the Platforms generally reinstated *The Outbound Ghost* on their storefronts.

15. Beginning on March 22, 2023, Defendants submitted a "DMCA Takedown Notice" to the Platforms requesting the removal of The Outbound Ghost "in light of Digerati's ongoing copyright infringement" and requested that the Platforms "not restore such material until the matter has been resolved." Attached as **Exhibit 5** to this Declaration are true and correct copies of e-mail notices from certain Platforms that provided Digerati with notice regarding Defendants' DMCA Final Notifications to such Platform. As a result of these notifications, these Platforms have removed *The Outbound Ghost* from their storefronts and refused to restore it until this Action is resolved. The Platforms that are *presently* refusing to restore the Game on the basis of Defendants' DMCA notices include Valve (Steam), Focus (Fanatical), GOG, Nintendo, Soft Source, Greenman Gaming, and Sony.

16. Defendants disclosed information about the Game to cause commercial damage to the Game and has failed to deliver or work with Digerati to deliver bug fixes, updates, or upgrades of the Game that Defendants develop as necessary to meet commercially reasonable quality standards. Defendants have posted several statements on Twitter that have caused harm to Digerati based on false statements. Attached as **Exhibit 6** to this Declaration are true and correct copies of these tweets.

17. Around January 30, 2023, Defendants clarified that the Twitter account for @OutboundGhost has been changed to @ConradicalGames and "is not my personal account." Attached as **Exhibit 7** to this Declaration is a true and correct copy of this tweet.

18. On December 8, 2022 around 1:17 PM [CT], "Conrad" with the Twitter account @ConradicalGames published a tweet with a video available on Twitter at, *inter alia*, https://twitter.com/ConradicalGames/status/1600932695579963392. Attached as **Exhibit 8** to this Declaration is a true and correct copy of an article published by NintendoLife

– 5 –

on December 12, 2022 regarding "The Outbound Ghost Publisher Takes Legal Action Following Dev Complaints And Steam Page Edits."

19. Before Defendants tweeted this video, Ryan Brown from Super Rare Games shared a screenshot of Conrad's transcript for this video with others on a shared Slack channel located on Digerati's Slack workspace indicating that "Conrad is putting this out in video form in 20 minutes." Attached as **Exhibit 9** to this Declaration is a true and correct copy of this Slack message.

20. Before Defendants tweeted this video claiming that they have "never played/approved this version of the game," Defendants tested the Switch version of the Game beginning in October 2022. Attached as **Exhibit 10** to this Declaration is a true and correct copy of some of these Slack messages.

21. On February 16, 2023 around 6:41 AM [CT], I e-mailed Conrad regarding Digerati paying the $37,224.01 Revenue Share Payment for the 4th Quarter of 2022. Attached as **Exhibit 11** to this Declaration is a true and correct copy of this e-mail.

22. On February 16, 2023 around 10:39 AM [CT], "Conrad" with the Twitter account @ConradicalGames published six tweets with videos available on Twitter at, *inter alia*, https://twitter.com/ConradicalGames/status/1626259972651638784, and available on YouTube at https://www.youtube.com/watch?v=4hLh7Z0HCUk. Generally, Defendants informed the public that "[w]e have DMCA'd our own indie game" and provided the alleged reasons as (1) console ports, (2) publisher suing Conradical, (3) payments, and (4) underreporting. Attached as **Exhibit 12** to this Declaration is a true and correct copy of an article published by Rock Paper Shotgun on February 20, 2023 regarding "Outbound

– 6 –

Ghost Devs DMCA Strike Their Own Game and Accuse Publisher of Withholding Royalties."

23.     Digerati has continually sought to protect its products, reputation, and vendors. Digerati has remained vigilant about its licensed rights to intellectual property rights in its video game portfolio.  Consequently, Defendants' actions of posting misrepresentations about Digerati are causing negative publicity, causing harm to Digerati's good standing with the Platforms by submitting false DMCA takedown notices, causing harm to Digerati's other independent developers by harming its reputation within the industry and with consumers, and causing harm to The Outbound Ghost by claiming Defendants did not create the Game, unnecessarily disclosing the bugs without assisting Digerati to remedy these issues, and misleading consumers about Digerati's Licensed Rights to the Game.  For example, Defendants responded to consumers who stated they found *The Outbound Ghost* to be "near flawless" by unnecessarily disclosing "bug[s]."   Attached as **Exhibit 13** to this Declaration are true and correct copies of these tweets.

24.     Further, Defendants injured Digerati's reputation among consumers as indicated by several reviews left by consumers on the Game, such as "Publisher screwed over the developer big time" and "[d]on't buy this game until the developer regains control from the publisher, or manages to release independently."   Attached as **Exhibit 14** to this Declaration are true and correct copies of these reviews.

25.     The Parties are situated such that specific performance of the obligations under the Licensing Agreement is not harsh or oppressive.    If Defendants are ordered to specifically perform their obligations by retracting the DMCA Takedown Notices, Defendants would receive Revenue Share Payments representing 50% of the adjusted gross revenue for the

Game. Further, Defendants would be incentivized—not obligated—to ensure the commercial success of the Game by delivering the bug fixes or working with Digerati to deliver such fixes and issues corrective statements with respect to the false tweets.

26. Financial compensation will not be enough to account for the Defendants' breaching actions because the Defendants' actions have caused and are still causing harm arising from Digerati's inability to exercise its Licensed Rights, causing Digerati's and Big Sugar's loss of quality control over the Game, causing damage to their reputation and goodwill, and causing harm to the video game portfolio offered by Digerati and Big Sugar and the other independent developers associated with such games. Such damage is irreparable.

27. Permitting Defendants to continue to prevent the Platforms from allowing Digerati to exercise its Licensed Rights to the Game would foreseeably cause an enormous financial loss for the business as a result of the past harm from the breaches, the inability to remedy the harm, and the likelihood that Defendants may encourage other developers to engage in similarly unlawful tactics to evade permitting others to sell their games despite prior written authorization.

28. Ordering as soon as possible that Defendants to specifically perform their obligations under the Licensing Agreement, retract the take-down requests submitted to the Platforms, consent to the Platforms replacing the Game with Digerati as the publisher, and permit Digerati to exploit the Game on the Platforms is likely to prevent this immediate harm from happening and prevent the harm from becoming irreparable.

29. Monetary damages alone cannot adequately compensate Digerati for ongoing breaches and misstatements because monetary damages fail to address the loss of control over

and damage to the business's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to my business's reputation and goodwill by acts of misleading the public and platforms.

30. Digerati's goodwill and reputation are irreparably damaged when its licensed rights to copyrights are interfered with by creators and then the creators misrepresent that Digerati is not an authorized seller, publisher, or distributor. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Digerati's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

31. Digerati is further irreparably harmed by the unauthorized interference with its exclusive rights to the copyrights because creators take away Digerati's ability to reproduce the copyrighted game and impacting resellers and purchasing consumers who relied upon these Licensed Rights. Loss of copyright protections and remedies for the video games and, in turn, attempted involuntary transfers are neither calculable nor precisely compensable.

32. Defendants' misstatements cause consumer confusion, which weakens Digerati's brand recognition and reputation. Defendants' refusal to assist in ensuring the Game is free of defects results in an inferior quality product, which will result in increased skepticism and hesitance in consumers presented with genuine products of Digerati, resulting in a loss or undermining of Digerati's reputation and goodwill.

33. Digerati is further irreparably damaged due to a loss of exclusivity. Digerati's products are meant to be exclusive, which has been hindered by Defendants' indication that Defendants will independently release the Game. These statements damage and erode the

exclusivity of the Game, as well as Digerati's reputation—resulting in a loss of unquantifiable future sales.

34.　　Digerati and its business model and partners will suffer immediate and irreparable injury, loss, or damage if an injunction is not issued.

Pl.'s App. 154

I declare under penalty of perjury under the laws of the United State and the State of Texas that the foregoing is true and correct.

Executed on _____June_____  __6th__, 2023, at Brighton, East Sussex, United Kingdom.

*[signature]*
**ANDREW DENNIS**