UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DIGERATI DISTRIBUTION & MARKETING, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 1:22-cv-1302-DII |
| CONRADICAL SÀRL; and CONRAD GRINDHEIM, | |
| Defendants. | |

CONRADICAL SÀRL,

        Counter Plaintiff,

    v.

DIGERATI DISTRIBUTION & MARKETING, LLC; BIG SUGAR LLC; and SARAH ALFIERI,

        Counter Defendants.

**COUNTER DEFENDANT SARAH ALFIERI'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

JAMES H. CREEDON
Texas Bar No. 24092299
jhcreedon@creedon.com
CHRISTIAN COWART
Texas Bar No. 24105748
ccowart@creedon.com

CREEDON PLLC
5 Cowboys Way, Suite 300
Frisco, Texas 75034
Tel.: (972) 850-6864
Fax: (972) 920-3290

*Counsel for Counter Defendant*
*SARAH ALFIERI*

Dated:   June 28, 2023

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 6

FACTUAL BACKGROUND ........................................................................... 7

LEGAL STANDARDS ..................................................................................... 8

ARGUMENTS & AUTHORITIES .................................................................. 9

I.  Texas Defamation Law. ................................................................... 9

II.  Conradical Failed to State a Defamation Claim. ......................... 12

    A.  Statements (a) and (b) Are Not Capable of a Defamatory Meaning.... 13

    B.  Statement (c) Is Not a Plausibly False Defamatory Statement............ 15

    C.  Statement (d) Is Not a Plausibly False Defamatory Statement. .......... 16

    D.  Statement (e) Is Not a Plausibly False Defamatory Statement............ 16

    E.  Conradical's Asserted Gist Is Not Plausibly Defamatory. .................. 18

CONCLUSION ............................................................................................. 19

## INDEX OF AUTHORITIES

**U.S. SUPREME COURT CASES**                                          **PAGES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................. 8

*Snyder v. Phelps*,
    562 U.S. 443 (2011) ........................................................................... 10

**U.S. CIRCUIT COURT CASES**

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .................................................................. 8

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*,
    912 F.3d 759 (5th Cir. 2019) .................................................................. 8

*Jones v. Alcoa, Inc.*,
    339 F.3d 359 (5th Cir. 2003) .................................................................. 8

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383, 387 (5th Cir. 2010) ......................................................... 8

**U.S. DISTRICT COURT CASES**

*Bates Energy Oil & Gas v. Complete Oildfield Svcs.*,
    361 F. Supp. 3d 633, 665 (W.D. Tex. 2019) ........................................ 12

*Corsi v. Infowars, LLC*,
    No. A-20-CV-298-LY,
    2021 WL 2115272 (W.D. Tex. May 25, 2021) ................................. 6, 13

*Immanuel v. Cable News Network, Inc.*,
    618 F. Supp. 3d 557, 563 (S.D. Tex. 2022) ...................................... 7, 19

*Parker v. Spotify USA, Inc.*,
    569 F. Supp. 3d 519, 531–36 (W.D. Tex. 2021) ............................. *passim*

*Roe v. Patterson*,
    No. 4:19-CV-179-SDJ,
    2023 WL 2787956 (E.D. Tex. Apr. 4, 2023) ...................................... 10

U.S. DISTRICT COURT CASES (CONT'D)                                PAGES

*Tu Nguyen v. Duy Tu Hoang*,
    318 F. Supp. 3d 983 (S.D. Tex. 2018) ........................................... 18, 19

*Tyson v. Austin Eating Disorders Partners, LLC*,
    No. A-13-CA-180-SS,
    2013 WL 4774757 (W.D. Tex. Aug. 30, 2013) .................................. 12

STATE SUPREME COURT CASES

*Bedford v. Spassoff*,
    520 S.W.3d 901 (Tex. 2017) ..................................................... 9

*Bentley v. Bunton*,
    94 S.W.3d 561 (Tex. 2002) ..................................................... 11

*D Mag. Partners, L.P. v. Rosenthal*,
    529 S.W.3d 429 (Tex. 2017) .................................................. 9, 11

*Dallas Morning News, Inc. v. Tatum*,
    554 S.W.3d 614 (Tex. 2018) ............................................... *passim*

*Hancock v. Variyam*,
    400 S.W.3d 59 (Tex. 2013) ..................................................... 11

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015) ................................................ 9, 10

*KBMT Operating Co. v. Toledo*,
    492 S.W.3d 710 (Tex. 2016) ................................................... 10

*Leyendecker & Assocs. v. Wechter*,
    683 S.W.2d 369 (Tex. 1984) .................................................... 9

*Musser v. Smith Protective Servs., Inc.*,
    723 S.W.2d 653 (Tex. 1987) ................................................... 11

*New Times, Inc. v. Isaacks*,
    146 S.W.3d 144 (Tex. 2004) ................................................... 12

*Turner v. KTRK Television, Inc.*,
    38 S.W.3d 103 (Tex. 2000) ................................................. 11, 13

STATE APPELLATE COURT CASES

*Brown v. Swett & Crawford of Texas, Inc.*,
    178 S.W.3d 373 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ........................... 14

## STATE APPELLATE COURT CASES (CONT'D)                                   PAGES

*Chehab v. Edgewood Dev., Ltd.*,
    619 S.W.3d 828 (Tex. App.—Houston [14th Dist.] 2021, no pet.) .................. *passim*

*Delta Air Lines v. Norris*,
    949 S.W.2d 422 (Tex. App.—Waco 1997, writ denied) ........................................ 12

*Double Diamond, Inc. v. Van Tyne*,
    109 S.W.3d 848 (Tex. App.—Dallas 2003, no pet.) .............................................. 12

*Durckel v. St. Joseph Hosp.*,
    78 S.W.3d 576 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ................... 11, 12

*Falk & Mayfield L.L.P. v. Molzan*,
    974 S.W.2d 821 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ................. 15

*Hong v. Havey*,
    551 S.W.3d 875 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ....................... 12

*Johnson v. Phillips*,
    526 S.W.3d 529 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) .................... 11

*Klentzman v. Brady*,
    456 S.W.3d 239 (Tex. App.–Houston [1st Dist.] 2014)
    *aff'd*, 515 S.W.3d 878 (Tex. 2017) ....................................................................... 10

*Memon v. Shaikh*,
    401 S.W.3d 407, 421 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ................. 9

*Van Der Linden v. Khan*,
    535 S.W.3d 179, 198–99 (Tex. App.–Fort Worth 2017, pet. denied) .................... 10

## STATUTES & RULES

FED. R. CIV. P. 12 ....................................................................................................... 8

TEX. CIV. PRAC. & REM. CODE § 73.001 .................................................................. 11

Counter Defendant Sarah Alfieri moves the Court for an order dismissing Counter Plaintiff Conradical Sàrl's defamation claim with prejudice pursuant to Rule 12(b)(6).[1]

## INTRODUCTION

Conradical amended its implausible defamation claim against Ms. Alfieri in response to her Motion to Dismiss [ECF No. 17].   Conradical did not assert any additional factual allegations relevant to Ms. Alfieri allegedly publishing a statement alleged to be defamatory. *See* First Am. Countercl. ¶¶ 1–137, ECF No. 21.   Instead, Conradical merely alleges one additional factual conclusion regarding what a reasonable person would perceive the gist of the video to be—alleging the gist as being that "Conradical undermined the game without a good faith basis."   *Id*. ¶ 82; *see also id*. ¶ 120 (adding gist conclusion).   Conradical's second-bite allegations reveal it cannot allege defamation.   Thus, any amendment would be futile.

First, the Counterclaim is devoid of any factual allegations that Ms. Alfieri personally engaged in defamatory conduct.[2]   Second, the publication contains a fair comment on the matters raised by Defendants in their own video published on Twitter the day before Digerati's December 9th video.   Third, the statements about the nature of Defendants' conduct and legal contentions are unactionable opinions.   Fourth, no reasonable person could consider the statements in the publication to be defamatory.   Finally, Conradical admits facts which makes the statements literally or substantially true.   For all these reasons, the Court should dismiss with prejudice the defamation claim against Ms. Alfieri for failure to state a claim.

---

[1] The First Amended Counterclaim only identifies Conradical Sarl as the Counter Plaintiff; however, the First Amended Counterclaim still alleges that Conrad is a party to the counterclaims.   First Am. Countercl. ¶ 5, ECF No. 21.   This Motion seeks dismissal of Defamation claim (Count VI) against Ms. Alfieri by all parties asserting it.
[2] *See Corsi v. Infowars, LLC*, No. A-20-CV-298-LY, 2021 WL 2115272, at *5 (W.D. Tex. May 25, 2021) (dismissing defamation claim against David Jones for failing to allege facts that he "personally engaged in defamatory conduct" or "supporting a basis to pierce the corporate veil").

## Factual Background

Digerati is a video game publisher.   First Am. Countercl. Ex. B at 2, ECF No. 21-2.
Digerati's products include physical and digital computer programs.   *See id*.   These games
are widely available in the United States marketplaces to consumers for a fee and sold through
direct sales channels.   *See* First Am. Answer ¶¶ 19–24, ECF No. 21.   On September 10,
2021, Digerati and Conradical entered into the Licensing Agreement regarding the licensing
of *The Outbound Ghost*.   First Am. Countercl. ¶ 24.   Digerati is the exclusive licensee of U.S.
Copyright Office Registration Nos. TX TX0009222190, which covers *The Outbound Ghost*.
*See* First Am. Compl. ¶¶ 19–24, 58, ECF No. 2.

Defendants published statements on Twitter on December 1st and 8th regarding *The
Outbound Ghost*.   *See* First Am. Compl. ¶¶ 46–54.[3]   In response on December 9, 2023,
Digerati released a video on its official corporate Twitter account, @DigeratiDM, in which
Ms. Alfieri provided a statement about *The Outbound Ghost* situation.   First Am. Countercl.
¶ 76.   In the video, Ms. Alfieri made statements including: "We've been blindsided by the
sudden negativity from Conrad, the game's developer."   *Ibid*.   In the First Amended
Counterclaim, Conradical asserts defamation against Ms. Alfieri based on this December 9th
video.   *See id*. ¶¶ 118–26.

---

[3] Because Counter Plaintiffs allege facts that make these statements central to its Counterclaim, the Court may consider
these statements.   *See Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 563 (S.D. Tex. 2022)
(considering statements related to the defamation from the plaintiff themselves from "videos, articles, and other
internet sources").   Here, the Court should consider the tweet published by Counter Plaintiffs their Twitter account
on December 8, 2022, https://twitter.com/ConradicalGames/status/1600932695579963392, as relevant to Digerati's
December 9, 2022 tweet.

## Legal Standards

The same standards for a motion to dismiss a complaint apply to a motion to dismiss a defendant's counterclaims.   Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]."[4]   The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face."[5]   "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged."[6]   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[7]  "Factual allegations must be enough to raise a right to relief above the speculative level."[8]   "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[9]   A defense "may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings" and "the pleadings fail to raise some basis" for controverting the defense.[10]

---

[4] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[6] *Ashcroft*, 556 U.S. at 678.
[7] *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).
[8] *Id.*
[9] *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).
[10] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

<u>A<small>RGUMENTS</small> & A<small>UTHORITIES</small></u>

## I.   Texas Defamation Law.

Under Texas law, to prevail on a defamation claim, a plaintiff must establish that: "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages (unless the statement constitutes defamation per se)."[11]

In any defamation case, a threshold legal question is whether the challenged publication is defamation per se or defamation per quod.[12]   Texas adheres to a distinction between defamation "per se," or "textual defamation," and defamation "per quod," or "extrinsic defamation."[13]   Defamation per se refers to defamation that arises from the statement's text without reference to any extrinsic evidence.[14] Defamation per quod is defamation that *does* require reference to extrinsic circumstances.[15]   The Texas Supreme Court has explained that a plaintiff "must assert" defamation per quod "in their petitions to present the theory at trial."[16]

A statement is considered defamation per se if, on its face, it falls within one of the following four categories: (1) it falsely charges a person with the commission of a crime;[17] (2) it falsely imputes that a person has a loathsome disease; (3) it falsely imputes sexual misconduct;[18] or (4) it injures a person in their office, profession, or occupation.[19]   Damages

---

[11] *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)).
[12] *See Lipsky*, 460 S.W.3d at 596 (observing that "whether a statement qualifies as defamation per se is generally a question of law").
[13] *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 626 (Tex. 2018).
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *See, e.g., Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984).
[18] *See, e.g., Memon v. Shaikh*, 401 S.W.3d 407, 421 (Tex. App.—Houston [14th Dist.] 2013, no pet.).
[19] *See, e.g., Bedford v. Spassoff*, 520 S.W.3d 901, 905 (Tex. 2017).

are presumed if the publication is defamation per se.[20]  If a challenged publication is determined to be defamation per quod, however, damages must be proven as an element of the claim.[21]

Regardless of whether the asserted defamation is per se or per quod, determining which side bears the burden of proof—either plaintiff to show falsity or defendant to show truth—depends on the extent to which the First Amendment is implicated.[22]  Where the speech challenged as defamatory involves a matter of public concern, the common law presumption of falsity no longer applies, such that the burden is shifted to the plaintiff to show falsity.[23]  "Whether a publication involves a matter of public concern is a question of law."[24] The Supreme Court has defined "matters of public concern" as encompassing "any matter of political, social, or other concern to the community," including those matters that are "[the] subject of *legitimate news interest*; that is, [the] subject of general interest and of value and concern to the public."[25]

If a challenged publication involves a matter of public concern, the plaintiff must point to evidence that would allow a factfinder to conclude that the challenged statements are false—"that is, that the gist of the statements was not substantially true."[26]  To determine the gist of an allegedly defamatory publication, courts are instructed to "construe the publication as a whole in light of the surrounding circumstances based upon how a person of ordinary

---

[20] *Lipsky*, 460 S.W.3d at 596.
[21] *Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2023 WL 2787956, at *3 (E.D. Tex. Apr. 4, 2023).
[22] *Id*.
[23] *See Van Der Linden v. Khan*, 535 S.W.3d 179, 198–99 (Tex. App.–Fort Worth 2017, pet. denied) ("Now, when a case implicates a constitutional issue—i.e., when a case involves a public official, a media defendant, or a matter of public concern, or any combination thereof—the burden is upon the plaintiff to prove falsity, not upon the defendant to prove truth.").
[24] *Klentzman v. Brady*, 456 S.W.3d 239, 257 (Tex. App.–Houston [1st Dist.] 2014), *aff'd*, 515 S.W.3d 878 (Tex. 2017).
[25] *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (quotations omitted) (emphasis added).
[26] *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 711 (Tex. 2016).

intelligence would perceive it."[27]   "It is well settled that the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements."[28]   And whether a publication is "defamatory," even if assumed to be false, is a matter of law for the Court.[29]

For a plaintiff to prevail, the publication must be capable of defamatory meaning.[30] Whether a publication is reasonably capable of a defamatory meaning is a question of law.[31] If a statement is not reasonably capable of a defamatory meaning, the statement is not defamatory as a matter of law, and the claim fails.[32]   This determination is not based on individual statements read in isolation; rather, a publication is defamatory if, construed as a whole in light of the surrounding circumstances, a person of ordinary intelligence would perceive it to be so.[33]   This inquiry is an objective one.[34]

A statement is defamatory if it tends to injure the subject's reputation, to expose him to public hatred, contempt, ridicule, or financial injury, or to impeach his honesty, integrity, or virtue.[35]   The statutory definition of libel is generally consistent with the understanding of defamation as stated in case law.[36]

---

[27] *D Mag.*, 529 S.W.3d at 434 (quotations omitted).

[28] *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (quotations omitted).

[29] *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987) ("The threshold question then, which is a question of law, is whether [the challenged] statements are reasonably capable of a defamatory meaning.").

[30] *See id.*

[31] *See Tatum*, 554 S.W.3d at 625; *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000).

[32] *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013).

[33] *Turner*, 38 S.W.3d at 114–15; *Durckel v. St. Joseph Hosp.*, 78 S.W.3d 576, 583 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

[34] *Tatum*, 554 S.W.3d at 624.

[35] *Johnson v. Phillips*, 526 S.W.3d 529, 534 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

[36] Tex. Civ. Prac. & Rem. Code § 73.001 (defining "libel" as "defamation expressed in written or other graphic form that tends to ... injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury").

– 11 –

The reasonable person is someone of "ordinary intelligence"—"a prototype of a person who exercises care and prudence, but not omniscience."[37]   This person is "no dullard" and represents "reasonable intelligence and learning," not the "lowest common denominator."[38]   A statement may be false, abusive, unpleasant, or objectionable without injuring a person's reputation such that it is defamatory.[39]   "Statements that neither identify the plaintiff nor set forth any wrongful conduct have no defamatory meaning."[40]

## II.   Conradical Failed to State a Defamation Claim.

Conradical does not allege that its defamation claim is per se or per quod.   *See* First Am. Countercl. ¶¶ 1–137.   The publication at issue is not defamatory per se because it does not falsely assert any of the four categories, namely, a crime, a loathsome disease, any sexual misconduct, or any professional injury.   *See id.* ¶ 76.   As such, Conradical must allege damages resulting from the alleged publication; however, Conradical failed to allege any plausible factual allegations as to the damages, if any, resulting from this publication or actual malice based on qualified privilege.[41]   *See id.* ¶¶ 123, 125 (containing conclusory allegations without any factual allegations that plausibly support these conclusions).   In addition, Conradical does not allege any set of facts that allow it to sue Ms. Alfieri directly or that her statements are not a fair comment on matters of public concern arising from Defendants' own December 8, 2022 video.[42]

---

[37] *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154, 157 (Tex. 2004).
[38] *Id.*
[39] *See Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.).
[40] *Durckel*, 78 S.W.3d at 583 (citing *Delta Air Lines v. Norris*, 949 S.W.2d 422, 426 (Tex. App.—Waco 1997, writ denied)).
[41] *See Tyson v. Austin Eating Disorders Partners, LLC*, No. A-13-CA-180-SS, 2013 WL 4774757, at *3 (W.D. Tex. Aug. 30, 2013) ("Because Tyson does not otherwise contest the applicability of the qualified privilege, his failure to plead any facts showing actual malice is dispositive of all his defamation claims.").
[42] Under Texas law, owners of limited liability companies are not liable for the torts of the entity, unless the plaintiff can allege some basis for piercing the corporate veil.   *See Hong v. Havey*, 551 S.W.3d 875, 885 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Bates Energy Oil & Gas v. Complete Oilfield Svcs.*, 361 F. Supp. 3d 633, 665 (W.D. Tex.

Moreover, Conradical's defamation claim fails because the publication is not capable of a defamatory meaning and no facts plausibly make the publication capable of a defamatory meaning.   Conradical identifies the following five comments as false for defamation:

**(a)**     "We've been blindsided by the sudden negativity from Conrad, the game's developer."

**(b)**     "Until literally hours before the console launch, we had enjoyed a cooperative and mutually pleasant working relationship with Conrad and we saw no indication of any dissatisfaction on his part."

**(c)**     "Unfortunately, [Conrad] has now wrongly told us he is terminating our contract, even going so far as attempting to use the tragic and sudden death of my husband as grounds for termination."

**(d)**     "In addition, Conrad has unlawfully tampered with the Steam page and attempted to take down the console versions as well."

**(e)**     "We are actively trying to make improvements and release patches, [*sic*] and have been met with repeated attempts to sabotage our efforts and sully our name."

First Am. Countercl. ¶ 76.   None of these statements considered as a whole or in isolation are plausibly false or defamatory.[43]   As such, the Court should dismiss Conradical's defamation claim against Ms. Alfieri.

## A.     Statements (a) and (b) Are Not Capable of a Defamatory Meaning.

No person of reasonable intelligence would view Statements (a) or (b) as defamatory. These statements describe a classic opinion and do not injure Conradical's reputation, expose

---

2019).   The defamation claim against Ms. Alfieri lacks factual allegations showing her personal engagement in the defamatory conduct or a basis to support piercing the corporate veil.   *See Corsi*, 2021 WL 2115272, at *5 (dismissing defamation claim against David Jones for failing to allege facts that he "personally engaged in defamatory conduct" or "supporting a basis to pierce the corporate veil").

[43] *See Turner*, 38 S.W.3d at 114 ("Because a publication's meaning depends on its effect on an ordinary person's perception, courts have held that under Texas law a publication can convey a false and defamatory meaning by omitting or juxtaposing facts, even though all the story's individual statements considered in isolation were literally true or non-defamatory." (citations omitted)).

them to public hatred, or ridicule them.[44]   No reasonable person of ordinary intelligence would find an opinion about "sudden negativity" and "dissatisfaction" harms any of Conradical's virtues.   At most, these statements implicitly reflect lack of clear communications between the parties; however, poor communication is not defamatory.

Conradical alleges that these statements are false by referencing comments and feedback from Grindheim to certain individuals at Digerati regarding the progress and status of *The Outbound Ghost*.   *See* First Am. Countercl. ¶ 77.   Conrad's Slack messages do not express negativity about *The Outbound Ghost*—let alone to the extent made in Defendants' published video.   *Compare id.* ¶¶ 30–32, *with* First Am. Compl. ¶ 46, ECF No. 2, *and* Answer ¶ 46 (admitting to publishing statement that "I never wanted this version of the game to come out but due to circumstances out of my control, this is the one that was released"). Regardless, these allegations have nothing to do with Ms. Alfieri's knowledge before Digerati published a video with its statements.   Ms. Alfieri's comments are also plainly Digerati's opinions about being surprised at the timing and nature of Defendants' videos and statements published on Twitter.[45]

None of Conradical's allegations show that they explicitly informed *Ms. Alfieri* that they were dissatisfied or had a negative view of Digerati.   In sum, the allegations do not demonstrate the falsity or defamatory nature of Statements (a) or (b).   Thus, the Court should dismiss with prejudice the defamation claim with respect to these statements.[46]

---

[44] *See Chehab v. Edgewood Dev., Ltd.*, 619 S.W.3d 828, 837 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("And we need not examine whether a statement's suggestion that another has breached a lease term by failing to pay rent is, in every instance, capable of defamatory meaning.").

[45] *See Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 383 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("Instead, the statement clearly expresses Hixon's opinion that Brown was likely to perform his work in such a manner that IBS's errors and omissions insurer would be required to provide coverage when he made a mistake.").

[46] *See Chehab*, 619 S.W.3d at 837.

– 14 –

## B.      Statement (c) Is Not a Plausibly False Defamatory Statement.

Ms. Alfieri's comments in Statement (c) about the nature of Conradical's contention that Defendants terminated the Licensing Agreement constitute Digerati's opinion.[47]   In the section titled "Conradical's Termination of the Licensing Agreement With Cause," Conradical provides specious facts that do not support termination of the Licensing Agreement—let alone establish the falsity.   *See* First Am. Countercl. ¶¶ 62–64.   Notably, Conradical admits that it must provide "30 calendar days after receipt of written notice of such default" to cure "such default."   *Id.* ¶ 28.   Nonetheless, Conradical does not allege any facts plausibly supporting written notice of default by Digerati being made—let alone 30 days before November 29, 2022.   *See id.* ¶ 63.   This statement is not actionable.

Moreover, Defendants used the death of Nick Alfieri as a purported reason to terminate the Licensing Agreement.   *See* First Am. Compl. Ex. B at 3, ECF No. 2-2 ("Change in control: the tragic and unexpected passing of Mr. Nick Alfieri, founder and CEO of the Publisher, has resulted in a severe change of circumstances affecting the Contract."); First Am. Answer ¶ 42.   Conradical certainly does not allege that it *did not* attempt to use Mr. Alfieri's death as a basis to terminate the Licensing Agreement.   *See* First Am. Countercl. ¶¶ 1–137.   While these statements constitute an opinion, Conradical admits facts that show the statements are not capable of a defamatory meaning by a reasonable person and, at a minimum, are substantially true.[48]

---

[47] *See Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (concluding that term "lawsuit abuse" is expression of opinion).
[48] *See Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 531–36 (W.D. Tex. 2021); *Chehab*, 619 S.W.3d at 837.

### C.    Statement (d) Is Not a Plausibly False Defamatory Statement.

Conradical also provides no allegations that plausibly render statement (d)—"Conrad has unlawfully tampered with the Steam page and attempted to take down the console versions as well"—as a false statement.   Conradical admits that on December 1, 2022 they stated, *inter alia*, "the Steam version is the one that I have approved."   First Am. Compl. ¶ 46; First Am. Answer ¶ 46.   Nonetheless, Conradical admits that Defendants "modified the Steam page for *The Outbound Ghost*" to say that "THIS GAME IS NO LONGER AUTHORIZED BY THE DEVELOPER."   First Am. Compl. ¶ 52; First Am. Answer ¶ 52. As such, the facts appear on the face of the Counterclaim that establish Statement (d) as true, which supports dismissal with prejudice.

Notwithstanding these admissions, Conradical failed to allege any facts that plausibly makes Statement (d) either defamatory or false.   In fact, Conradical never mentions Statement (d) again in the Counterclaim.   On Statement (d), Conradical has not even raised enough factual allegations to reach a speculative level—let alone sufficient facts to plausibly state a defamation claim against Ms. Alfieri.[49]

### D.    Statement (e) Is Not a Plausibly False Defamatory Statement.

Conradical mistakenly claims Statement (e) as defamation.   Statement (e) is that "[w]e are **actively trying to make improvements** and release patches, [*sic*] and have been met with repeated attempts to sabotage our efforts and sully our name."   First Am. Countercl. ¶ 76 (emphasis added).   In the Answer, Conradical alleges that this "falsely implies that Conradical was attempting to sabotage its own game and prevent Digerati from making improvements and releasing patches."   *Id*. at ¶ 78.   Conradical claims that "Conradical

---

[49] *See Parker*, 569 F. Supp. 3d at 531–36; *Chehab*, 619 S.W.3d at 837.

worked diligently with Digerati and Bromio to address the porting quality problems **until Conradical terminated the Licensing Agreement on November 29, 2022**." *Id.* at ¶ 79 (emphasis added).

Conradical alleges facts that demonstrate Statement (e) pertains to Nintendo and not Conradical—making it not actionable. *See* First Am. Countercl. ¶ 76.   Conradical alleges Digerati's December 4, 2022 statement that "[t]he patch . . . is still in approval with Nintendo and should be released in the coming weeks." *Id.* at ¶ 81.   Further, Conradical alleges that "Digerati has not made any material changes to *The Outbound Ghost* since at least December 13, 2022"—implicitly admitting that a material change occurred by December 13th and after Digerati's December 9th publication. *Ibid.*   These facts also ensure that a reasonable person would know that Nintendo is the person preventing the attempts to improve the game as of December 9, 2022.   The facts appear on the face of the Counterclaim that establish Statement (e) as true, which supports dismissal with prejudice.

In addition, Conradical conflates its actions taken before November 29, 2022 as actions taken through the time of Digerati's Statement (e) on December 9, 2022—when the video was released on Digerati's Twitter account. *See* First Am. Countercl. ¶ 76. Conradical does not allege any facts pertaining to Grindheim or Conradical's efforts to improve *The Outbound Ghost* from November 29th to December 9th.   As indicated above, Conradical admitted that Defendants modified the Steam page on December 8th. *See* First Am. Compl. ¶ 52; First Am. Answer ¶ 52.   Conradical provides no factual allegations about its actions to improve *The Outbound Ghost* because Defendants admit allegations that would directly refute such facts and no factual basis exists for Conradical to even make such an allegation under Rule 11. By admitting to facts demonstrating Statement (e) is not

defamatory and ignoring this gap in time, Conradical failed to allege facts that plausibly support Statement (e) constituting defamation.   Because none of the statements plausibly support defamation, the Court should dismiss Conradical's claim against Ms. Alfieri with prejudice.[50]

### E.    Conradical's Asserted Gist Is Not Plausibly Defamatory.

No person of reasonable intelligence would view the gist of all the Statements (a)–(e) as defamatory—let alone plausibly conclude the gist as "Conradical undermined the game without a good faith basis."[51]   First Am. Countercl. ¶ 82.   Viewing Statements (a)–(e), a person of reasonable intelligence could only plausibly arrive at the conclusion that Digerati is responding to the negativity from Defendants.   *See id.* at ¶ 76.   Thus, Conradical cannot make a rigorous showing that the gist of this video's defamatory meaning.[52]

The Statements (a)–(e) do not plausibly support Conradical's alleged gist as "Conradical undermined the game without a good faith basis."   First Am. Countercl. ¶ 82. First, none of these statements pertain to Conradical undermining the Game.   *See id.* at ¶ 76. Second, most of these statements are relevant to the nature and content of Conradical's publicity, which Conradical admits as truth.   For example, Conradical admits Statement (e) that Defendants "modified the Steam page for *The Outbound Ghost*" to say that "THIS GAME IS NO LONGER AUTHORIZED BY THE DEVELOPER."   First Am. Compl. ¶ 52; First Am. Answer ¶ 52.[53]   Finally, Statement (e) does not expressly or implicitly claim that

---

[50] *See Parker*, 569 F. Supp. 3d at 531–36; *Chehab*, 619 S.W.3d at 837.

[51] *See Nat'l Rifle Ass'n of Am. v. Ackerman Mcqueen, Inc.*, No. 3:19-CV-2074-G, 2021 WL 3618113, at *9 (N.D. Tex. Aug. 16, 2021) ("For a publisher to be liable for defamation-by-gist, 'the 'plaintiff must make an especially rigorous showing' of the publication's defamatory meaning.'").

[52] *See Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1011 (S.D. Tex. 2018) (concluding an article cannot be considered defamatory where "[t]he gist of this article is a defense to something Tu Nguyen had written, not an accusation that Tu Nguyen is affiliated with the communist party in Vietnam.").

[53] Other examples are that (1) Conradical admits Statement (a) that they published negative statements, and the remainder is Digerati's opinion regarding it being sudden; *see* First Am. Compl. ¶ 46, *and* First Am. Answer ¶ 46

**Conradical** did anything **at that time** to prevent "mak[ing] improvements" or "release[ing] patches."   First Am. Countercl. ¶ 76.   Taking the factual allegations as true under Rule 12, none of these statements plausibly allow the Court to draw Conradical's claimed gist for the December 9, 2022 video as a reasonable inference.[54]

Because Conradical's alleged gist is not plausible and the only plausible gist is that Digerati's December 9, 2022 video responds to Conradical's previous public statements, the Court must conclude that the gist of the video is not plausibly defamatory.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice Conradical's Defamation claim (Count VI) against Ms. Alfieri for failure to state a claim.

---

(admitting to publishing statement that "I never wanted this version of the game to come out but due to circumstances out of my control, this is the one that was released"); and (2) Conradical demonstrates that Statement (c) regarding using the death of Mr. Alfieri to terminate the Licensing Agreement—is true by seeking in its Answer to be excused from performance based on "Mr. Alfieri's death," Answer at 21.

[54] *See Immanuel*, 618 F. Supp. 3d at 566 ("The record makes this allegation implausible, because CNN used so many of her own words, from her speech and from the sermons she posted to her YouTube page."); *Tu Nguyen*, 318 F. Supp. 3d at 1011–15 (dismissing defamation claim where gist could not be considered defamatory despite stating that plaintiff was a "saboteur[]").

Dated:   June 28, 2023                    Respectfully,

**JAMES H. CREEDON**
Texas Bar No. 24092299
jhcreedon@creedon.com
**CHRISTIAN COWART**
Texas Bar No. 24105748
ccowart@creedon.com

**CREEDON PLLC**
5 Cowboys Way, Suite 300
Frisco, Texas 75034
Tel:     (972) 850-6864
Fax:    (972) 920-3290

**COUNSEL FOR PLAINTIFF &
COUNTER DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that, on June 28, 2023, the foregoing document has been filed unsealed with the Clerk via the Court's CM/ECF system and served to the following who are deemed to have consented to electronic service via the Court's NEF system or the registered users' e-mail accounts per Rule 5(b), Local Rule CV-5(a), and Electronic Filing Procedures § 14(a):

**Arthur Gollwitzer , III**
JACKSON WALKER LLP
100 Congress Avenue
Suite 1100
Austin, TX 78701
agollwitzer@jw.com

*representing*

**Conradical Sarl**
(*Defendant & Counter Plaintiff*)

**Conrad Grindheim**
(*Defendant & Counter Plaintiff*)

**CHRISTIAN COWART**