UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DIGERATI DISTRIBUTION & MARKETING, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>CONRADICAL SÀRL; and<br>CONRAD GRINDHEIM,<br><br>                    Defendants.<br>───────────────────────<br>CONRADICAL SÀRL,<br><br>                    Counter Plaintiff,<br><br>        v.<br><br>DIGERATI DISTRIBUTION & MARKETING, LLC; BIG SUGAR LLC; and SARAH ALFIERI,<br><br>                    Counter Defendants. | Civil Action No. 1:22-cv-1302-DII |

## ANSWER TO FIRST AMENDED COUNTERCLAIM BY COUNTER DEFENDANT DIGERATI DISTRIBUTION & MARKETING LLC

Counter Defendant Digerati Distribution & Marketing LLC hereby answers and asserts defenses to the claims and allegations in Counter Plaintiff's First Amended Counterclaim [ECF No. 21] pursuant to Federal Rules of Civil Procedure 7 and 8.

## RESPONSES TO INDIVIDUAL PARAGRAPHS

Numbered paragraphs below correspond to the like-numbered paragraphs in the Counterclaim.   Except as specifically admitted, Counter Defendant denies the allegations in the Counterclaim, including the headings, subheadings, and illustrations contained within the Counterclaim.   Headings and footnotes contained within the Counterclaim are not

substantive allegations to which an answer is required.   In addition, the headings in this Answer are intended as signposts and are either quoted without marks and may have omissions indicated by the insertion of an ellipsis.   To the extent headings are substantive allegations to which an answer is required, Counter Defendant denies the allegations.

### INTRODUCTION

1.      Counter Defendant denies the allegations in Paragraph 1.

2.      Counter Defendant denies the allegations in Paragraph 2.

3.      Counter Defendant denies the allegations in Paragraph 3.

### PARTIES

4.      Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4, and, on that basis, denies them.

5.      Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5, and, on that basis, denies them.

6.      Counter Defendant admits the allegations in Paragraph 6.

7.      Counter Defendant admits that Ms. Alfieri is an individual domiciled in Texas. Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 7.

8.      Counter Defendant admits that Big Sugar is a limited liability company organized and existing under the laws of the State of Texas.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 8.

9.      No response is required to Paragraph 9.

### JURISDICTION & VENUE

10.     Counter Defendant admits that the Counterclaim purports to allege claims under the Copyright Act, the Lanham Act, the Texas Theft Liability Act, and Texas common law but denies that there is any legal or factual basis for such action.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 10.

11.     Counter Defendant admits that the District Court has subject matter jurisdiction over this action.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 11.

12.     Counter Defendant admits that the District Court has subject matter jurisdiction over this action.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 12.

13.     Counter Defendant admits that the District Court has subject matter jurisdiction over this action.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 13.

14.     Counter Defendant admits that the Counterclaim purports to be an action between citizens of different States where the matter in controversy purports to exceed the sum or value of $75,000, exclusive of interest and costs, and on that basis the District Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), but denies that there is any legal or factual basis for such action.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 14.

15.     Counter Defendant admits that the District Court has personal jurisdiction over Counter Defendant for this action.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 15.

16.     Counter Defendant admits that venue is proper in this District and Division for this action.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 16.

## FACTS

**A.     The Outbound Ghost Game**

17.     Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, and, on that basis, denies them.

18.     Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, and, on that basis, denies them.

19.     Counter Defendant admits that "[t]he Outbound Ghost is an adventure role-playing game ("RPG") about helping ghosts ascend to the afterlife in which players can battle monsters, craft badges to earn abilities, and explore a haunted town."   Counter Defendant further admits that "[t]he Outbound Ghost has a colorful paper-cutout art style and engaging gameplay."   Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 19, and, on that basis, denies them.

20.     Counter Defendant admits that "[t]he Outbound Ghost later was made available for play on other platforms, including Nintendo Switch, PlayStation 4, and PlayStation 5."   Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 20, and, on that basis, denies them.

21.     Counter Defendant admits that the Outbound Ghost is registered as a copyrighted computer program under U.S. Copyright Registration No. TX0009222190 and

– 4 –

that a copy of that copyright registration certificate is attached as Exhibit A to the Counterclaim [ECF No. 21-1]. Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21, and, on that basis, denies them.

22.     Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and, on that basis, denies them.

**B.     The Licensing Agreement with Digerati**

23.     Counter Defendant admits that "Nick Alfieri passed away in May 2022, before The Outbound Ghost was first released" and that Nick Alfieri was the "then-CEO of Digerati." Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23, and, on that basis, denies them.

24.     Counter Defendant admits that "Conradical and Digerati entered into a Video Game Licensing Agreement dated September 10, 2021 (the 'Licensing Agreement')" and that a copy of that Licensing Agreement is attached as Exhibit B to the Counterclaim [ECF No. 21-2]. The terms of the Licensing Agreement speak for themselves. Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 24.

25.     Counter Defendant admits that "Conradical and Digerati enjoyed a positive, collaborative working relationship in the beginning." Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 25.

26.     The terms of the Licensing Agreement speak for themselves. Inasmuch as the allegations in Paragraph 26 purport to characterize or quote the terms of the Licensing Agreement, Counter Defendant denies that they have been fairly and accurately

characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 26.

27.     The terms of the Licensing Agreement speak for themselves.   Inasmuch as the allegations in Paragraph 27 purport to characterize or quote the terms of the Licensing Agreement, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 27.

28.     Counter Defendant admits that Paragraph 8(c) of the Licensing Agreements provides that "[e]ither Party may terminate this Agreement: (i) upon a material default or breach by the other Party of any of its obligations under this Agreement, unless within 30 calendar days after receipt of written notice of such default, the defaulting Party remedies such default (unless such default is incapable of being cured)."   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 28—and in particular, denies the allegation that Conradical has "the right to terminate the Licensing Agreement."

**C.   Digerati's . . . .**

29.     Counter Defendant denies the allegations in Paragraph 29.

30.     Counter Defendant admits that "Digerati hired another company known as Bromio to assist in porting the game to other platforms" and that around September 2022, Conradical, Digerati, and Bromio began holding weekly telephone conferences.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 30.

31.     Counter Defendant admits that Trey Armer is the head of marketing at Digerati and Big Sugar.   Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 31 that "[a] true and correct screen-shot of

the October 10, 2022, conversation between Conrad Grindheim and Mr. Armer on Slack is set forth and, on that basis, denies them.   The Slack messages speak for themselves. Inasmuch as the allegations in Paragraph 31 purport to characterize or quote the Slack messages regarding the gameplay of The Outbound Ghost, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 31.

32.     Counter Defendant denies the allegations in Paragraph 32.

33.     Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 33 that "Conradical hoped the problems with Digerati could be resolved and would not negatively impact the game's success," and, on that basis, denies them.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 33.

34.     Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 34 that "[t]rue and correct copies of [messages] posted on Twitter and YouTube regarding the Nintendo Switch version of The Outbound Ghost are set forth below," and, on that basis, denies them.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 34.

35.     The allegations in the First Amended Complaint and the terms of the Licensing Agreement speak for themselves.   Inasmuch as the allegations in Paragraph 35 purport to characterize or quote the allegations in the First Amended Complaint and the terms of the Licensing Agreement, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 35.

**D.      Digerati's . . . .**

36.      Counter Defendant denies the allegations in Paragraph 36.

37.      The terms of the Licensing Agreement speak for themselves.   Inasmuch as the allegations in Paragraph 37 purport to characterize or quote the terms of the Licensing Agreement, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 37.

38.      The terms of the Licensing Agreement speak for themselves.   Inasmuch as the allegations in Paragraph 38 purport to characterize or quote the terms of the Licensing Agreement, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 38.

39.      Counter Defendant denies the allegations in Paragraph 39.

40.      Counter Defendant denies the allegations in Paragraph 40.

41.      Counter Defendant denies the allegations in Paragraph 41.

42.      Counter Defendant admits that in or around March 2022, Digerati entered into a sublicensing agreement with Soft Source.   Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in second, third, and forth sentence of Paragraph 42, and, on that basis, denies them.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 42.

43.      Counter Defendant admits that Digerati received approximately $146,448.01 in payments for The Outbound Ghost in the fourth quarter of 2022.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 43.

44.     Counter Defendant admits that Digerati paid $37,224.01 to Conradical as a Revenue Share Payment on or about February 15, 2023.   Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 44 that "Digerati made this payment after Conradical sent take-down notices under the [DMCA]," and, on that basis, denies them.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 44.

45.     Counter Defendant admits that Mike Corrigan works at Digerati and that Digerati entered into an agreement with Epic Games.   Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 45 that "[a] true and correct screen-shot of the October 7, 2022, conversation between Conrad Grindheim and Mike Corrigan of Digerati on Slack is set forth below," and, on that basis, denies them.   The agreement with Epic Games and the Slack messages speak for themselves. Inasmuch as the allegations in Paragraph 45 purport to characterize or quote the agreement with Epic Games and the Slack messages regarding the terms of the Epic Games agreement, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 45.

46.     Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 46 that "[a]s of at least November 29, 2022, 'achievements' were live on the Epic Games store," and, on that basis, denies them.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 46.

47.     Counter Defendant admits that Digerati entered into an agreement with Merge Games around June 24, 2022 and that Digerati received a $30,000 advance from Merge

Games around October 2022.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 47.

48.     Counter Defendant denies the allegations in Paragraph 48.

49.     Counter Defendant denies the allegations in Paragraph 49.

50.     The terms of the Licensing Agreement speak for themselves.   Inasmuch as the allegations in Paragraph 50 purport to characterize or quote the terms of the Licensing Agreement, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 50.

**E.     Digerati's . . . .**

51.     The terms of the Licensing Agreement speak for themselves.   Inasmuch as the allegations in Paragraph 51 purport to characterize or quote the terms of the Licensing Agreement, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 51.

52.     Counter Defendant admits that Digerati received a $20,000 advance from Soft Source around March 2022.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 52.

53.     Counter Defendant denies the allegations in Paragraph 53.

54.     Counter Defendant admits that around February 2023, Digerati provided Conradical with a Statement regarding the Revenue Share for the fourth quarter of 2022. Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 54..

55. The terms of the Licensing Agreement speak for themselves. Inasmuch as the allegations in Paragraph 55 purport to characterize or quote the terms of the Licensing Agreement, Counter Defendant denies that they have been fairly and accurately characterized. Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 55.

56. Counter Defendant admits that Digerati paid fees to Bromio regarding porting The Outbound Ghost to other platforms. Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 56.

57. Counter Defendant admits that Digerati paid fees to Locadile regarding localizing The Outbound Ghost to other languages. Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 57.

**F.      Digerati's . . . .**

58. The terms of the Licensing Agreement speak for themselves. Inasmuch as the allegations in Paragraph 58 purport to characterize or quote the terms of the Licensing Agreement, Counter Defendant denies that they have been fairly and accurately characterized. Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 58.

59. Counter Defendant denies the allegations in Paragraph 59.

60. Counter Defendant admits that Digerati worked with Conradical to deliver access keys to the Backers. Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third and fourth sentences of Paragraph 60, and, on that basis, denies them. The Slack messages speak for themselves. Inasmuch as the allegations in Paragraph 60 purport to characterize or quote the Slack messages

regarding the Kickstarter Backers for The Outbound Ghost, Counter Defendant denies that they have been fairly and accurately characterized.    Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 60.

61.    Counter Defendant denies the allegations in Paragraph 61.

**G.    Conradical's Termination . . . .**

62.    Counter Defendant denies the allegations in Paragraph 62.

63.    Counter Defendant denies the allegations in Paragraph 63.

64.    Counter Defendant admits that Conradical sent Digerati letters dated December 6, 2022, December 15, 2022, and December 21, 2022.    Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 64.

**H.    Digerati's Ongoing . . . .**

65.    Counter Defendant denies the allegations in Paragraph 65.

66.    Counter Defendant denies the allegations in Paragraph 66.

67.    Counter Defendant admits that on or about February 16, 2023, Conradical notified various online platforms and represented to such platforms that Digerati had no right to distribute The Outbound Ghost and that the distributors should cease offering The Outbound Ghost for sale on their websites under the DMCA.    The DMCA notices speak for themselves.    Inasmuch as the allegations in Paragraph 67 purport to characterize or quote the DMCA notices regarding The Outbound Ghost, Counter Defendant denies that they have been fairly and accurately characterized.    Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 67.

68.    Counter Defendant admits that on or about February 21, 2023, Digerati responded to such notices by disputing Conradical's copyright infringement claims.    The DMCA counter-notices speak for themselves.    Inasmuch as the allegations in Paragraph 68

purport to characterize or quote the DMCA counter-notices regarding The Outbound Ghost, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 68.

69.     Counter Defendant denies the allegations in Paragraph 69.

70.     Counter Defendant denies the allegations in Paragraph 70.

**I.      Big Sugar's . . . .**

71.     Counter Defendant denies the allegations in Paragraph 71.

72.     Counter Defendant denies the allegations in Paragraph 72.

73.     Counter Defendant denies the allegations in Paragraph 73.

**J.      Digerati's and Alfieri's . . . .**

74.     Counter Defendant denies the allegations in Paragraph 74.

75.     Counter Defendant denies the allegations in Paragraph 75.

76.     Counter Defendant admits that on December 9, 2022, Digerati posted a video statement    on    its    Twitter    account    at    the    following    URL: https://twitter.com/DigeratiDM/status/1601245863979859968.   The statements in this video speak for themselves.   Inasmuch as the allegations in Paragraph 76 purport to characterize or quote statements in this video, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 76.

77.     Counter Defendant denies the allegations in Paragraph 77.

78.     Counter Defendant denies the allegations in Paragraph 78.

79.     Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 79, and, on that basis, denies them.   The Slack messages speak for themselves.   Inasmuch as the allegations in

– 13 –

Paragraph 79 purport to characterize or quote the Slack messages regarding the gameplay quality for The Outbound Ghost, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 79.

80.    Counter Defendant admits that on occasion, "Conradical provided advice as to how to fix problems with The Outbound Ghost."   Counter Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 80, and, on that basis, denies them.    The Slack messages speak for themselves. Inasmuch as the allegations in Paragraph 80 purport to characterize or quote the Slack messages regarding the gameplay quality for The Outbound Ghost, Counter Defendant denies that they have been fairly and accurately depicted and characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 80.

81.    Counter Defendant admits that on December 4, 2022, Digerati posted a statement on its Twitter account regarding The Outbound Ghost.   The statements in this tweet speak for themselves.   Inasmuch as the allegations in Paragraph 81 purport to characterize or quote statements in this tweet, Counter Defendant denies that they have been fairly and accurately characterized.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 81.

82.    Counter Defendant denies the allegations in Paragraph 82.

## FIRST COUNTERCLAIM – BREACH OF CONTRACT
### (Against Digerati)

83.    Counter Defendant incorporates by reference each of its responses to Paragraphs 1–82 and reasserts them as though fully set forth herein.

– 14 –

84.     Counter Defendant admits that the Licensing Agreement is a valid contract that exists between Conradical and Digerati.   Except to the extent expressly admitted, Counter Defendant denies the allegations in Paragraph 84.

85.     Counter Defendant denies the allegations in Paragraph 85.

86.     Counter Defendant denies the allegations in Paragraph 86.

87.     Counter Defendant denies the allegations in Paragraph 87.

88.     Counter Defendant denies the allegations in Paragraph 88.

## SECOND COUNTERCLAIM – COPYRIGHT INFRINGEMENT
### (Against Digerati)

89.     Counter Defendant incorporates by reference each of its responses to Paragraphs 1–88 and reasserts them as though fully set forth herein.

90.     Counter Defendant denies the allegations in Paragraph 90.

91.     Counter Defendant denies the allegations in Paragraph 91.

92.     Counter Defendant denies the allegations in Paragraph 92.

93.     Counter Defendant denies the allegations in Paragraph 93.

94.     Counter Defendant denies the allegations in Paragraph 94.

95.     Counter Defendant denies the allegations in Paragraph 95.

## THIRD COUNTERCLAIM – TRADEMARK INFRINGEMENT
### (Against Digerati)

96.     Counter Defendant incorporates by reference each of its responses to Paragraphs 1–95 and reasserts them as though fully set forth herein.

97.     Counter Defendant denies the allegations in Paragraph 97.

98.     Counter Defendant denies the allegations in Paragraph 98.

99.     Counter Defendant denies the allegations in Paragraph 99.

100.    Counter Defendant denies the allegations in Paragraph 100.

101.    Counter Defendant denies the allegations in Paragraph 101.

## FOURTH COUNTERCLAIM – FRAUD
### (Against Digerati)

102.    Counter Defendant incorporates by reference each of its responses to Paragraphs 1–101 and reasserts them as though fully set forth herein.

103.    Counter Defendant denies the allegations in Paragraph 103.

104.    Counter Defendant denies the allegations in Paragraph 104.

105.    Counter Defendant denies the allegations in Paragraph 105.

106.    Counter Defendant denies the allegations in Paragraph 106.

107.    Counter Defendant denies the allegations in Paragraph 107.

## FIFTH COUNTERCLAIM – UNJUST ENRICHMENT
### (Against Big Sugar and Digerati)

108.    Counter Defendant incorporates by reference each of its responses to Paragraphs 1–107 and reasserts them as though fully set forth herein.

109.    Counter Defendant denies the allegations in Paragraph 109.

110.    Counter Defendant denies the allegations in Paragraph 110.

111.    Counter Defendant denies the allegations in Paragraph 111.

112.    Counter Defendant denies the allegations in Paragraph 112.

113.    Counter Defendant denies the allegations in Paragraph 113.

114.    Counter Defendant denies the allegations in Paragraph 114.

115.    Counter Defendant denies the allegations in Paragraph 115.

116.    Counter Defendant denies the allegations in Paragraph 116.

117.    Counter Defendant denies the allegations in Paragraph 117.

## SIXTH COUNTERCLAIM – DEFAMATION
### (Against Digerati and Sarah Alfieri)

118.    Counter Defendant incorporates by reference each of its responses to Paragraphs 1–117 and reasserts them as though fully set forth herein.

119.    Counter Defendant denies the allegations in Paragraph 119.

120.    Counter Defendant denies the allegations in Paragraph 120.

121.    Counter Defendant denies the allegations in Paragraph 121.

122.    Counter Defendant denies the allegations in Paragraph 122.

123.    Counter Defendant denies the allegations in Paragraph 123.

124.    Counter Defendant denies the allegations in Paragraph 124.

125.    Counter Defendant denies the allegations in Paragraph 125.

126.    Counter Defendant denies the allegations in Paragraph 126.

## SEVENTH COUNTERCLAIM – VIOLATION OF THE TEXAS THEFT LIABILITY ACT
### (Against Digerati and Big Sugar)

127.    Counter Defendant incorporates by reference each of its responses to Paragraphs 1–126 and reasserts them as though fully set forth herein.

128.    Counter Defendant denies the allegations in Paragraph 128.

129.    Counter Defendant denies the allegations in Paragraph 129.

130.    Counter Defendant denies the allegations in Paragraph 130.

## EIGHTH COUNTERCLAIM – MONEY HAD & RECEIVED
### (Against Big Sugar and Digerati)

131.    Counter Defendant incorporates by reference each of its responses to Paragraphs 1–130 and reasserts them as though fully set forth herein.

132.    Counter Defendant denies the allegations in Paragraph 132.

133.    Counter Defendant denies the allegations in Paragraph 133.

134.    Counter Defendant denies the allegations in Paragraph 134.

135.    Counter Defendant denies the allegations in Paragraph 135.

136.    Counter Defendant denies the allegations in Paragraph 136.

137.    Counter Defendant denies the allegations in Paragraph 137.

### PRAYER FOR RELIEF

138.    Counter Defendant denies that Counter Plaintiff is entitled to the relief sought in the Counterclaim or to any relief whatsoever.

### DEFENSES

Pursuant to Rule 8(c), without waiver, limitation, or prejudice, and without conceding that it bears the burden of persuasion or production, Counter Defendant hereby asserts the following defenses:

### FIRST DEFENSE
### (Failure to State a Cause of Action)

The Counterclaim and the purported causes of action contained therein fail, in whole or in part, to state a claim for which relief can be granted, including failure to allege fraud with particularity under Rule 9(b).

### SECOND DEFENSE
### (Indemnity)

Counter Plaintiff are a party to one or more agreements in which they have agreed to indemnify Counter Defendant for any and all claims, losses, liabilities, damages, taxes, expenses, and costs arising from or related to Counter Plaintiff's claims in the Counterclaim.

### THIRD DEFENSE
### (Copyright Preemption)

Counter Plaintiff's claims are barred, in whole or in part, by 17 U.S.C. § 301.

## FOURTH DEFENSE
## (Protected Rights – Intellectual Property & Other Statutes)

Counter Plaintiff's claims are barred, in whole or in part, insofar as they make claims or seek remedies that conflict with Counter Defendant's rights under intellectual property law or other statutes.

## FIFTH DEFENSE
## (Protected Rights – Contract)

Counter Plaintiff's claims are barred, in whole or in part, insofar as they make claims or seek remedies that conflict with, are barred by, or are waived by the terms of Counter Plaintiff's agreements with Digerati, including express exclusive license or, at a minimum, an implied nonexclusive license.

## SIXTH DEFENSE
## (Economic Loss Doctrine)

Counter Plaintiff's claims are barred, in whole or in part, by the economic loss doctrine because Texas law does not permit tort claims that are based on the same alleged facts or damages as a breach of contract claim.

## SEVENTH DEFENSE
## (Waiver)

Counter Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver, including because Counter Plaintiff did not terminate the Licensing Agreement on November 29, 2022, requested that Digerati cease the sale of the game on Nintendo Switch and other platforms, Digerati denied the request, and Counter Plaintiff continued to enjoy the benefits of the License Agreement.   Thus, the doctrine of waiver bars Counter Plaintiff's claims, in whole or in part.

## EIGHTH DEFENSE
### (Estoppel)

Counter Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel, including because Counter Plaintiff did not terminate the Licensing Agreement on November 29, 2022, requested that Digerati cease the sale of the game on Nintendo Switch and other platforms, Digerati denied the request, and Counter Plaintiff continued to enjoy the benefits of the License Agreement.    Thus, the doctrine of estoppel bars Counter Plaintiff's claims, in whole or in part.

## NINTH DEFENSE
### (Ratification, Agreement, Acquiescence, or Consent)

Counter Plaintiff's claims are barred, in whole or in part, because of their ratification of, agreement to, acquiescence in, or consent to Digerati's alleged conduct, including based on their approval of the video game submissions to Nintendo, their distribution of the video game on platforms submitted by Digerati, and their failure to provide Digerati with an opportunity to cure the alleged actions of which they complain.

## TENTH DEFENSE
### (Laches)

Counter Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## ELEVENTH DEFENSE
### (Inequitable Conduct)

Counter Plaintiff's claims are barred, in whole or in part, by the doctrine of inequitable conduct.

## TWELFTH DEFENSE
### (Unclean Hands)

Counter Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean

hands.

### THIRTEENTH DEFENSE
### (Failure to Mitigate)

Counter Plaintiff's claims are barred, in whole or in part, by their failure to mitigate or attempt to mitigate damages, if in fact any damages have or will be sustained, and any recovery by Counter Plaintiff must be diminished or barred by reason thereof.

### FOURTEENTH DEFENSE
### (Comparative Fault & Responsible Third Parties)

Counter Plaintiff's claims are barred, in whole or in part, by the doctrine of comparative fault and responsible third parties and request that their recovery, if any, be reduced and apportioned in accordance with the provisions of Chapter 33 of the Texas Civil Practice & Remedies Code or other applicable law.

### FIFTEENTH DEFENSE
### (Truth & Privilege)

Counter Plaintiff's claims are barred, in whole or in part, by truth, substantial truth, and privilege, including opinion, qualified, fair comment, and third-party allegations.

### SIXTEENTH DEFENSE
### (No Entitlement to Punitive Damages)

Counter Plaintiff's claim for exemplary damages is barred, in whole or in part, by their failure to request a correction, clarification, or retraction or Counter Defendants' correction, clarification, or retraction made in accordance with the Texas Defamation Mitigation Act.

### SEVENTEENTH DEFENSE
### (No Entitlement to Interest, Attorneys' Fees, or Costs)

Counter Plaintiff is not entitled to interest, attorneys' fees, or costs in connection with this action.   Further, Counter Defendant seek recovery of their costs and attorney's fees as

the Court may deem to be equitable and just pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505,

28 U.S.C. § 1927, Rule 11, Rule 56(h), Texas Civil Practice & Remedies Code § 38.001 and

§ 134.005, or such other statute providing for such relief or the Court's inherent power.

## CONCLUSION

For these reasons, Counter Defendant respectfully requests that, upon final hearing,

Counter Plaintiff take nothing by way of its claims, that Counter Defendant be awarded its

costs and attorney's fees, and such other relief to which it may be justly entitled.


Dated:   July 10, 2023                    Respectfully,


**JAMES H. CREEDON**
Texas Bar No. 24092299
jhcreedon@creedon.com
**CHRISTIAN COWART**
Texas Bar No. 24105748
ccowart@creedon.com

**CREEDON PLLC**
5 Cowboys Way, Suite 300
Frisco, Texas 75034
Tel:    (972) 850-6864
Fax:    (972) 920-3290


**COUNSEL FOR PLAINTIFF &
COUNTER DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, on July 10, 2023, the foregoing document has been filed unsealed with the Clerk via the Court's CM/ECF system and served to the following who are deemed to have consented to electronic service via the Court's NEF system or the registered users' e-mail accounts per Rule 5(b), Local Rule CV-5(a), and Electronic Filing Procedures § 14(a):

<u>**Arthur Gollwitzer , III**</u>
JACKSON WALKER LLP
100 Congress Avenue
Suite 1100
Austin, TX 78701
agollwitzer@jw.com

*representing*

**Conradical Sarl**
(*Defendant & Counter Plaintiff*)


**Conrad Grindheim**
(*Defendant & Counter Plaintiff*)


**CHRISTIAN COWART**