UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DIGERATI DISTRIBUTION & MARKETING, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>CONRADICAL SÀRL; and CONRAD GRINDHEIM,<br><br>        Defendants.<br><br>CONRADICAL SÀRL,<br><br>        Counter Plaintiff,<br><br>v.<br><br>DIGERATI DISTRIBUTION & MARKETING, LLC; BIG SUGAR LLC; and SARAH ALFIERI,<br><br>        Counter Defendants. | Civil Action No. 1:22-cv-1302-DII |

**COUNTER DEFENDANT SARAH ALFIERI'S REPLY IN
SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

JAMES H. CREEDON
Texas Bar No. 24092299
jhcreedon@creedon.com
CHRISTIAN COWART
Texas Bar No. 24105748
ccowart@creedon.com

CREEDON PLLC
5 Cowboys Way, Suite 300
Frisco, Texas 75034
Tel.: (972) 850-6864
Fax: (972) 920-3290

*Counsel for Counter Defendant
SARAH ALFIERI*

Dated:  July 24, 2023

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 3

ARGUMENTS & AUTHORITIES ............................................................................................. 4

    I.    Conradical's Defamation Claim Against Alfieri Fails................................................ 4

        A.    Conradical Concedes It Failed to Allege Defamation *Per Quod*. .................... 4

        B.    Alfieri's Statements Are Not Defamatory as a Matter of Law. ....................... 5

            1.    Statement (a) – "We've been blindsided by the sudden negativity from Conrad, the game's developer." ................................ 5

            2.    Statement (b) – "Until literally hours before the console launch, we had enjoyed a cooperative and mutually pleasant working relationship with Conrad and we saw no indication of any dissatisfaction on his part." ............................................................... 6

            3.    Statement (c) – "Unfortunately, [Conrad] has now wrongly told us he is terminating our contract, even going so far as attempting to use the tragic and sudden death of my husband as grounds for termination." ............................................................... 7

            4.    Statement (d) – "In addition, Conrad has unlawfully tampered with the Steam page and attempted to take down the console versions as well." ................................................................................... 8

            5.    Statement (e) – "We are actively trying to make improvements and release patches, [*sic*] and have been met with repeated attempts to sabotage our efforts and sully our name." ........................ 8

        C.    Conradical's Asserted Gist Is Not Plausibly Defamatory. ............................. 9

    II.    Conradical Cannot Sue Alfieri in Her Individual Capacity. .....................................10

CONCLUSION....................................................................................................................... 11

## INTRODUCTION

Conradical attempts to assert a defamation claim against Sarah Alfieri without any factual allegations that plausibly withstand Rule 12(b)(6) scrutiny. First, the statements at issue are not reasonably capable of a defamatory meaning. Conradical does not meaningfully demonstrate that each statement at issue has a defamatory *per se* basis. The Court may dismiss Conradical's defamation claim because it failed to allege damages resulted from any individual statement as required for defamation *per quod*.

Second, when looking at the statements' text, the Court may also conclude that the statements are not capable of being textual defamation—whether explicit or implicit—as a matter of law. Even evaluating the statements under an extrinsic defamation standpoint, none of the factual allegations relevant to the extrinsic events make the statements defamatory. Moreover, these statements all convey Digerati's opinions based on its subjective perception of the parties' relationship. For example, whether Digerati was "blindsided" is not verifiable and is hyperbole about the sudden nature of the event. The Court must find that the gist of the statements cannot be reasonably understood as stating the meaning Conradical proposes.

Finally, Conradical does not state any factual allegations that plausibly demonstrate Alfieri knowingly participated in defamation. Instead, Conradical claims that the Court should consider irrelevant allegations pertaining to what others at Digerati knew and impute this knowledge to her individually solely based on her being a corporate officer. The Court should reject Conradical's invitation to impute corporate knowledge to an individual. Therefore, the Court should dismiss with prejudice Conradical's Defamation claim (Count VI) against Alfieri for failure to state a claim.

## ARGUMENTS & AUTHORITIES

### I. Conradical's Defamation Claim Against Alfieri Fails.

Conradical's defamation claim against Alfieri fails for three reasons: (1) the statements are not defamatory *per se*, (2) the statements are non-defamatory opinions that are substantially true, and (3) Conradical's gist of the Statements is not plausible. *See* Alfieri's Mot. 12–19, ECF No. 24.

#### A. Conradical Concedes It Failed to Allege Defamation *Per Quod*.

Conradical seemingly claims that the statements are defamatory *per se* because the statements would purportedly injure "a video game developer's profession and occupation." Def.'s Resp. 15, ECF No. 33. Conradical's argument demonstrates, however, that these statements are not defamatory *per se*. In *Innovative Block*, the Texas Supreme Court concluded that statements were not defamatory *per se* because "the disparaging remarks about the quality of Valley's products do not necessarily impugn Valley's character or reputation."[1] The Texas Supreme Court clarified that defamatory *per se* with respect to defamation on a business must "impute[] to the corporation fraud, deceit, dishonesty, or reprehensible conduct in its business in relation to said goods or product."[2] None of the Statements are defamatory *per se* because they do not impute corporate fraud, deceit, dishonesty, or reprehensible conduct.[3] Because the statements merely pertain to the nature of Conradical's actions, do not deal with the quality of Conradical's products, and do not impugn Conradical's character or reputation, Statements (a)–(e) are not defamatory *per se* and general damages are therefore not presumed.[4]

---

[1] *Innovative Block of S. Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 420 (Tex. 2020).
[2] *Id*. at 419.
[3] *See id*. at 420.
[4] *See id*.

Conradical invites the Court to presume reputational harm. *See* Def.'s Resp. 15. Because reputational harm cannot be presumed here and Conradical did not allege harm to Conradical's reputation caused by Alfieri's remarks, the Court should dismiss Conradical's defamation claim.[5]

### B. Alfieri's Statements Are Not Defamatory as a Matter of Law.

Conradical claims that "Alfieri's entire video is dedicated to her false narrative that problems with *The Outbound Ghost* were Conradical's fault and Conradical undermined the game without a good faith basis." Def.'s Resp. 8. The allegations do not support either of these propositions. *See* First Am. Countercl. ¶¶ 74–82, ECF No. 21. In sum, Conradical's defamation claim fails because the publication is not capable of a defamatory meaning and no facts plausibly make the publication capable of a defamatory meaning.

#### 1. Statement (a) – "We've been blindsided by the sudden negativity from Conrad, the game's developer."

No person of reasonable intelligence would view Statement (a) as defamatory. The statement pertaining to being "blindsided" constitutes an opinion about Digerati's belief that it did not expect the "negativity" that Grindheim expressed to the public. Quality concerns during the development process in July 2022 have nothing to do with negativity about Digerati or version of *The Outbound Ghost* that would be released months later in December 2022. The statement alleged to have been made to Armer are irrelevant to Alfieri's viewpoint. Conradical merely claims that this "is not credible," Def.'s Resp. 10, but the cited allegations do not plausibly support an inference that Alfieri lied about being blindsided by Grindheim's sudden negativity, *see* First Am. Countercl. ¶¶ 30–31, 80.[6]

---

[5] *See id.*

[6] Paragraphs 30 and 31 do not contain any allegations explicitly pertaining to Alfieri. *See* First Am. Countercl. ¶¶ 30–31. Instead, these allegations are limited to Bromio and Trey Armer with Digerati only being broadly

– 5 –

Regardless, a reasonable person would not find that this statement tends to injure Conradical's reputation. The statement explicitly pertains to "Conrad, the game's developer"—not Conradical. First Am. Countercl. ¶ 76. The statement also expresses Alfieri's belief that there was a lack of mutual understanding.[7] Conradical's attempt to claim Statement (a) is defamatory is fatally futile.

> 2. Statement (b) – "Until literally hours before the console launch, we had enjoyed a cooperative and mutually pleasant working relationship with Conrad and we saw no indication of any dissatisfaction on his part."

Conradical overlooks the fact that Statement (b) expressly states Digerati's view of what it "saw," which constitutes non-actionable opinion and hyperbole.[8] *See* Def.'s Resp. 9–11. A reasonable person would understand that Alfieri's subjective opinion about the nature of the parties' relationship that it was "cooperative" and did not see "dissatisfaction" was based on her interactions with Conradical, which she describes.[9] Moreover, Conradical does not identify any allegations, *see* Def.'s Resp. 9–11, that tend to show that Statement (b) is false at the relevant time of "literally hours before the console launch," First Am. Countercl. ¶ 76. Conrad's Slack messages do not express dissatisfaction about publishing *The Outbound Ghost* or with the day-one patch as represented in Defendants' published video. *Compare* First Am. Countercl. ¶¶ 30–32, *with* First Am. Compl. ¶ 46, ECF No. 2, *and* First Am. Answer ¶ 46 (admitting to publishing statement that "I never wanted

---

referenced around July 2022—despite these allegations occurring shortly after Mr. Alfieri passed away in May 2022. First Am. Countercl. ¶ 23. Paragraph 80 does not state Alfieri's knowledge or notice of the messages pertaining to "Conradical created a special setting that would have fixed many of the consumer performance complaints." First Am. Countercl. ¶ 80.

[7] *See Avila v. Larrea*, 394 S.W.3d 646, 659 (Tex. App.—Dallas 2012, no pet.) ("The use of a term that is 'by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder' or 'a loose and figurative term employed as a metaphor or hyperbole' constitutes a protected expression of opinion.").

[8] *See Dickson v. Lilith Fund for Reprod. Equity*, 647 S.W.3d 410, 414 (Tex. App.—Amarillo 2021, no pet.) (observing that hyperbole is non-actionable with respect to calling medical personnel "murderers").

[9] *See Frascatore v. Blake*, 344 F. Supp. 3d 481, 497 (S.D.N.Y. 2018) ("A reasonable reader would understand that Blake's opinion that he was not afforded the appropriate level of 'dignity' and 'respect' was based on his interaction with Frascatore, which he described in detail.").

this version of the game to come out but due to circumstances out of my control, this is the one that was released").

Moreover, a reasonable person would not find that this statement tends to injure Conradical's reputation. The statement pertains to "Conrad"—not Conradical. First Am. Countercl. ¶ 76. The context demonstrates "no indication of any dissatisfaction on his part" abstractly expresses Alfieri's belief about what she perceived. Conradical's attempt to claim Statement (b) is defamatory is fatally futile.[10]

> 3. Statement (c) – "Unfortunately, [Conrad] has now wrongly told us he is terminating our contract, even going so far as attempting to use the tragic and sudden death of my husband as grounds for termination."

No person of reasonable intelligence would view Statement (c) as defamatory.[11] A reasonable reader would view Statement (c) as an opinion that Grindheim "wrongly told us he is terminating" the Licensing Agreement with a basis for this opinion being their use of "the tragic and sudden death of [Alfieri's] husband as grounds for termination." First Am. Countercl. ¶ 76. Moreover, Conradical's arguments on this statement implicitly acknowledge the truth of Statement (c) pertaining to Conradical using Mr. Alfieri's death as a termination basis. Def.'s Resp. 11–12. Plainly, Statement (c) does not "falsely implies that Conradical did not terminate based on Digerati's [purported] breaches" because Alfieri's statement explicitly states "even going so far as" indicating she is stating one reason among other reasons. Regardless, Conradical does not dispute that Statement (c) is substantially true based on Defendants' using the death of Nick Alfieri as a purported reason

---

[10] *See Chehab v. Edgewood Dev., Ltd.*, 619 S.W.3d 828, 837 (Tex. App.—Houston [14th Dist.] 2021, no pet.).
[11] *See Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (concluding that term "lawsuit abuse" is expression of opinion); *see also Whiting v. Allstate Ins. Co.*, No. 08-12991, 2010 WL 956030, at *9 (E.D. Mich. Mar. 15, 2010) ("A reader of the Termination Request knows the basis for the opinion that Whiting violated Allstate's Code of Ethics and can reach an independent opinion based on those disclosed facts."), *aff'd,* 433 F. App'x 395 (6th Cir. 2011).

to terminate the Licensing Agreement, including as a defense in this Action.[12] *See* First Am. Compl. Ex. B at 3, ECF No. 2-2 ("Change in control: the tragic and unexpected passing of Mr. Nick Alfieri, founder and CEO of the Publisher, has resulted in a severe change of circumstances affecting the Contract."); First Am. Answer ¶ 42.

    4.    <u>Statement (d) – "In addition, Conrad has unlawfully tampered with the Steam page and attempted to take down the console versions as well."</u>

Conradical argues that its "post on the Steam page . . . w[as] not 'unlawful.'" Def.'s Resp. 12. Conradical does not dispute that this statement is substantially true. *See ibid*. Because Conradical admittedly tampered with the Steam page, the facts appear on the face of the Counterclaim that establish Statement (d) as true, which supports dismissal with prejudice. Notwithstanding these admissions, no person of reasonable intelligence would view Statement (d) as defamatory.[13] Because these facts do not impugn Conradical's reputation and are limited to "Conrad," Statement (d) fails to plausibly state a defamation claim against Alfieri.[14]

    5.    <u>Statement (e) – "We are actively trying to make improvements and release patches, [*sic*] and have been met with repeated attempts to sabotage our efforts and sully our name."</u>

Conradical does not meaningfully dispute that Statement (e) pertains to Nintendo based on the context and not Conradical—making it not actionable. *See* Def.'s Resp. 12; *see also* First Am. Countercl. ¶ 76. Considering all the facts, a reasonable reader would understand the basis for Digerati's opinion with respect to Nintendo preventing the attempts to improve and "release patches" to *The Outbound Ghost* as of December 9, 2022. This is further demonstrated by the context being after the December 4th statement that "[t]he

---

[12] *See Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 531–36 (W.D. Tex. 2021); *Chehab*, 619 S.W.3d at 837.
[13] *See Molzan*, 974 S.W.2d at 824; *see also Whiting*, 2010 WL 956030, at *9.
[14] *See Parker*, 569 F. Supp. 3d at 531–36; *Chehab*, 619 S.W.3d at 837.

patch we all hoped would be available on day one is still in approval with Nintendo and should be released in the coming week." First Am. Countercl. ¶ 81. At best, the statement may be viewed as conjecture as to Conradical's motive being to "sully [Digerati's] name."[15] Moreover, Conradical does not address the fact that Conradical has not made any attempt to make improvements after November 29, 2022. *See* Alfieri's Mot. 16–18, ECF No. 24. Because none of the statements plausibly support defamation, the Court should dismiss Conradical's claim against Alfieri with prejudice.

### C. Conradical's Asserted Gist Is Not Plausibly Defamatory.

No person of reasonable intelligence would view the gist of all the Statements (a)–(e) as defamatory—let alone plausibly conclude the gist as "a false narrative that Conradical took money from Digerati and crowdsourcing to develop the game and then torpedoed the game in bad faith using Alfieri's husband's death as an excuse."[16] Def.'s Resp. 13.

First, none of the Statements reference Conradical taking money from Digerati or crowdsourcing—let alone any purpose in his use of such funds. *See* First Am. Countercl. ¶ 76. Second, no reasonable person would understand Statement (e)'s use of "sabotage" with respect to "[Digerati's] efforts," First Am. Countercl. ¶ 76, as implying that Conradical intentionally sabotaged *The Outbound Ghost* in bad faith. Finally, the context of Alfieri's statement being a response to Defendants' statement is relevant to the conclusion that the

---

[15] *See Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) ("A statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.").

[16] *See Nat'l Rifle Ass'n of Am. v. Ackerman Mcqueen, Inc.*, No. 3:19-CV-2074-G, 2021 WL 3618113, at *9 (N.D. Tex. Aug. 16, 2021) ("For a publisher to be liable for defamation-by-gist, 'the 'plaintiff must make an especially rigorous showing' of the publication's defamatory meaning.'").

gist is an opinion because the responsive context demonstrates these are opinions about the merits of Defendants' statement.[17]

Because Conradical's alleged gist is not plausible and the only plausible gist based on the content is that Digerati's December 9, 2022 video provides its opinions for disputing Conradical's previous public statements, the Court must conclude that the gist of the video is not plausibly defamatory.

## II.   Conradical Cannot Sue Alfieri in Her Individual Capacity.

Conradical does not allege any set of facts that allow it to sue Alfieri directly or that her statements are not a fair comment on matters of public concern arising from Defendants' own December 8, 2022 video.

"The law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation."[18]  With some exceptions, this rule of individual liability applies to intentional torts as well as negligence, but for negligence claims, corporate officers and agents are subject to personal liability for their actions within the employment context only when they breach an independent duty of care to the injured party separate and apart from the employer's duty.[19]  "If a corporate officer knowingly

---

[17] *See Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1011 (S.D. Tex. 2018) (concluding an article cannot be considered defamatory where "[t]he gist of this article is a defense to something Tu Nguyen had written, not an accusation that Tu Nguyen is affiliated with the communist party in Vietnam"); *see also Melius v. Glacken*, 94 A.D.3d 959, 960 (N.Y. 2012) (determining that based on the context in which the challenged statements were made—in response to a question about the plaintiff's lawsuit and in a "heated" public debate—a reasonable listener would have understood that the mayor was stating his opinion about the merits of plaintiff's lawsuit and not accusing the plaintiff of criminal conduct); *Varrenti v. Gannett Co.*, 33 Misc. 3d 405, 413, 929 N.Y.S.2d 671, 677 (N.Y. Sup. Ct. 2011) (concluding that statements posted in response to article were "protected opinion" because "the forum itself is inviting readers to comment on the articles posted on the . . . website").
[18] *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 666 (W.D. Tex. 2019) (quoting *Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex. App.–Corpus Christi 2002, pet. denied)).
[19] *Id.*

participates in a tortious act, there is no need to pierce the corporate veil in order to impose personal liability."[20]

Conradical claims that "the defamatory statements were made by Alfieri herself, *with malice*." Def.'s Resp. 8 (emphasis added). At issue is whether Conradical alleged any facts to plausibly establish that Alfieri in her individual capacity knowingly participated in defamation. While Alfieri made the statements in the video, the corporate knowledge of Digerati cannot be imputed onto Alfieri because there are no allegations that she had knowledge of the underlying facts that Conradical contends show falsity, knowingly published a false statement, knowingly defamed Conradical, or knowingly acted with the requisite degree of fault.[21] As such, Conradical failed to allege facts showing her knowing participation in defamation as required for individual liability.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice Conradical's Defamation claim (Count VI) against Alfieri for failure to state a claim.

---

[20] *Id*. (quoting *Walker v. F.D.I.C.*, 970 F.2d 114, 122 (5th Cir. 1992)).

[21] *Cf. id.* at 671 ("[T]he First Court of Appeals applied the common-law rule that a corporate officer who knowingly participates in a tort may be held individually liable for fraud when he participated in contract negotiations, instructed another on which contract terms to modify, and personally made representations to plaintiff's representatives, and noted that because there was evidence to hold him individually liable for fraud, it did not need to address whether he was the alter ego of the corporation.").

Dated:   July 24, 2023                              Respectfully,

_____
**JAMES H. CREEDON**
Texas Bar No. 24092299
jhcreedon@creedon.com
**CHRISTIAN COWART**
Texas Bar No. 24105748
ccowart@creedon.com

**CREEDON PLLC**
5 Cowboys Way, Suite 300
Frisco, Texas 75034
Tel:    (972) 850-6864
Fax:    (972) 920-3290


**COUNSEL FOR PLAINTIFF &
COUNTER DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that, on July 24, 2023, the foregoing document has been filed unsealed with the Clerk via the Court's CM/ECF system and served to the following who are deemed to have consented to electronic service via the Court's NEF system or the registered users' e-mail accounts per Rule 5(b), Local Rule CV-5(a), and Electronic Filing Procedures § 14(a):

| | | |
|---|---|---|
| **Arthur Gollwitzer , III**<br>JACKSON WALKER LLP<br>100 Congress Avenue<br>Suite 1100<br>Austin, TX 78701<br>agollwitzer@jw.com | *representing* | **Conradical Sarl**<br>(*Defendant & Counter Plaintiff*)<br><br>**Conrad Grindheim**<br>(*Defendant*) |

_____
**CHRISTIAN COWART**