IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DIGERATI DISTRIBUTION & MARKETING, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:22-CV-01302-DII |
| CONRADICAL SÀRL and CONRAD GRINDHEIM, | § § § § | |
| Defendants and Counter-Plaintiffs, | § § § § | |
| v. | § § | |
| DIGERATI DISTRIBUTION & MARKETING, LLC; BIG SUGAR LLC; and SARAH ALFIERI, | § § § § § | |
| Counter-Defendants. | § | |

**ORDER**

Before the Court is Plaintiff Digerati Distribution & Marketing, LLC's ("Digerati") Motion for Preliminary Injunction, (Dkt. 18). The parties filed responsive briefing, (Dkts. 23, 29). Having considered the briefing, the evidence, and the relevant law, the Court will deny the motion.

**I. BACKGROUND**

In or about March 2020, Defendant Conrad Grindheim ("Grindheim") conceived of and began developing an adventure, role-playing, videogame called *The Outbound Ghost* (the "Game"). (*See* Defs. Am. Ans., Dkt. 21, at 4). Grindheim formed Defendant Conradical Sàrl ("Conradical") in May 2021 to commercialize this game. (*Id.*). Grindheim registered his copyrights in the Game and applied for trademark registrations covering the marks associated with the Game. (*Id.*).

In the summer of 2021, Conradical began looking for a video game publisher to distribute the Game and "port" the Game to other platforms, *i.e.*, make the Game software compatible for

1

play on other platforms such as Nintendo. (*Id.* at 4–5). Digerati is one such video game publisher. (Alfieri Dec., Dkt. 19-1, at 3). On September 10, 2021, Digerati and Conradical entered into the Licensing Agreement, allowing Digerati to publish the Game (*Id.* at 4; Licensing Agreement, Dkt. 19-2; Dennis Dec., Dkt. 19-9). The Licensing Agreement granted Digerati the right to use of any trademarks associated with the Game to promote and distribute the Game only if such use meets Conradical's "commercially reasonable quality standards." (Dkt. 19-2, at 1). The parties disagree as to whether the Licensing Agreement grants Digerati a publishing license or an exclusive license.

Conradical asserts that in the summer of 2022 it began raising quality concerns in the course of giving feedback to Digerati, (Dkt. 21, at 5), but that Digerati—heedless of Conradical's warnings—released a Nintendo Switch version of the Game. Grindheim asserts that he never approved the public release of the Nintendo Switch game. (Dkt. 23, at 4).

Defendants allege that Conradical terminated the Licensing Agreement on November 29, 2022. (Dkt. 21, at 10). Digerati disagrees.

Beginning on December 8, 2022, Defendants submitted notices to platforms demanding that the platforms take down the Game. (Dkt. 19-9, at 3–5). Digerati asserts that based on the platforms relying upon Defendants' material misrepresentations about Digerati's licensed rights, most of the platforms have refused to permit Digerati to exercise its licensed rights with respect to the Game. (*Id.*).

Digerati contends that since December 2022, Defendants have been continuing to breach the Licensing Agreement by (1) publishing tweets and videos that falsely blame Digerati for several matters; (2) modifying the web store pages for Steam to falsely represent that that version of the Game was unauthorized; (3) refusing to deliver fixes to the Game; and (4) causing the removal of the Game by falsely representing facts in their DMCA take-down notices. (*Id.*). Digerati claims that, as a result of these alleged breaches, Digerati cannot sell the Game. (*Id.*). Further, Digerati asserts

that Defendants' alleged breaches have caused permanent price depreciation, loss of consumer access, reputational harm, and injury to Digerati's video game portfolio, other developers, and sublicensees. (*Id.*).

Conversely, Defendants contend that Digerati ignited this dispute by breaching the Licensing Agreement in at least six ways: (1) Digerati failed to develop the Game without glitches (*e.g.*, unplayable display resolutions and frame refresh rates), subsequently publishing a flawed game; (2) Digerati failed to port a working version of the Game to other consoles; (3) Digerati failed to timely provide the Game in other languages; (4) Digerati failed to timely report all revenue; (5) Digerati failed to make complete and accurate royalty payments; and (6) Digerati failed to provide an audit requested by Conradical. (Dkt. 23, at 7).

## II. STANDARD OF REVIEW

"Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of [28 U.S.C. § 1498], grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Section 502(a) authorizes injunctions to enforce claims brought under the Copyright Act, including 17 U.S.C. § 512, but Federal Rule of Civil Procedure 65 governs the process. *See Fla. Med. Ass'm, Inc. v. U.S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 202 (5th Cir. 1979).

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). This is especially so when the movant seeks mandatory relief compelling action beyond maintaining the status quo—*i.e.*, "specific performance" of a contract. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). Such relief is "particularly disfavored," and only warranted when "the facts and law clearly favor the moving party." (*Id.*).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). A movant cannot be granted a preliminary injunction unless it can establish that it will suffer irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

### III. DISCUSSION

Here, the Court's analysis begins and ends with its finding that Digerati has not met its burden to show that it will be irreparably harmed in the absence of an injunction. The party seeking a preliminary injunction must prove that irreparable harm is likely, not merely possible. *Winter*, 555 U.S. at 22. Irreparable harm "consists of harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." *Canon, Inc. v. GCC Int'l Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008).

A showing of a "substantial threat of irreparable injury" requires that the threatened harm be imminent and one that cannot be remedied through damages. First, the threat of injury must be substantial—meaning, "the threat must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016) (injury must be imminent and non-speculative). Second, the injury must be irreparable—an injury "for which compensatory damages are unsuitable." *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992); *see also Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a

claim of irreparable harm.") (cleaned up); *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages."); *G&G Closed Circuit Events, LLC v. 1) GCF enterprises LLC*, No. EP-15-CV-00111-KC, 2015 WL 7313427, at *5 (W.D. Tex. Nov. 19, 2015) ("An irreparable injury is defined as one which cannot be undone through monetary remedies.").

  Here, Digerati has not met its burden of demonstrating a substantial threat of irreparable injury. Digerati asserts that Defendants' violation of Digerati's rights to use, reproduce, and display the Game has irreparably harmed Digerati through loss of control over the Game, diminished goodwill and brand confidence, harm to business reputation, loss of exclusivity, and loss of future sales. (Dkt. 18, at 25). Digerati, however, presents no evidence showing that any of these allegations amount to irreparable harm that is imminent or reasonably certain to occur in the absence of an injunction. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013); *see also Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952, at *5 (E.D. Tex. Dec. 23, 2015), *report and recommendation adopted*, No. 4:15-CV-571, 2016 WL 231160 (E.D. Tex. Jan. 19, 2016) ("[W]hile reputational injury can be used to establish irreparable harm in certain circumstances, the showing of reputational harm must be concrete and corroborated, not merely speculative."); *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) ("[S]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."). Digerati has failed to produce evidence to establish that any purported reputational injury or injury due to loss of exclusivity or loss of future sales is sufficiently concrete to sustain a finding of irreparable harm.

  Further, Digerati filed its preliminary injunction motion over six months after Digerati filed this lawsuit and four months after Conradical first sent DMCA take-down notices. It is well established that delay in seeking relief is an important factor bearing on the need for a preliminary

injunction. *See Vexas, LLC v. Hill Enters., LLC*, No. 1:09-CV-00791-SS, 2010 WL 11602723, at *6 (W.D. Tex. Mar. 30, 2010) (holding substantial period of delay militates against issuance of preliminary injunction by demonstrating no urgency to request for injunctive relief). Digerati asserts that it learned of the threatened harm when it received notice from the platforms around March 27, 2023, of their *permanent* decision to remove the Game based on Defendants' final DMCA notice. (*See* Dkt. 19-14). But Digerati was aware of Defendants' alleged wrongdoing since *at least* the filing of this lawsuit.

Digerati claims that it has established a rebuttable presumption of irreparable harm by showing that a valid copyright has been infringed. (Mot., Dkt. 18, at 18); *see also MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g*, No. 4:04-CV-00445-Y, 2004 WL 2187143, at *2 (N.D. Tex. Sept. 28, 2004). But Defendants assert Digerati is not an intellectual property owner suing an infringer because Digerati was *not* the holder of an exclusive license. The Court finds that, at this stage of litigation, Digerati has not presented evidence sufficient to establish an exclusive license such that it can claim a rebuttable presumption of irreparable harm.

Because Digerti has failed to establish any imminent, non-speculative injury, it has not carried its burden to show that it is likely to be irreparably harmed in the absence of a preliminary injunction. In the Fifth Circuit, "preliminary injunctions will be denied based on a failure to prove separately each of the four elements of the four-prong test for obtaining the injunction." *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006). A preliminary injunction is not warranted.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Digerti's motion, (Dkt. 18), is **DENIED**.

**SIGNED** on August 2, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE