# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| DIGERATI DISTRIBUTION & MARKETING, LLC, | § § § | |
| Plaintiff, | § § § | |
| vs. | § § | Civil Action No. 1:22-cv-1302-DH |
| CONRADICAL SARL and CONRAD GRINDHEIM BORRELL, | § § § § | |
| Defendants. | § § | |
| ──────────────────────────── | § | |
| CONRADICAL SARl, | § § | **Jury Trial Demanded** |
| Counterclaim-Plaintiff, | § § § | |
| vs. | § § | |
| DIGERATI DISTRIBUTION & MARKETING, LLC, | § § § | |
| Counterclaim-Defendant, | § § | |
| and | § § | |
| BIG SUGAR LLC and SARAH ALFIERI, | § § § | |
| Additional Defendants. | § | |

**Defendants' Second Amended Answer, Affirmative Defenses, and Counterclaims in Response to**
**<u>Digerati Distribution & Marketing, LLC's First Amended Complaint</u>**

Defendants Conradical Sàrl ("Conradical") and Conrad Grindheim Borrell

("Conrad" or "Mr. Grindheim") (collectively referred to as "Defendants") answer

plaintiff Digerati Distribution & Marketing, LLC's ("Plaintiff" or "Digerati") First Amended Complaint (Dkt. 2) as follows:

## Introduction

1.      Defendants deny the allegations set forth in Paragraph 1 of the First Amended Complaint.

2.      Defendants deny the allegations set forth in Paragraph 2 of the First Amended Complaint.

3.      Defendants  deny the allegations set forth in Paragraph 3 of the First Amended Complaint.

4.      Defendants deny the allegations set forth in Paragraph 4 of the First Amended Complaint.

## The Plaintiff

5.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the First Amended Complaint.

## The Defendant

6.      Defendants admit that Conradical Sarl is a Switzerland society with limited responsibility. Defendants deny the remaining allegations set forth in the first sentence of Paragraph 6 of the First Amended Complaint. Defendants admit the remaining allegations set forth in Paragraph 6 of the First Amended Complaint.

7.      Defendants deny the allegations set forth in Paragraph 7 of the First Amended Complaint.

## **Subject Matter Jurisdiction**

8.      Defendants admit the allegations set forth in Paragraph 8 of the First Amended Complaint but deny any and all liability of the alleged copyright infringement, misrepresentation, defamation, or breach of contract alleged in the First Amended Complaint.

9.      Defendants admit that some of Digerati's claims in this action arise under the Copyright Act. Defendants admit this Court has subject-matter jurisdiction over this action. Defendants deny all remaining allegations set forth in Paragraph 9 of the First Amended Complaint.

10.     Defendants admit the allegations set forth in Paragraph 10 of the First Amended Complaint.

11.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in first and second sentences of Paragraph 11 of the First Amended Complaint. Defendants admit the allegations set forth in the second sentence of Paragraph 11 of the First Amended Complaint. Defendants deny the allegations set forth in the third sentence of Paragraph 11 of the First Amended Complaint. Defendants admit the allegations set forth the final sentence of Paragraph 11 of the First Amended Complaint.

12.     Defendants admit the allegations set forth in Paragraph 12 of the First Amended Complaint.

13.     Defendants admit the allegations set forth in Paragraph 13 of the First Amended Complaint.

## Personal Jurisdiction and Venue

14.     Defendants admit the allegations set forth in Paragraph 14 of the First Amended Complaint.

15.      Defendants admit that they derive revenue from business transactions in Texas and this District, and otherwise avail themselves of the privileges and protections of the laws of Texas such that this Court's exercise of jurisdiction over Conradical does not offend traditional notions of fair play and due process. Defendants deny all remaining allegations set forth in Paragraph 15 of the First Amended Complaint.

16.     Defendants admit the allegations set forth in Paragraph 16 of the First Amended Complaint.

17.     Defendants admit the allegations set forth in Paragraph 17 of the First Amended Complaint.

## The Licensing Agreement

18.     Defendants admit the allegations set forth in Paragraph 18 of the First Amended Complaint.

19.     Defendants admit the allegations set forth in Paragraph 19 of the First Amended Complaint.

20.     Defendants admit the allegations set forth in Paragraph 20 of the First Amended Complaint.

21.     Defendants admit the allegations set forth in Paragraph 21 of the First Amended Complaint.

22.     Defendants admit the allegations set forth in Paragraph 22 of the First Amended Complaint.

23.     Defendants admit the allegations set forth in Paragraph 23 of the First Amended Complaint.

24.     Defendants admit the allegations set forth in Paragraph 24 of the First Amended Complaint.

25.     Defendants deny the allegations set forth in Paragraph 25 of the First Amended Complaint.

26.     Defendants admit the allegations set forth in Paragraph 26 of the First Amended  Complaint.

27.     Defendants admit the allegations set forth in Paragraph 27 of the First Amended Complaint.

**The Outbound Ghost's Development**

28.     Defendants deny the allegations set forth in Paragraph 28 of the First Amended Complaint.

29.     Defendants deny The Outbound Ghost was developed by Digerati engineers. Defendants admit the remaining allegations set forth in Paragraph 29 of the First Amended Complaint.

30.     Defendants admit that Conradical operates the twitter account @OutboundGhost to convey to users information related to The Outbound Ghost. Defendants deny the remaining allegations set forth in Paragraph 30 of the First Amended Complaint.

31.     Defendants admit that Conradical made the statement posted by The Outbound Ghost account set forth in Paragraph 31 of the First Amended Complaint. Defendants deny the remaining allegations set forth in Paragraph 31 of the First Amended Complaint.

32.     Defendants admit that Conradical made the statement posted by The Outbound Ghost account set forth in Paragraph 32 of the First Amended Complaint. Defendants deny the remaining allegations set forth in Paragraph 32 of the First Amended Complaint.

33.     Defendants admit the allegations set forth in Paragraph 33 of the First Amended Complaint.

34.     Defendants admit the allegations set forth in Paragraph 34 of the First Amended Complaint.

35.     Defendants admit the allegations set forth in Paragraph 35 of the First Amended Complaint.

36.     Defendants admit the allegations set forth in Paragraph 36 of the First Amended Complaint.

37.     Defendants admit that Conradical made the statement posted by The Outbound Ghost account set forth in Paragraph 37 of the First Amended Complaint. Defendants deny the remaining allegations set forth in Paragraph 37 of the First Amended Complaint.

38.     Defendants admit that Conradical made the statement posted by The Outbound Ghost account set forth in Paragraph 38 of the First Amended Complaint.

Defendants deny the remaining allegations set forth in Paragraph 38 of the First Amended Complaint.

39.     Defendants admit the allegations set forth in Paragraph 39 of the First Amended Complaint.

40.     Defendants admit the allegations set forth in Paragraph 40 of the First Amended Complaint.

41.     Defendants admit Conradical approved The Outbound Ghost would be published on PlayStation and Nintendo, but Defendants never approved of the version that was eventually published. Defendants deny the remaining allegations set forth in Paragraph 41 of the First Amended Complaint.

<u>**The Parties' Dispute & Conradical's Disparagement**</u>

42.     Defendants admit the allegations set forth in Paragraph 42 of the First Amended Complaint.

43.     Defendants admit that Conradical made the statement contained within the indented paragraph of the second sentence of Paragraph 43 of the First Amended Complaint. Defendants deny the remaining allegations set forth in Paragraph 43 of the First Amended Complaint.

44.     Defendants admit Conradical threated to initiate formal legal proceedings against Digerati. Defendants deny the remaining allegations set forth in Paragraph 44 of the First Amended Complaint.

45.     Defendants admit that Conradical made the statements posted by The Outbound Ghost account set forth in Paragraph 45 of the First Amended Complaint.

Defendants deny the remaining allegations set forth in Paragraph 45 of the First Amended Complaint.

46.     Defendants admit the allegations set forth in Paragraph 46 of the First Amended Complaint.

47.      Defendants deny the allegations set forth in Paragraph 47 of the First Amended Complaint.

48.     Defendants admit that Conradical made a statement regarding "not able to test the version of the game that's out now."  Defendants deny that this statement was false. Defendants deny the remaining allegations set forth in Paragraph 48 of the First Amended Complaint.

49.     Defendants admit that Conradical made the statements posted by The Outbound Ghost account set forth in Paragraph 49 of the First Amended Complaint Conradical denies that it is undermining the success of *The Outbound Ghost*. Defendants deny the remaining allegations set forth in Paragraph 49 of the First Amended Complaint.

50.     Defendants deny that Conradical made any false, defamatory, or disparaging statements. Defendants admit that Digerati responded to Conradical's letter on December 4, 2022. Defendants admit that a copy of the Digerati's response letter was attached to the Complaint as Exhibit C. Defendants deny any remaining allegations set forth in Paragraph 50 of the First Amended Complaint

51.     Defendants admit that Conradical sent a letter to Digerati on December 6, 2022. Defendants admit that a copy of their December 6, 2022, letter is attached to the

Complaint as Exhibit C. Defendants admit Conradical made the statement that it would "pursue all legal actions available against the Publisher and its key officers, in Texas, England, or any other relevant jurisdiction." Defendants deny all remaining allegations set forth in Paragraph 51 of the First Amended Complaint.

52.     Defendants admit the allegations set forth in Paragraph 52 of the First Amended Complaint.

53.     Defendants admit that on December 8, 2022, Digerati requested that Steam restore the page for The Outbound Ghost. Defendants admit the allegations set forth in the second sentence of Paragraph 53 of the First Amended Complaint. Defendant deny any remaining allegations set forth in Paragraph 53 of the First Amended Complaint.

54.     Defendants admit the allegations set forth in Paragraph 54 of the First Amended Complaint.

55.     Defendants deny the allegations set forth in Paragraph 55 of the First Amended Complaint.

56.     Defendants admit that Mr. Grindheim made the statement set forth in the second sentence of Paragraph 56 of the First Amended Complaint. Defendants admit that Steam made the statement set forth in the third sentence of Paragraph 56 of the First Amended Complaint. Defendants deny the remaining allegations set forth in Paragraph 56 of the First Amended Complaint.

<u>**The Copyright Registration**</u>

57.     Defendants admit the allegations set forth in Paragraph 57 of the First Amended Complaint.

58.     Defendants deny that Digerati is the exclusive licensee with respect to the Work. Defendants admit the remaining allegations set forth in Paragraph 58 of the First Amended Complaint.

## Defendants' Misrepresentations

59.     Defendants admit the allegations set forth in Paragraph 59 of the First Amended Complaint.

60.     Defendants admit the allegations set forth in Paragraph 60 of the First Amended Complaint.

61.     Defendants admit that on February 16, 2023, Mr. Grindheim sent an email to Merge stating that that Conradical "creates and owns the copyrights for The Outbound Ghost."  Defendants deny the remaining allegations set forth in Paragraph 61 of the First Amended Complaint.

62.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 62 of the First Amended Complaint.

63.     Defendants admit that Conradical made the statement quoted in the second sentence of Paragraph 63 of the First Amended Complaint. Defendants deny the remaining allegations set forth in Paragraph 63 of the First Amended Complaint.

64.     Defendants admit Digerati provided counter notifications. Defendants deny the remaining allegations set forth in Paragraph 64 of the First Amended Complaint.

65. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 65 of the First Amended Complaint.

66. Defendants admit the allegations set forth in Paragraph 66 of the First Amended Complaint.

67. Defendants deny the allegations set forth in Paragraph 67 of the First Amended Complaint.

## CAUSES OF ACTION
### COUNT I
### Declaratory Judgment of Transfer of Exclusive Rights

68. Defendants restate and incorporate by reference each of their responses to the allegations set forth in Paragraphs 1 through 67 of the First Amended Complaint.

69. Defendants deny the allegations set forth in Paragraph 69 of the First Amended Complaint.

70. Defendants deny the allegations set forth in Paragraph 70 of the First Amended Complaint.

### COUNT II
### Declaratory Judgment of Ownership

71. Defendants restate and incorporate by reference each of their responses to the allegations in Paragraphs 1 through 70 of the First Amended Complaint.

72. Defendants deny the allegations set forth in Paragraph 72 of the First Amended Complaint.

73.     Defendants deny the allegations set forth in Paragraph 73 of the First Amended Complaint.

74.     Defendants deny the allegations set forth in Paragraph 74 of the First Amended Complaint.

## COUNT III
## Declaratory Judgment of Non-Termination

75.     Defendants restate and incorporate by reference each of their responses to the allegations in Paragraphs 1 through 74 of the First Amended Complaint.

76.     Defendants deny the allegations set forth in Paragraph 76 of the First Amended Complaint.

77.     Defendants deny the allegations set forth in Paragraph 77 of the First Amended Complaint.

## COUNT IV
## Declaratory Judgment of Non-Infringement

78.     Defendants restate and incorporate by reference each of their responses to the allegations in Paragraphs 1 through 77 of the First Amended Complaint.

79.     Defendants deny the allegations set forth in Paragraph 79 of the First Amended Complaint.

80.     Defendants deny the allegations set forth in Paragraph 80 of the First Amended Complaint.

**COUNT V**
**DMCA Misrepresentation (17 U.S.C. § 512(f))**
**[Against Defendant Conradical]**

81.     Defendants restate and incorporate by reference each of their responses to the allegations in Paragraphs 1 through 80 of the First Amended Complaint.

82.     Defendants deny the allegations set forth in Paragraph 82 of the First Amended Complaint.

83.     Defendants deny the allegations set forth in Paragraph 83 of the First Amended Complaint.

84.     Defendants deny the allegations set forth in Paragraph 84 of the First Amended Complaint.

**COUNT VI**
**Business Disparagement & Defamation**
**[Against Defendant Conrad]**

85.     Defendants restate and incorporate by reference each of their responses to the allegations in Paragraphs 1 through 84 of the First Amended Complaint.

86.     Defendants admit the allegations set forth in Paragraph 86 of the First Amended Complaint.

87.     Defendants deny the allegations set forth in Paragraph 87 of the First Amended Complaint.

88.     Defendants deny the allegations set forth in Paragraph 88 of the First Amended Complaint.

89.     Defendants deny the allegations set forth in Paragraph 89 of the First Amended Complaint.

90.     Defendants deny the allegations set forth in Paragraph 90 of the First Amended Complaint.

91.     Defendants deny that Mr. Grindheim made business-disparaging and defamatory statements and, in the alternative, that the alleged business disparagement and defamation caused damages. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 91 of the First Amended Complaint.

92.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 92 of the First Amended Complaint.

93.     Defendants deny the allegations set forth in Paragraph 93 of the First Amended Complaint.

94.     Defendants deny the allegations set forth in Paragraph 94 of the First Amended Complaint.

## COUNT VII
### Breach of Contract – Material Breaches of Licensing Rights
### [Against Defendant Conradical]

95.     Defendants restate and incorporate by reference each of their responses to the allegations in Paragraphs 1 through 60 of the First Amended Complaint.

96.     Defendants deny the allegations set forth in Paragraph 96 of the First Amended Complaint.

97.     Defendants admit that under Section 3 of the Licensing Agreement, Conradical previously granted Digerati the Publishing License and the Brand Features

License; those licenses terminated upon termination of the Licensing Agreement. Defendants deny the remaining allegations set forth in Paragraph 97 of the First Amended Complaint.

98.     Defendants deny the allegations set forth in Paragraph 98 of the First Amended Complaint.

99.     Defendants admit Section 4(a) of the Licensing Agreement previously required Conradical to cooperate and communicate on various matters. Defendants deny the remaining allegations set forth in Paragraph 99 of the First Amended Complaint.

100.     Defendants deny the allegations set forth in Paragraph 100 of the First Amended Complaint.

101.     Defendants admit Section 4(b) and 4(c) of the Licensing Agreement previously required Conradical to deliver The Outbound Ghost. Defendants admit Section 4(b) previously required Conradical, "upon Publisher's commercial reasonable request," to provide variants and versions of The Outbound Ghost. Defendants admit Section 4(b) previously required Conradical to deliver all bug fixes, updates, and upgrades of The Outbound Ghost for delivery platforms. Defendants deny the remaining allegations set forth in Paragraph 101 of the First Amended Complaint.

102.     Defendants deny the allegations set forth in Paragraph 102 of the First Amended Complaint.

103.     Defendants admit Section 4(g) previously required Conradical to provide Digerati with credentials for the Outbound Ghost. Defendants admit Section 4(g)

previously restricted Conradical from making changes to Store Pages without plaintiff's prior written approval. Defendants admit Section 4(g) previously required Conradical to list Digerati as the publisher. Defendants admit Section 4(g) previously required Conradical to provide assets as may be necessary for the successful creation of Store Pages. Defendants admit Section 4(g) previously required Conradical and plaintiff to ensure that a Store Page is accessible to the general public. Defendants deny the remaining allegations set forth in Paragraph 103 of the First Amended Complaint.

104.    Defendants deny the allegations set forth in Paragraph 104 of the First Amended Complaint.

105.    Defendants admit Section 4(i) previously required Conradical to attribute credit for The Outbound Ghost to all relevant parties. Defendants deny the remaining allegations set forth in Paragraph 105 of the First Amended Complaint.

106.    Defendants deny the allegations set forth in Paragraph 106 of the First Amended Complaint.

107.    Defendants deny the allegations set forth in Paragraph 107 of the First Amended Complaint.

108.    Defendants deny the allegations set forth in Paragraph 108 of the First Amended Complaint.

109.    Defendants deny the allegations set forth in Paragraph 109 of the First Amended Complaint.

110.    Defendants admit that plaintiff seeks injunctive relief pursuant to what Section 10(c) of the Licensing Agreement previously required. Defendants admit that

Conradical previously owed obligations under Sections 3, 4(a), 4(b), 4(c), 4(g), and 4(i). Defendants deny the remaining allegations set forth in Paragraph 110 of the First Amended Complaint.

111.    Defendants deny the allegations set forth in Paragraph 111 of the First Amended Complaint.

112.    Defendants deny the allegations set forth in Paragraph 112 of the First Amended Complaint.

## COUNT VIII
### Breach of Contract – Indemnification Clause
### [Against Defendant Conradical]

113.    Defendants restate and incorporate by reference each of their responses to the allegations in Paragraphs 1 through 112 of the First Amended Complaint.

114.    Defendants admit Section 9(a) of the Licensing Agreement includes the language quoted in Paragraph 114 of the First Amended Complaint. Defendants deny the remaining allegations set forth in Paragraph 114 of the First Amended Complaint.

115.    Defendants deny the allegations set forth in Paragraph 115 of the First Amended Complaint.

116.    Defendants deny the allegations set forth in Paragraph 116 of the First Amended Complaint.

## Prayer for Relief

Defendants deny that Plaintiff is entitled to judgment or any of the relief sought in its Complaint.

**<u>Affirmative Defenses</u>**

Defendants assert the following affirmative defenses without assuming the burden of proof when such burden would otherwise be on Plaintiff:

### *First Affirmative Defense – Unclean Hands*

Plaintiff lacks clean hands. Plaintiff, upon Defendants' repeated and timely requests, failed to timely and accurately repot and pay revenue due to Conradical, failed to successfully port The Outbound Ghost to other platforms, and failed to deliver the game in other languages. For example, Plaintiff knowingly and intentionally failed to provide complete and accurate information about its agreements for distributing physical copies of The Outbound Ghost, even sub-licensing the game to third parties without disclosure. On information and belief, Plaintiff also has co-mingled revenue received from sales of The Outbound Ghost with a related entity known as Big Sugar LLC as evidenced by bank statements reflecting joint ownership by Plaintiff and Big Sugar of the bank accounts into which such revenue was deposited. Plaintiff also knowingly, intentionally, falsely, and publicly blamed Defendants, by name, for the game's performance. Defendants have suffered and are suffering reputational and financial harm as a result of Plaintiff's conduct. Plaintiff lacks clean hands because its actions were unconscientious, unjust, and performed in bad faith and, therefore, Plaintiff is not entitled to the equitable relief which it seeks.

### *Second Affirmative Defense – No Personal Liability for Defendant Grindheim*

Defendant Grindheim is not personally liable for any claim asserted against defendant Conradical, which is a Switzerland society with limited responsibility.

Plaintiff has not pleaded and cannot prove facts sufficient to pierce the corporate veil or otherwise hold Mr. Grindheim personally liable for the actions Plaintiff complains of in this case.

### Third Affirmative Defense – Fraudulent Inducement

Plaintiff fraudulently induced Defendants into the Licensing Agreement. Plaintiff represented it would timely report and pay revenue received from its exploitation of The Outbound Ghost, port The Outbound Ghost to other platforms, and deliver the game in other languages, knowing these promised services would induce defendant Conradical into the Licensing Agreement. Plaintiff did not fully perform and, on information and belief, had no intention to perform these obligations. Plaintiff demonstrated a lack of intent to fully perform these obligations when the Licensing Agreement was made by ignoring Defendants' repeated requests to fulfill these obligations. Defendants have suffered and are suffering reputational and financial harm as a result of Plaintiff's conduct. The Licensing Agreement, therefore, is void *ab initio.*

### Fourth Affirmative Defense – Fraud in Performance of Contract

Plaintiff committed fraud in performance of the Licensing Agreement. For example, Plaintiff hid revenue from Defendants and underreported revenue that it was obligated to disclose and timely pay under Section 5(a) of the Licensing Agreement. On information and belief, Plaintiff also has co-mingled revenue received from sales of The Outbound Ghost with a related entity known as Big Sugar LLC as evidenced by bank statements reflecting joint ownership by Plaintiff and Big Sugar of the bank accounts into which such revenue was deposited. Plaintiff demonstrated a lack of intent to fully

perform these obligations when it failed to truthfully report revenue or make the required revenue share payments even after confronted by Defendants. These acts constitute fraud in Plaintiff's performance of the Licensing Agreement.

### Fifth Affirmative Defense – Failure of Consideration

There was no consideration. Under the Licensing Agreement, Plaintiff was required to timely and accurately report and pay revenue due to Conradical, port The Outbound Ghost to other platforms, and deliver the game in other languages, among other obligations in consideration for Conradical granting Plaintiff a limited license to the game. Plaintiff failed to fulfill these obligations both initially and upon request from Defendants. This constitutes a failure of consideration, making the Licensing Agreement void *ab initio*.

### Sixth Affirmative Defense – Failure to Perform Conditions Precedent

Plaintiff never performed conditions precedent. Plaintiff, for example, failed to timely and accurately report revenue and make required payments under Section 5(a) of the Licensing Agreement. Plaintiff also failed to meet Defendants' commercial reasonably quality standards by failing to deliver a working game, failing to port a working game to other platforms, and failing to deliver the game in other languages — conditions precedent under the Licensing Agreement.

### Seventh Affirmative Defense – Failure to Mitigate Damages

Plaintiff failed to mitigate its alleged damages, if any. Plaintiff could have avoided all or some of the loss, cost, or expense of which Plaintiff complains by heeding Defendants' reasonable and timely requests to port The Outbound Ghost to other

platforms without bugs, distribute the game in other languages, timely and accurately report revenue received from its exploitation of the game, and make required revenue payments. Plaintiff, therefore, cannot recover damages for any sums that would have been prevented or lessened by the exercise of reasonable diligence.

### Eighth Affirmative Defense – Impossibility of Performance

Plaintiff's breach-of-contract claims are barred due to impossibility of performance. *See Key Energy Services, Inc. v. Eustace*, 290 S.W.3d 332, 339–40 (Tex. App.—Eastland 2009, no pet.) (identifying impossibility as an affirmative defense and explaining that it "generally applies" when "the death or incapacity of a person necessary for performance" occurs); *see also* Restatement (Second) of Contracts § 262 ("If the existence of a particular person is necessary for the performance of a duty, his death or such incapacity as makes performance impracticable is an event the non-occurrence of which was a basic assumption on which the contract was made.").

Defendants were introduced to Nick Alfieri, the then-CEO of Digerati, who was interested in working with Conradical to distribute The Outbound Ghost. Nick Alfieri sadly passed away in May 2022, before The Outbound Ghost was released. The non-occurrence of Mr. Alfieri's death was a basic assumption on which the contract was made; the event was not foreseeable when the parties entered into the contract and is not the result of Defendants' action or inaction. Defendants' duties to perform under the Licensing Agreement were, therefore, discharged upon Mr. Alfieri's death.

### *Ninth Affirmative Defense – Truth and Substantial Truth*

Without Defendants assuming the burden of proof other than as required by law, the complained-of statements of fact were true or substantially true. In Count VI, Plaintiff alleges defendant Grindheim has made defamatory statements. Mr. Grindheims's alleged statements are not defamatory because, among other reasons, they are substantially true.

### *Tenth Affirmative Defense – Opinion*

Without Defendants assuming the burden of proof other than as required by law, Texas law recognizes that statements of opinion are privileged. In Count VI, Plaintiff alleges defendant Grindheim has made defamatory statements. Mr. Grindheims's alleged statements were merely statements of non-actionable opinion, rhetoric, or hyperbole, and are therefore privileged and cannot constitute defamation.

### *Eleventh Affirmative Defense – Privilege*

Plaintiff's claims are barred by common law, statutory, and constitutional privileges, including the fair report privilege and the privilege of free speech found in Article I, Section 8 of the Texas Constitution and the First and Fourteenth Amendments to the United States Constitution.

### *Twelfth Affirmative Defense – No Proximate Cause*

Plaintiff's defamation claims are barred because the alleged injuries to Plaintiff and damages, if any, are due solely to other causes, matters or third parties that are not related to Defendants' statements, actions, operations, or conduct. Other public

information, specifically, proximately caused or contributed to plaintiff's alleged damages (if any).

### Thirteenth Affirmative Defense – Mitigation of Defamation Damages

Pursuant to Chapter 73 of the Texas Civil Practice and Remedies Code, Defendants assert and plead the affirmative defense of mitigation of damages. Specifically, Defendants specially pleaded and will offer evidence at trial of the following matters: (i) the facts and circumstances under which the allegedly defamatory statements (if any) were made; and (ii) evidence of the intent when the allegedly defamatory statements (if any) were made. In addition, Plaintiff failed to comply with Texas Civil Practice and Remedies Code Section 73.055 by failing to make a request for correction, clarification, or retraction and cannot recover exemplary damages.

### Fourteenth Affirmative Defense – Incremental Harm

Plaintiff's claims are barred by the incremental harm doctrine because the true and unchallenged statements in the alleged publications at issue, as well as the alleged statements or publications by others, are such that any alleged false or defamatory statements of fact in the challenged publications had no effect or a negligible effect on Plaintiff's reputation.

### Counterclaims

Defendant-counterclaim plaintiff Conradical Sàrl ("Conradical") asserts the following counterclaims against plaintiff-counterclaim defendant Digerati Distribution & Marketing, LLC ("Digerati") and additional counterclaim defendants Big Sugar LLC ("Big Sugar") and Sarah Alfieri, and alleges as follows:

*Introduction*

1.      Digerati is infringing Conradical's copyright in the video game titled The Outbound Ghost by continuing to distribute copies of the game after Digerati's license to do so terminated. Conradical and Digerati initially enjoyed a cooperative relationship as game developer and game publisher, respectively, and worked together to promote The Outbound Ghost. But Conradical was forced to terminate the license it had granted to Digerati when it became evident Digerati had breached their agreement, including hiding and misappropriating revenues and publishing an unapproved, broken version of the game. Digerati's ongoing infringement is causing significant reputational harm to Conradical as the game's developer.

2.      Digerati's ongoing unlicensed distribution of The Outbound Ghost also infringes Conradical's common law trademark rights in the marks THE OUTBOUND GHOST and in the "Ghost Logo" (shown below), which Conradical has long used in connection with its advertising and sale of the game. Again, Conradical had no choice but to terminate Digerati's license to use these marks because Digerati was failing to disclose and share sales revenue, and the poor quality of the unapproved game released by Digerati is causing significant harm to Conradical and its goodwill associated with its marks.



**Ghost Logo**

3.      Digerati has fraudulently underreported its revenues from sales of The Outbound Ghost, refused to pay Conradical the royalties that are owed, and refused to provide an audit despite Conradical's repeated requests. On top of all of the financial and reputational harm Digerati has caused to Conradical by its actions described above, Digerati and its sole owner Sarah Alfieri have also disparaged Conradical and created a false narrative that the problems with The Outbound Ghost are somehow Conradical's fault. This could not be further from the truth. Due to the ongoing harm caused by Digerati's conduct, Conradical must bring these counterclaims to seek injunctive relief and damages for Digerati's breach of contract, copyright infringement, trademark infringement, and fraudulent conduct, unjust enrichment, and for Sarah Alfieri's disparaging statements against Conradical.

*Parties*

4.      Conradical Sàrl is a limited liability company (or "society with limited responsibility") organized and existing under the laws of the Swiss Confederation with a principal place of business at Rue de Ransou 151, 1936, Switzerland.

5.      Conrad Grindheim is an individual domiciled in Switzerland, and is the Lead Developer at Conradical.

6.      Digerati Distribution & Marketing, LLC is a limited liability company organized and existing under the laws of the State of Texas. Digerati's principal place of business is located at 7200 Moon Rock Road, Austin, Texas.

7.      Sarah Alfieri is an individual domiciled in Texas. On information and belief, Alfieri is the only member of Digerati.

8.      Big Sugar LLC is a limited liability company organized and existing under the laws of the State of Texas. Big Sugar's registered address is at 2000 Kinney Avenue, Austin, Texas. On information and belief, Sarah Alfieri is the sole member of Big Sugar. On information and belief, Sarah Alfieri is majority owner of Big Sugar.

9.      In these Counterclaims, Digerati, Big Sugar, and Sarah Alfieri are collectively referred to as "Counterclaim Defendants."

### Jurisdiction and Venue

10.      Conradical's claims set forth in these Counterclaims arise under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §§ 134.001–134.005, and under Texas common law.

11.      This Court has subject matter jurisdiction over these Counterclaims pursuant to, 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367(a).

12.      This Court has subject matter jurisdiction over Conradical's Second and Third Counterclaims under 28 U.S.C. § 1331 because these claims arise under the Copyright Act, 17 U.S.C. §§ 101, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, respectively.

13.      The Court has subject matter jurisdiction over Conradical's counterclaims under 28 U.S.C. § 1367(a) because they are so related to Digerati's claims set forth in its First Amended Complaint (Dkt. 2) that they form part of the same case or controversy under Article III of the United States Constitution.

14.     This Court has subject matter jurisdiction over Conradical's counterclaims under 28 U.S.C. § 1332 because this is an action where the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of a state (Texas) and citizens of a foreign state (Switzerland).

15.     This Court has personal jurisdiction over Counterclaim Defendants because Counterclaim Defendants are residents of the State of Texas. In addition, upon information and belief, Counterclaim Defendants derive substantial revenue from business transactions in Texas and in this District, and otherwise avail themselves of the privileges and protections of the laws of the State of Texas such that this Court's exercise of jurisdiction over Counterclaim Defendants does not offend traditional notions of fair play and due process. In addition, Counterclaim Defendants' actions caused harm to Conradical in Texas and aimed such harm at Conradical in Texas and in this District such that Counterclaim Defendants should reasonably expect such actions to have consequences in Texas and in this District. Finally, Digerati consented to personal jurisdiction in this District by filing the underlying lawsuit (Dkt. 1) and its First Amended Complaint (Dkt. 2).

16.     Venue is proper in this District under 28 U.S.C. §§ 1391 because Digerati consented to venue "exclusively in the . . . federal courts within Travis County, Texas" in Section 10(a) of the Licensing Agreement, a substantial part of the events or omissions giving rise to the claim occurred in this District, and the Counterclaim Defendants are subject to the Court's personal jurisdiction with respect the underlying action already filed by Digerati in this District (*see* Dkt. 1 and Dkt. 2).

*Facts*

**The Outbound Ghost Game**

17.     Beginning in or about 2020, Mr. Grindheim conceived of and began

developing The Outbound Ghost.

18.     Conradical is an independent video game development company founded

in May 2021. Mr. Grindheim formed Conradical to commercialize The Outbound Ghost.

On or about June 13, 2022, Conradical released a free demo version of The Outbound

Ghost for download on personal computers (referred to as PC) via the Steam store.

19.     The Outbound Ghost is an adventure role-playing game ("RPG") about

helping ghosts ascend to the afterlife in which players can battle monsters, craft badges

to earn abilities, and explore a haunted town. The Outbound Ghost has a colorful

paper-cutout art style and engaging gameplay, as shown in the true and correct

screenshots from Steam shown below:





20.     The Outbound Ghost demo was successful upon initial release for PC, and players eagerly anticipated release of the full game. The Outbound Ghost later was made available for play on other platforms, including Nintendo Switch, PlayStation 4, and PlayStation 5.

21.     The Outbound Ghost is registered by Conradical as a copyrighted computer program under U.S. Copyright Registration No. TX0009222190. A true and correct copy of The Outbound Ghost copyright registration certificate is attached to this Counterclaim as **Exhibit A**.

22.     Conradical promoted the development and upcoming release of The Outbound Ghost under the trademarks THE OUTBOUND GHOST (in word and stylized forms) and the Ghost Logo (together, "The Outbound Ghost Marks") since at least as early as September 2020. For example, began raising money from potential customers of the game for further development of the game, using The Outbound Ghost Marks, on or about July 12, 2021. Conradical has continuously used The

Outbound Ghost Marks in interstate commerce in connection with the sale of downloadable video games since at least as early as June 13, 2022. True and correct examples of The Outbound Ghost Marks are shown below:





**The Licensing Agreement with Digerati**

23.      During the development of The Outbound Ghost, in or about summer 2021, Conradical was looking for a video game publisher to distribute The Outbound Ghost and "port" the game to other platforms, *i.e.*, make the game software compatible for play on other platforms, such as Nintendo and PlayStation. Conradical was introduced to Nick Alfieri, the then-CEO of Digerati, who was interested in working with Conradical to distribute The Outbound Ghost. Sadly, Nick Alfieri passed away in May 2022, before The Outbound Ghost was first released.

24.      Conradical and Digerati entered into a Video Game Licensing Agreement dated September 10, 2021 (the "Licensing Agreement"), that sets forth the terms under which Digerati (the "Publisher") would receive a license to distribute and promote The Outbound Ghost game as developed by Conradical (the "Developer"). A true and correct copy of that Licensing Agreement is attached to this Counterclaim as **Exhibit B**.

25.      Like many new relationships, Conradical and Digerati enjoyed a positive, collaborative working relationship in the beginning. However, over the months leading up to the December 2022 release of The Outbound Ghost on Nintendo Switch and PlayStation consoles, Conradical became increasingly concerned about the quality of the ports to other video game platforms Digerati provided for Conradical's testing and approval under the Licensing Agreement. This was only the beginning of the behind-the-scenes problems caused by Digerati.

26.     Under the Licensing Agreement, Conradical owns all intellectual property rights in The Outbound Ghost, including any variants thereof. (*See, e.g.*, Licensing Agreement at § 3(d).)

27.     The Licensing Agreement also provides that Digerati's use of any trademarks associated with The Outbound Ghost to promote and distribute the game must meet Conradical's "commercially reasonable quality standards." (Licensing Agreement at § 3(a)(ii).)

28.     Under Section 8(c) of the Licensing Agreement, Conradical has the right to terminate the Licensing Agreement "upon a material default or breach by [Digerati] of any of its obligations under this Agreement, unless within 30 calendar days after receipt of written notice of such default, [Digerati] remedies such default (unless such default is incapable of being cured)." (Licensing Agreement at § 8(c).)

**Digerati's Failure to Meet Quality Standards under the Licensing Agreement**

29.     Digerati breached Section 3(a)(ii) of the Licensing Agreement by materially failing to comply with Conradical's commercially reasonable quality standards.

30.     Beginning in or about July 2022, Conradical began raising quality issues with Digerati regarding porting The Outbound Ghost to other platforms. For example, Digerati hired another company known as Bromio to assist in porting the game to other platforms. Beginning in or about July 2022, Conradical pointed out its concerns with the quality of the porting work. Digerati and Bromio responded by claiming Conradical's concerns stemmed from the early nature of the project. In or about September 2022,

Conradical began making stronger and more urgent requests that Digerati and Bromio address problems with their efforts to port the game to other platforms. Conradical, Digerati, and Bromio began holding weekly telephone conferences regarding Conradical's quality concerns. Nevertheless, Digerati and Bromio again brushed aside Conradical's concerns.

31.     On or about October 10, 2022, Conradical reported quality issues to Trey Armer, the head of marketing at Digerati and Big Sugar, regarding the porting of The Outbound Ghost to Nintendo Switch. Specifically, Conradical reported the current build was "unreleasable" due to extremely low framerate. A true and correct screen-shot of the October 10, 2022, conversation between Conrad Grindheim and Mr. Armer on Slack is set forth below:



32.     Digerati assured Conradical it would address Conradical's concerns with the quality of the Nintendo Switch version of The Outbound Ghost. The problems with low framerate and "lagging" in gameplay, however, were not corrected prior to Digerati releasing the game on the Nintendo Switch platform.

33.     The fact that Conradical was promoting The Outbound Ghost on social media and wanted the game to succeed upon initial release does not mean everything was perfect behind closed doors. Conradical hoped the problems with Digerati could be resolved and would not negatively impact the game's success.

34.     Immediately upon release of the Nintendo Switch version of The Outbound Ghost, numerous players complained online that the game was "unplayable" due to the same framerate and lagging issues Conradical had already raised with Digerati. True and correct copies of online complaints posted on Twitter and YouTube regarding the Nintendo Switch version of The Outbound Ghost are set forth below:











D

**Dani** 6 days ago

The switch version of the game works terribly, it has a lot of lag and the combats work very badly, do you plan to release a patch to correct this?

I bought the physical edition of Switch because I had been following the game for a long time and I feel cheated, and it hurts me because the game looks beautiful.

Reply

**Mr. Variant** 3 days ago (edited)

1:08 lol they misspelled argument already. I know they did an apology for the choppy switch version but that typo is hilarious so fast, it's like double dragon 3 bimmy and jimmy lee in 2 player instead of billy and jimmy. DD Neon even spoofed it with clones bimmy and jimmy.

3:15 black screen loading for 10 seconds is unacceptable let alone they force the tutorial instead of being optional

Reply

1 reply

**Pixelacos Gameplays** 3 days ago

and 17 fps xddddddddddddddd

1 Reply

**ichimura ko** 20 hours ago

I purchased the physical copy and the framerate is terrible! Very disappointed...

1 Reply

**Destiny** 🍄👑🧚🐾🍃🌈 @MarioFreak1997 · Dec 5

Replying to @OutboundGhost

Yeah I have my copy and I tried it last night, unfortunately the framerate is super bad 😕 I'm not gonna return the game cuz I am still gonna play it once it's fixed. I've looked forward to this and still can't wait to play it 😊

1

35.      Digerati claims it "welcomes improvements from its developers" and "does not seek to compel developers to publish video games that do not reflect their original creation." (*See* First Amended Complaint ¶ 4.) Digerati's conduct contradicts these statements. The ports of The Outbound Ghost were supposed to meet Conradical's commercially reasonable quality standards, *i.e.,* be of at least the same quality as the original PC version of The Outbound Ghost created by Conradical. (*See* Licensing Agreement at § 3(a)(ii).) Digerati failed to meet the required quality standards.

**Digerati's Failure to Report Revenue, Make Revenue Share Payments,
and Provide an Audit under the Licensing Agreement**

36.     Digerati failed to report and pay to Conradical the full amount of royalties owed for sales of The Outbound Ghost.  (Licensing Agreement at § 5(a).)

37.     Under the Licensing Agreement, Digerati was required to report adjusted gross revenue received by Digerati from the exploitation of The Outbound Ghost for each quarter to Conradical within 45 days of the end of such calendar quarter. (Licensing Agreement at § 5(b).) Under the Licensing Agreement, Digerati was required to pay a "Revenue Share" to Conradical for each quarter within 45 days of the end of each calendar quarter. *Id*.

38.     Under the Licensing Agreement, Digerati was required to pay Conradical 20% of the adjusted gross revenue from the exploitation of The Outbound Ghost during an initial "recouping period," after which Digerati was required to pay Conradical an increased share of 50% of the adjusted gross revenue. (*See* Licensing Agreement, Exhibit B, Section at § 2.)

39.     Digerati has repeatedly failed to timely, fully, and accurately report all revenue received from the exploitation of The Outbound Ghost. Digerati has repeatedly failed to make timely, complete, and accurate revenue share payments to Conradical.

40.     Digerati did not provide any report of revenue received in the first quarter of 2022, despite, on information and belief, receiving revenue from its exploitation of The Outbound Ghost during that time period.

41.     Digerati did not make any Revenue Share payment to Conradical within 45 days of the end of the first quarter of 2022, despite, on information and belief, receiving revenue from its exploitation of The Outbound Ghost during that time period.

42.     For example, in or around March 2022, Digerati entered into a sublicensing agreement with Soft Source. Defendants first learned of Digerati's agreement with Soft Source from a statement on the PlayStation video game store. PlayStation stated that the game was "[l]icensed and published by Soft Source Pte Ltd." A true and correct copy of a screenshot from the PlayStation video game store is set forth below:



Digerati did not reveal its agreement with Soft Source to Conradical until December 2022, after Defendants brought the notation on the PlayStation video game store to Digerati's attention. Based on its agreement with Soft Source, Digerati received a $20,000 advance payment from Soft Source for anticipated sales of The Outbound

Ghost. On or about December 13, 2022, Digerati falsely claimed to have received the $20,000 payment from Soft Source in the fourth quarter of 2022. Put simply, Digerati did not timely report or pay to Conradical the revenue share of this payment from Soft Source that was due under the Licensing Agreement.

43.     Digerati reported its purported revenue received in the fourth quarter of 2022 on or about February 2, 2023. In that report, Digerati stated it received approximately $146,448.01 in payments for The Outbound Ghost in the fourth quarter of 2022. Digerati's February 2, 2023, report was not complete or accurate.

44.     Digerati did not make any Revenue Share payment by the February 14, 2023, due date for such payments. On or about February 17, 2023, Digerati made a Revenue Share payment of $37,224.01 to Conradical. Digerati made this payment after Conradical sent take-down notices under the Digital Millennium Copyright Act. Digerati's February 17, 2023, Revenue Share payment was incomplete. Digerati's February 17, 2023, Revenue Share payment did not reflect all revenues received by Digerati during the fourth quarter of 2022.

45.     For example, in or around September 2022, Digerati entered into an agreement with Epic Games. Under the terms of its agreement with Epic Games, if game "achievements" became available, or "went live," on the Epic Games store, then Games owed a payment to Digerati. A true and correct screen-shot of an October 7, 2022, conversation between Conrad Grindheim and Mike Corrigan of Digerati on Slack is set forth below:



46.     As of at least November 29, 2022, "achievements" were live on the Epic

Games store. On information and belief, Digerati received approximately $10,000 from

Epic Games pursuant to their agreement.

47.     On or about June 24, 2022, Digerati entered into a sublicensing agreement

with Merge Games. Digerati received a $30,000 payment from Merge Games on or

about October 6, 2022. Digerati did not reveal any terms of its agreement with Merge

Games to Conradical until on or about December 23, 2022. On or about December 23,

2022, Digerati's counsel provided a redacted copy of Digerati's agreement with Merge

games to Conradical. At that time, Digerati represented it had redacted the agreement

because it "included other games." Digerati's representation regarding the scope of its

agreement with Merge Games was false. Digerati's agreement with Merge games

addresses only The Outbound Ghost. Under that agreement, in or around September

2022, Digerati received a pre-order for at least 15,000 physical copies of The Outbound Ghost from Merge Games. Digerati concealed payments for these orders from Conradical. Under the terms of Digerati's agreement with Merge Games, Digerati should have received payment for those at least 15,000 units of The Outbound Ghost in or about the fourth quarter of 2022. Digerati has not timely reported to Conradical or made a Revenue Share payment based on Digerati's pre-order of at least 15,000 units of The Outbound Ghost. That is, Digerati is concealing over $240,000 in revenue from Conradical based solely on its relationship with Merge Games.

48.     In summary, Digerati understated the revenue it received in its February 2, 2023 report, and Digerati underpaid Conradical on February 17, 2023

49.     On information and belief, Digerati has received at least $369,448.01 in revenue from sales of The Outbound Ghost, and Digerati should have made Revenue Share payments to Conradical of at least $145,000.

50.     Under the Licensing Agreement, Digerati is required to maintain books and records reasonably sufficient to permit verification of its compliance with its obligations under the Licensing Agreement. (Licensing Agreement at § 5(c).) Conradical is authorized to inspect such books and records upon 15 days' notice. *Id*. Conradical first requested such an audit on or about November 29, 2022. In response Digerati failed to timely make its books and records available for inspection. Conradical has made repeated subsequent requests for an audit under the Licensing Agreement. In response, Digerati has consistently ignored or imposed unreasonable obstacles to such audit. To

date, Digerati has not allowed Conradical to audit its books and records pursuant to the Licensing Agreement.

**Digerati's Fraud**

51.     Under the Licensing Agreement, Digerati is required to truthfully and accurately report all revenue received from its exploitation of The Outbound Ghost to Conradical. Digerati has not fulfilled this obligation. Indeed, on information and belief, Digerati has knowingly underreported revenue to Conradical. Digerati has hidden such revenue from Conradical in order to avoid making the required Revenue Share payments.

52.     For example, Digerati has stated that it received no revenue from its exploitation of The Outbound Ghost prior to October 1, 2022. Digerati, however, received $20,000 from Soft Source in or about March 2022. Therefore, Digerati's statements that it had not received any revenue were knowingly false.

53.     In another example, on or about December 23, 2022, Digerati reported to Conradical that it had received $140,570.13 in revenue from its exploitation of The Outbound Ghost. Digerati, however, failed to include revenue received, on information and belief, from resellers of the game such as Merge Games. As described in Paragraph 47 above, Merge Games ordered at least 15,000 physical copies of The Outbound Ghost in or about September 2022. Under Digerati's agreement with Merge Games, Digerati should have received payment for its sale of at least 15,000 units of the game in the fourth quarter of 2022. Digerati, however, has not reported such revenue to Conradical to this date. In fact, as of December 23, 2022, on information and belief, Digerati had

received at least $369,000 from all sales of the Outbound Ghost. In other words, Digerati

vastly understated its revenue to Conradical when it claimed to have received just

$140,570.13 in revenue from The Outbound Ghost as of December 23, 2022. Digerati's

misstatement of its revenue was knowingly false, intended to deceive Conradical into

believing the game was not financially successful, and intended to deprive Conradical

of its full Revenue Share.

54.     In another example, on or about February 3, 2023, Digerati provided a

report of revenue to Conradical.  In that report, Digerati knowingly and intentionally

underreported the revenue it has received from its exploitation of The Outbound Ghost

as described in Paragraphs 36 to 50 of this Counterclaim.

55.     In another example, under the Licensing Agreement, Digerati's revenue

share payments to Conradical are reduced by certain "Recoupable Payments." From

December 2022 to the present, Digerati has knowingly and intentionally over-stated its

Recoupable Payments in order fraudulently reduce the amount of Revenue Share

payments it owes to Conradical.

56.     For example, Digerati reported to Conradical that the porting fees paid by

Digerati to Bromio, the company hired to port The Outbound Ghost to other platforms,

were $29,927.37. On information and belief, the porting fees were significantly less than

$29,927.37.

57.     In addition, Digerati reported to Conradical that the localization fees paid

by Digerati to Locadile, the company hired to translate The Outbound Ghost into other

languages, were $7,350.  On information and belief, the localization fees were significantly less than $7,350.

**Digerati's Failure to Provide Access Keys to Certain Backers**

58.     Under Section 4(j) of the Licensing Agreement, Digerati agreed to work with Conradical "in good faith" to ensure that certain individuals who demonstrated early interest in The Outbound Ghost (the "Backers") would receive access keys to play the game "in a commercially reasonable fashion and timeframe." (Licensing Agreement at § 4(j).)

59.     Digerati failed to provide access keys to many of the Backers. To the extent Digerati provided access keys to Backers, delivery of those access keys was untimely.

60.     Initially, Digerati worked with Conradical to deliver access keys to the Backers. However, Digerati ceased delivering access keys on or about December 1, 2022, despite Conradical's repeated requests for Digerati to do so or allow Conradical to do so. A true and correct screen-shot of a December 1, 2022, message from Conrad Grindheim to Mike Corrigan of Digerati on Slack is set forth below:



A true and correct screen-shot of a December 5, 2022, conversation between Conrad Grindheim and Mike Corrigan of Digerati on Slack is set forth below:



61.     Because of Digerati's refusal to work with Conradical in good faith as required by Section 4(j) of the Licensing Agreement, most of the Backers have not

received the promised access keys. Some of the affected Backers believe the failure to provide keys is Conradical's fault, causing significant harm to Conradical's reputation with its player base.

**Conradical's Termination of the Licensing Agreement With Cause**

62.   Given the multiple material breaches by Digerati, Conradical had no choice but to terminate the Licensing Agreement and try to salvage its reputation after the many issues with The Outbound Ghost ports became public.

63.   On November 29, 2022, Conradical terminated the Licensing Agreement effective immediately due to multiple uncured material breaches by Digerati, pursuant to Section 8(c) of the Licensing Agreement.

64.   Conradical sent additional letters to Digerati on December 6, 2022, December 15, 2022, and December 21, 2022, notifying Digerati of its ongoing breaches of the Licensing Agreement.

**Digerati's Ongoing Unauthorized Sale of The Outbound Ghost and Infringement**

65.   Upon termination of the Licensing Agreement, Digerati had no further right to use Conradical's copyrights or trademarks including, but not limited to, the copyright covered by United States Copyright Registration No. TX0009222190 and The Outbound Ghost Marks.

66.   Digerati, however, continues to distribute the game notwithstanding Conradical's termination of the Licensing Agreement.

67.   On or about February 16, 2023, Conradical notified various online distributors of the game that Digerati had no right to continue to distribute The

Outbound Ghost, such continued distribution of The Outbound Ghost constituted ongoing copyright infringement and, therefore, distributors should cease offering The Outbound Ghost for sale on their websites under the Digital Millennium Copyright Act.

68.     On or about February 21, 2023, Digerati responded to such notices by disputing Conradical's copyright infringement claims. As a result, some online distributors, such as Steam, Fanatical, and Merge are again distributing The Outbound Ghost in violation of Conradical's copyrights.

69.     By its DMCA counter-notices and other communication with online distributors of The Outbound Ghost, Digerati also is knowingly and intentionally inducing distributors such as Steam, GOG, Merge Games, Nintendo, Fanatical, and Greenman Gaming to infringe Conradical's copyright and trademarks.

70.     By providing access keys to The Outbound Ghost to online distributors of The Outbound Ghost such as Steam, GOG, Merge Games, Nintendo, and Microsoft Digerati is knowingly and intentionally contributing to such publishers' ongoing infringement of Conradical's copyright and trademarks.

**Big Sugar's Unjust Enrichment and Comingling of Funds**

71.     On information and belief, Digerati is co-mingling or even hiding revenue received from its exploitation of The Outbound Ghost with Big Sugar.

72.     On or about December 23, 2023, Digerati provided certain bank statements to Conradical purportedly showing when it received payments for sales of The Outbound Ghost. Those bank statements reveal that Digerati and Big Sugar share a bank account.

73.     On information and belief Digerati is transferring revenue received from sales of The Outbound Ghost to Big Sugar in order to avoid paying the required Revenue Share to Conradical.

**Digerati's and Alfieri's Defamation**

74.     Digerati and Sarah Alfieri are knowingly spreading false information regarding Conradical, Conrad Grindheim, and The Outbound Ghost orally and in writing.

75.     For example, Digerati and Alfieri have knowingly and intentionally blamed Conradical and Mr. Grindheim for Digerati's failure to port the game to platforms beyond the PC platform.

76.     On December 9, 2022, Digerati posted a video statement to its Twitter account at the following URL:

https://twitter.com/DigeratiDM/status/1601245863979859968. In this video, Sarah Alfieri made the following statements:

a.  "We've been blindsided by the sudden negativity from Conrad, the game's developer."

b.  "Until literally hours before the console launch, we had enjoyed a cooperative and mutually pleasant working relationship with Conrad and we saw no indication of any dissatisfaction on his part."

c.  "Unfortunately, [Conrad] has now wrongly told us he is terminating our contract, even going so far as attempting to use the tragic and sudden death of my husband as grounds for termination"

d. "In addition, Conrad has unlawfully tampered with the Steam page and attempted to take down the console versions as well."

e. "We are actively trying to make improvements and release patches, and have been met with repeated attempts to sabotage our efforts and sully our name."

77.     The statements that Digerati was "blindsided by the sudden negativity from Conrad" and "saw no indication of any dissatisfaction on [Conrad's] part" are demonstrably false. Conradical raised quality issues with The Outbound Ghost with Digerati on several occasions from July 2022 through November 2022, including Mr. Grindheim's Slack messages to Trey Armer on October 10, 2022, and ongoing complaints to Digerati during telephone conferences among Defendants, Digerati, and Bromio. (*See* paragraphs 30–32 above.). In response, Digerati repeatedly assured Conradical that it would resolve all such issues before releasing the game. Defendants were not aware of the extent of Digerati's failure to properly port the game to other platforms until on or about November 29, 2022, when purchasers and fans of the game began complaining about the game's quality. At this point, Defendants realized the extent of Digerati's quality and performance failures.

78.     The statement that "We are actively trying to make improvements and release patches, and have been met with repeated attempts to sabotage our efforts and sully our name" falsely implies that Conradical was attempting to sabotage its own game and prevent Digerati from making improvements and releasing patches. On the

contrary, Conradical made every effort to ensure that Digerati's releases of The
Outbound Ghost met Conradical's quality standards.

79.    Conradical worked diligently with Digerati and Bromio to address the
porting quality problems until Conradical terminated the Licensing Agreement on
November 29, 2022. Conradical's conversations with Bromio revealed that Bromio was
finding bugs in the game that did not exist in Conradical's PC version of the game. In
other words, Bromio was working on fixing bugs that Digerati or Bromio created. True
and correct screenshots of the November 29, 2022, conversation between Conrad
Grindheim and Bromio on Slack are set forth below:



80.     Conradical provided advice as to how to fix problems with The Outbound Ghost. For example, Conradical created a special setting that would have fixed many of the consumer performance complaints. Digerati did not adopt Conradical's suggested improvement. A true and correct screen-shot of a September 29, 2022, message from Conrad Grindheim to Digerati on Slack is set forth below:



81.     As of the date of this Counterclaim, Digerati has not made any material changes to The Outbound Ghost since at least December 13, 2022. Digerati has taken no such actions notwithstanding complaints from consumers about the game's performance and its awareness of problems with the game. A true and correct screenshot posted by Digerati on or about December 4, 2022, is set forth below:



82.     In addition to the false statements described above, the gist of the video

statement as a whole is defamatory. Defendants intended to, and did, defame

Conradical. Alfieri stated that Conrad, Conradical's principal, received support from

crowdsourcing individuals, known as kickstarter backers, and "substantial funds" from

Digerati. In the short two-minute video, Alfieri claimed that he took money from

kickstarters and from Digerati to develop the game, said nothing negative to Digerati

about quality issues, and then blindsided Digerati by taking down the game and using

Alfieri's husband's death as an excuse, while preventing Digerati from improving the

game. A person of ordinary intelligence would perceive the publication as a whole to

convey that Conradical undermined the game without a good faith basis. Nothing

could be further from the truth.

83.     Alfieri knew or should have known that her statements and their gist

were false. She was the sole member of Digerati at the time of the events in question. It

was a small company with less than twenty employees. It is not plausible that she was ignorant of Conradical's repeated complaints about the Outbound Ghost given the size of Digerati. At an absolute minimum, she would have known her statements were false had she spoken with the relevant individuals at Digerati who had worked on the Outbound Ghost and were aware of Conrad's complaints. And if she did not speak with them or otherwise investigate, making such statements was reckless or her part.

84.    Moreover, Alfieri knew or should have known that her false statements would be detrimental to Conradical's and Grindheim's ability to raise additional funds from kickstarters for The Outbound Ghost or future game development projects.

**First Counterclaim – Breach of Contract**
**(Against Digerati)**

85.    Conradical incorporates the allegations of Paragraphs 1–84 of these Counterclaims by reference into this Count I as though fully set forth herein.

86.    In the alternative to Defendants' Third, Fourth, Fifth, Sixth, and Eighth Affirmative Defenses, the Licensing Agreement was a valid contract that existed between Conradical and Digerati as of September 10, 2021.

87.    Conradical performed its obligations under the Licensing Agreement.

88.    Digerati breached the Licensing Agreement.

89.    Conradical sustained damages as a result of Digerati's breach.

90.    Conradical also seeks to recover its attorneys' fees and expenses under Chapter 38 of the Texas Civil Practice and Remedies Code.

## Second Counterclaim – Copyright Infringement
### (Against Digerati)

91.     Conradical incorporates the allegations of Paragraphs 1–90 of these Counterclaims by reference into this Count II as though fully set forth herein.

92.     Conradical owns a valid and enforceable copyright and U.S. Copyright Registration No. TX0009222190 for The Outbound Ghost.

93.     Despite Conradical's exclusive rights to The Outbound Ghost, Digerati has infringed, induced, or contributed to the infringement of Conradical's copyright in The Outbound Ghost by copying the source code and distributing and selling copies of The Outbound Ghost, all without Conradical's permission, in violation of 17 U.S.C. § 501.

94.     All use of The Outbound Ghost by Digerati that took place after the Licensing Agreement was terminated by Conradical on November 29, 2022, constitutes copyright infringement in violation of 17 U.S.C. § 501.

95.     Digerati's copyright infringement has been willful, knowing, and intentional.

96.     Digerati's copyright infringement has caused irreparable harm to Conradical that cannot easily be ascertained, but at a minimum includes lost sales.

97.     Unless enjoined by the Court, Digerati will continue to do the acts complained of in this counterclaim and cause damage and injury, all to Conradical's irreparable harm and Digerati's unjust enrichment.

**Third Counterclaim – Trademark Infringement/Unfair Competition**
**(Against Digerati)**

98.     Conradical incorporates the allegations of Paragraphs 1–97 of these Counterclaims by reference into this Count III as though fully set forth herein.

99.     Digerati's acts described in these Counterclaims constitute a violation of 15 U.S.C. § 1125(a), as Digerati has used and continues to use in commerce words, terms, symbols, devices, names, or combinations thereof, or a false designation of origin which are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Digerati with Conradical, or as to the origin, sponsorship, or approval of Digerati's goods by Conradical.

100.    For example, Digerati continues to sell The Outbound Ghost using The Outbound Ghost Marks falsely implying affiliation, connection, or association with Conradical.

101.    All use of The Outbound Ghost Marks by Digerati that took place after the Licensing Agreement was terminated by Conradical on November 29, 2022, constitutes a violation of 15 U.S.C. § 1125(a).

102.    Upon information and belief, Digerati's actions have been and are willful, deliberate, and done with knowledge of Conradical's rights.

103.    Conradical has no adequate remedy at law. Digerati's actions complained of in these Counterclaims have caused Conradical damage and injury and unjustly enriched Digerati. Unless enjoined by this Court, Digerati will continue to do the acts

complained of in these Counterclaims and cause damage and injury, all to Conradical's irreparable harm and to Digerati's unjust enrichment.

### Fourth Counterclaim – Fraud
### (Against Digerati)

104.    Conradical incorporates the allegations of Paragraphs 1–103 of these Counterclaims by reference into this Count IV as though fully set forth herein.

105.    Digerati made factual and material representations to Conradical. For example, Digerati claimed it received no revenue or knowingly and intentionally understated its revenue received from exploitation of The Outbound Ghost prior to October 1, 2022, on at least the following occasions: December 6, 2022, December 8, 2022, February 3, 2023, February 13, 2023. Digerati also claimed it received less revenue than it actually received when it provided a revenue share report on or about February 3, 2023.

106.    Digerati made these representations with knowledge of their falsity or recklessly as a positive assertion without knowledge of their truth. Specifically, Digerati intended to deceive Conradical into believing that Digerati did not owe any revenue share payments to Digerati in the second, third, and fourth quarters of 2022. Digerati also intended to deceive Conradical as to the amount of revenue share payments due to Conradical in the first quarter of 2023.

107.    Digerati intended for Conradical to act on the representations or to induce Conradical's reliance on the representations. Specifically, Digerati intended Conradical to believe that had no money due in 2022 and accept Digerati's underpayment in 2023.

108.    Conradical reasonably and justifiably relied on the representations. Specifically, Conradical did not realize Digerati was withholding payments until in or about November 2022 and, therefore, did not demand full payment until that time.

109.    Conradical suffered damages or injury as a result.

## Fifth Counterclaim – Unjust Enrichment
### (Against Big Sugar and Digerati)

110.    Conradical incorporates the allegations of Paragraphs 1–109 of these Counterclaims by reference into this Count V as though fully set forth herein.

111.    There is no contract between Big Sugar and Conradical.

112.    Big Sugar received funds from the sale of The Outbound Ghost that rightfully belong to Conradical. These funds were provided by Conradical's development and licensed sales of The Outbound Ghost.

113.    Big Sugar was enriched by virtue of Conradical providing services for the development of The Outbound Ghost and licensing its right to exploit and sell copies of The Outbound Ghost, resulting in the funds from sales of The Outbound Ghost being misdirected to Big Sugar.

114.    Big Sugar wrongfully secured funds that belong to Conradical or passively received funds from sales of The Outbound Ghost that it would be unconscionable for Big Sugar to retain.

115.    As a result of Big Sugar's acts and omissions directly resulting in Big Sugar's retention of the funds belonging to Conradical, Conradical has suffered actual and significant damages in the form of lost revenue.

116.     For the reasons set forth above, Big Sugar will be unjustly enriched if allowed to retain the funds belonging to Conradical, and therefore, Conradical is entitled to full restitution for the value of such funds in an amount not easily ascertained by Conradical.

117.     Big Sugar, through its principal Alfieri, was aware of the extreme degree of financial risk to Conradical resulting from Big Sugar's sharing and taking of funds from the joint account it held with Digerati. Big Sugar nevertheless proceeded with conscious indifference to the rights of Conradical.

118.     In addition, any funds related to The Outbound Ghost received by Digerati after termination of Digerati's license rightfully belong to Conradical. These funds were provided by Conradical's development and licensed sales of The Outbound Ghost.

119.     Digerati was enriched by virtue of Conradical providing services for the development of The Outbound Ghost and its exploitation and sale of The Outbound Ghost, resulting in the funds from sales of The Outbound Ghost being misdirected to Digerati.

### Sixth Counterclaim – Defamation
### (Against Digerati and Sarah Alfieri)

120.     Conradical incorporates the allegations of Paragraphs 1–119 of these Counterclaims by reference into this Count VI as though fully set forth herein.

121.    At all relevant times, Conradical has been and is a private individual and is not a public figure or official, and Sarah Alfieri is a non-media defendant. Ms. Alfieri is an agent of Digerati.

122.    Ms. Alfieri made oral statements in the video publicly posted to Digerati's Twitter account on December 9, 2022, regarding Conradical's services, Conradical's complaints to Digerati, and the existence and nature of Conradical's grounds for terminating the Licensing Agreement. These statements are false or create a substantially false impression. In addition, their gist as a whole are defamatory.

123.    Before publishing her defamatory statement on December 9, 2022, Alfieri had knowledge that Conradical had complained to Digerati multiple times about (a) technical issues with Digerati's porting of The Outbound Ghost, (b) Digerati's failure to provide The Outbound Ghost in non-English languages as promised, (c) Digerati's failure to provide access keys to certain individuals as promised, (d) Digerati's withholding payment of Conradical's share of revenue owed under the Licensing Agreement, and (e) Digerati's co-mingling of revenue derived from sales of The Outbound Ghost with Big Sugar. In addition, Ms. Alfieri had knowledge that Conradical terminated the Licensing Agreement because of these material breaches by Digerati.

124.    Ms. Alfieri made these false and defamatory statements with malice or intentionally or, alternatively, by negligently failing to ascertain or state the truth. Ms. Alfieri either knew or should have known in the exercise of ordinary care that the statements were false.

125.    Ms. Alfieri's statements were defamatory as they tend to harm Conradical's reputation, expose Conradical to financial injury, and impeach Conradical's honesty, integrity, virtue, or reputation. Ms. Alfieri intended for her statements to have a detrimental impact on Conradical.

126.    The publication of Ms. Alfieri's defamatory statements on Twitter was not privileged.

127.    As a direct and proximate result of Ms. Alfieri's publication of the defamatory statements, Conradical's reputation has been severely injured. The defamatory statements have caused Conradical to suffer actual damages, humiliation, and embarrassment. Conradical seeks all damages resulting from Ms. Alfieri's defamation. Conradical has realized pecuniary losses in the form of lost sales with respect to The Outbound Ghost and harm to its business reputation.

128.    Unless Ms. Alfieri is enjoined from continuing her defamatory statements directed toward Conradical, Conradical will suffer irreparable harm in the loss of customers and revenue for which it cannot be adequately compensated in damages.

### Seventh Counterclaim – Violation of the Texas Theft Liability Act
### (Against Digerati and Big Sugar)

129.    Conradical incorporates the allegations of Paragraphs 1–128 of these Counterclaims by reference into this Count VII as though fully set forth herein.

130.    Counterclaim Defendants, through deceit and overt actions, took funds belonging to Conradical. Conradical had possessory and ownership interests in the money taken by Counterclaim Defendants. Counterclaim Defendants unlawfully

appropriated the funds by taking them without Conradical's effective consent, and did so with the intent to deprive Conradical of the funds permanently or for an extended period of time.

131.    As a direct result of Counterclaim Defendants' theft, Conradical has suffered injury and has been damaged in an amount not easily ascertained by Conradical. Accordingly, Conradical seeks its actual damages. In addition to its actual damages, Conradical also seeks statutory damages pursuant to Section 134.005(a)(1) of the Texas Civil Practice and Remedies Code and pleads for such statutory damages in the amount of $1,000.00.

132.    In addition, Conradical is entitled to its court costs and attorney's fees pursuant to Section 134.005(b) of the Texas Civil Practice and Remedies Code.

### Eighth Counterclaim – Money Had and Received
### (Against Big Sugar and Digerati)

133.    Conradical incorporates the allegations of Paragraphs 1–132 of these Counterclaims by reference into this Count VIII as though fully set forth herein.

134.    There is no contract between Big Sugar and Conradical.

135.    Big Sugar received funds from the sale of The Outbound Ghost that rightfully belong to Conradical. These funds were provided by Conradical's development and licensed sales of The Outbound Ghost. They should have been provided to Conradical by Digerati.

136.    Conradical has suffered actual and significant damages in the form of lost revenue.

137.    For the reasons set forth above, Big Sugar has obtained money which in equity and good conscience belongs to Conradical.

138.    Big Sugar, through its principal Alfieri, was aware of the extreme degree of financial risk to Conradical resulting from Big Sugar's sharing and taking of funds from the joint account it held with Digerati. Big Sugar nevertheless proceeded with conscious indifference to the rights of Conradical.

139.    In addition, any funds related to The Outbound Ghost received by Digerati after termination of Digerati's license rightfully belong to Conradical in equity and good conscience. These funds were provided by Conradical's development and licensed sales of The Outbound Ghost.

### Prayer for Relief

WHEREFORE, Conradical respectfully requests the Court enter judgment in favor of Conradical and against Counterclaim Defendants on Counts I through VII of these Counterclaims, granting the following relief:

a)  judgment that Digerati has breached the Licensing Agreement;

b)  an award of compensatory and economic damages adequate to compensate Defendants for Digerati's breach of the Licensing Agreement;

c)  judgment that Digerati has willfully infringed, induced infringement of, or contributed to the infringement of Conradical's copyright in the work entitled The Outbound Ghost;

d)  an injunction against Digerati, including its officers, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related

companies, attorneys, and all others in active concert or participation with

them who receive notice of this injunction, permanently enjoining them from

copying, importing, publicly displaying, distributing, selling, or advertising

products infringing Conradical's copyrights;

e) an order that Digerati be direct to deliver up to this Court for destruction,

pursuant to 17 U.S.C. § 503, all products, packaging, prints, advertisements,

publications, promotions, or other articles in its possession infringing upon

Conradical's copyrights, or any reproduction, counterfeit, copy, or colorable

imitation thereof, and all plates, molds, matrices, screens, or other means of

making the same;

f) an order that Digerati be required to account for and pay over to Conradical

all actual damages suffered by Conradical; all gains, profits, and advantages

derived by Digerati from its infringement of Conradical's copyright, and such

other damages as the Court shall deem proper within the Copyright Act;

g) an order directing Digerati to file with the Court, and to serve on Conradical,

within thirty (30) days after entry of the above injunction, a report in writing,

under oath, setting forth in detail the manner and form in which it has

complied with the injunction;

h) judgment that Digerati has infringed and is infringing Conradical's The

Outbound Ghost Marks;

i) judgment that such infringement by Digerati was and is willful;

j)  an award of damages and disgorgement of Digerati's profits and unjust enrichment to Conradical in an amount to be determined at trial;

k)  an order for an accounting of Digerati's profits and unjust enrichment;

l)  an order that Digerati compensate Conradical for the advertising or other expenses necessary to dispel any public confusion caused by Digerati's infringement of Conradical's The Outbound Ghost Marks and other unlawful acts;

m) an order temporarily, preliminarily, and permanently enjoining and restraining Digerati and their officers, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, attorneys, and all others in active concert or participation with them who receive notice of this injunction from:

   i.  using Conradical's The Outbound Ghost Marks or any confusingly similar mark, name, domain name, or colorable imitation thereof, in connection with Digerati's businesses which may in any way mislead or confuse anyone as to the source, affiliation, or sponsorship of such business;

   ii.  otherwise infringing or diluting the distinctive quality of Conradical's The Outbound Ghost Marks;

   iii.  injuring Conradical's business reputation and the goodwill associated with The Outbound Ghost Marks and from otherwise unfairly competing, directly or indirectly, with Conradical; and

iv.   causing a likelihood of confusion or misunderstanding as to source, sponsorship, association, affiliation, approval, or certification with or by Conradical, or engaging in conduct tending to create a false commercial impression of Conradical's goods or any other conduct which tends to pass off Digerati's goods as those of Conradical or creates a likelihood of confusion or misunderstanding or false representation;

n)  an award to Conradical of increased damages to fully compensate Conradical and punitive damages for the willful and wanton nature of Digerati's wrongful acts and because this is an "exceptional" case;

o)  an award of damages and disgorgement of Big Sugar's profits and unjust enrichment and money had and received to Conradical in an amount to be determined at trial;

p)  an order for an accounting of Big Sugar's profits and unjust enrichment and money had and received;

q)  an order that Counterclaim Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from publishing communications to third parties that contain defamatory statements about Conradical's business, services, character, or the like;

r)  an award to Conradical of its costs and expenses, including all reasonable attorneys' fees recoverable under Texas Civil Practice and Remedies Code §§

38.001 and 134.005(b), the Copyright Act, the Lanham Act, Texas common

law, or any other applicable law or rule; and

s)  an award of statutory damages to Conradical under Texas Civil Practice and

Remedies Code § 134.005(a)(1);

t)  an award of punitive damages to Conradical on its Texas common-law

claims; and

u)  an award to Conradical of pre-judgment and post-judgment interest; and

such other and further relief as the Court deems just and equitable.

### *Jury Demand*

Conradical demands a trial by jury on all matters and issues properly tried to a

jury pursuant to Federal Rules of Civil Procedure 38 and 39 and other applicable state

and federal law.

Dated: December 15, 2023                    Respectfully submitted,

*/s/ Arthur Gollwitzer III*
Arthur Gollwitzer III
Texas Bar No. 24073336
agollwitzer@jw.com
JACKSON WALKER LLP
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: 512.236.2268
Facsimile: 512.236.2002

**Attorneys for Defendants /
Counterclaim-Plaintiff Conrad
Grindheim Borrell and
Conradical Sàrl**

## <u>Certificate of Service</u>

I, Arthur Gollwitzer III, an attorney of record in this matter, hereby certify that on December 15, 2023, I electronically filed the following document:

### <u>Defendants' Second Amended Answer, Affirmative Defenses, and Counterclaims in Response to Digerati Distribution & Marketing, LLC's First Amended Complaint</u>

with the Clerk of the United States District Court for the Western District of Texas, Austin Division, using the CM/ECF system, which will send notification and a copy of this filing to the following counsel of record:

James H. Creedon
Christian Cowart
Creedon PLLC
5 Cowboys Way, Suite 300
Frisco, Texas 75034
Tel: 972-850-6864
Fax: 972-920-3290
Email:     jhcreedon@creedon.com
           ccowart@creedon.com


By:   */s/ Arthur Gollwitzer III*
       Arthur Gollwitzer III