## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## DIVISION

| | | |
|---|---|---|
| **DIGERATI DISTRIBUTION &** | § | |
| **MARKETING, LLC,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CONRADICAL SÀRL; and** | § | |
| **CONRAD GRINDHEIM** | § | |
| *Defendant* | § | **No.  1:22-cv-1302-DH** |
| | § | |
| **CONRADICAL SÀRL,** | § | |
| *Counter Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DIGERATI DISTRIBUTION &** | § | |
| **MARKETING, LLC; BIG SUGAR** | § | |
| **LLC; and SARAH ALFIERI,** | § | |
| *Counter Defendants.* | § | |

## <u>ORDER</u>

Before the Court is Counter-Defendant Sarah Alfieri's Motion to Dismiss, Dkt.
24; and all related briefing. After reviewing these filings and the relevant case law,
the undersigned grants in part and denies in part the motion.

## I.      BACKGROUND

This case arises out of a business dispute between Digerati, a video game
publisher, and Conradical, a video game developer. Dkt. 2, at 1. In 2021, Digerati and
Conradical entered into a Video Game Licensing Agreement (the "Licensing

1

Agreement") under which they worked together to develop and publish the game, *The Outbound Ghost*. *Id.* at 5-15; Dkt. 2-1. *The Outbound Ghost*'s development and release were hampered by persistent issues requiring "patches" to the game, spawning public statements from both Digerati and Conradical. Dkt. 2, at 10-14. On November 29, 2022, Conradical sent a Breach of Contract Notice to Digerati identifying several issues with the game. *Id.* at 15; Dkt. 2-2, at 2. As relevant here, Conradical stated it was terminating the Licensing Agreement for material breaches of contract and because of a "change in control" at Digerati. Dkt. 2-2, at 3. The "change in control" refers to the death of Nick Alfieri, husband of Sarah Alfieri, and Digerati's CEO and co-founder. *Id.* As to the death of Nick Alfieri and the resulting "change in control," Conradical stated:

> the tragic and unexpected passing of Mr. Nick Alfieri, founder and CEO of the Publisher, has resulted in a severe change of circumstances affecting the Contract. One of the main reasons by which the Developer decided to work with the Publisher in connection with the distribution of the Licensed Game was the Developer's trust in Mr. Alfieri's experience and skill in this industry, and his unfortunate demise has had a noticeable impact in the Publisher's situation and their ability to properly distribute the Licensed Game and otherwise perform its obligations under the Contract.

*Id.*

In its Breach of Contract Notice, Conradical also requested past-due payment, cessation of future console launches, and a ban on Digerati's public communications about the game. *Id.* at 4. If Digerati did not comply, Conradical warned it would "initiate formal legal proceedings against [Digerati]." *Id.*

Despite the Breach of Contract Notice terminating the Licensing Agreement, *The Outbound Ghost* was released on PlayStation and Switch. Dkt. 2, at 16.

Conradical apparently condoned these releases by posting on Twitter on November 30, 2022, promoting the releases, and thanking customers for the "incredible reception." *Id.* However, the very next day Conradical disavowed the PlayStation and Switch versions of *The Outbound Ghost* posting that it "never wanted [this] version of the game to come out but due to circumstances out of [its] control, this is the one that was released." *Id.* Conradical also told players of the game via Twitter that it "was not able to test [the game] [and was] [n]ot sure who was responsible for testing, probably someone hired by [Digerati]." *Id.*

On December 4, 2022, Digerati formally responded to Conradical's Breach of Contract Notice by issuing a "Reminder of [Conradical's] Obligations [Under the] Licensing Agreement and Demand for Retraction and Clarification of Defamatory Statements." Dkt. 2-3, at 2. Conradical responded by disputing any defamatory statements and reiterating the contractual breaches enumerated in its Breach of Contract Notice. Dkt. 2-4, at 1-8. Conradical again deemed the Licensing Agreement terminated. *Id.* at 8. On December 8, 2022, Conradical modified the Steam page for *The Outbound Ghost* by posting: "This game is no longer authorized by the developer." Dkt. 2, at 18.[1] Steam removed the game due to an ownership dispute between the parties. *Id.* at 19. Conradical and Digerati then filed competing registrations of the game with the U.S. Copyright Office, and Conradical issued more takedown notices pursuant to the Digital Millenium Copyright Act ("DMCA"). *Id.* at 20.[2] Though

---

[1] Steam is a video game distribution platform.

[2] A "takedown notice" is a notice of copyright infringement that is used by a copyright holder to request that their work be removed from a website or online platform.

Digerati provided counter-notices requesting reinstatement of the game, most of *The Outbound Ghost*'s publication platforms ceased distribution. *Id.*

To settle the copyright ownership dispute between the parties and resolve alleged breaches of the Licensing Agreement, Digerati seeks declaratory judgment as to the transfer of certain exclusive copyrights and licensing rights related to the game, the non-termination of the Licensing Agreement, and Digerati's non-infringement of certain copyrights. Dkt. 2, at 22-24. Digerati also brings a claim for misrepresentation under the DMCA and breach of contract against Conradical, and a claim for business disparagement and defamation against Defendant Conrad Greim, Conradical's owner. *Id.* at 25-30. Conradical responds with counterclaims for breach of contract, copyright infringement, trademark infringement/unfair competition, fraud, unjust enrichment, defamation, violation of the Texas Theft Liability Act, and money had and received. Dkt. 21, at 51-60.

At issue before the Court is Conradical's claim for defamation. Conradical alleges that in a video statement posted to Digerati's Twitter account on December 9, 2022, Sarah Alfieri made several statements concerning "Conradical's services, Conradical's complaints to Digerati, and the existence and nature of Conradical's grounds for terminating the Licensing Agreement" that are "false or create a substantially false impression." *Id.* a 57.[3] The specific statements at issue are:

> a. "We've been blindsided by the sudden negativity from Conrad, the game's developer."

---

[3] Alfieri's publication can be viewed here:
https://twitter.com/DigeratiDM/status/1601245863979859968

b. "Until literally hours before the console launch, we had enjoyed a cooperative and mutually pleasant working relationship with Conrad, and we saw no indication of any dissatisfaction on his part."

c. "Unfortunately, [Conrad] has now wrongly told us he is terminating our contract, even going so far as attempting to use the tragic and sudden death of my husband as grounds for termination."

d. "In addition, Conrad has unlawfully tampered with the Steam page and attempted to take down the console versions as well."

e. "We are actively trying to make improvements and release patches and have been met with repeated attempts to sabotage our efforts and sully our name."

*Id.* at 47-48.

Conradical alleges that when Alfieri published her statements, she had knowledge of events that render the statements false and defamatory. *Id.* Specifically, as to statement (a), Conradical states it raised quality issues with the game to Digerati several times such that Alfieri's contention that she was "blindsided by sudden negativity" is "demonstrably false." *Id.* at 48. As to statement (c), concerning Conradical's termination of the Licensing Agreement, Conradical claims Alfieri "had knowledge that Conradical terminated the Licensing Agreement because of … material breaches by Digerati" and not because of the death of Nick Alfieri. *Id.* at 57. As to statement (e), Conradical claims it was not trying to "sabotage" *The Outbound Ghost. Id.* at 48-49. To the contrary, Conradical states it was working with Digerati to address quality problems until it terminated the Licensing Agreement on November 29, 2022. *Id.* Lastly, Conradical claims that the gist of Alfieri's publication is defamatory because it conveys that "Conradical took money from crowdsourcing individuals and from Digerati to develop the game, said nothing negative to Digerati

about quality issues, and then blindsided Digerati by taking down the game and using Alfieri's husband's death as an excuse, while preventing Digerati from improving the game." *Id.* at 51. Conradical contends that a person of ordinary intelligence would perceive Alfieri's statement as conveying that "Conradical undermined the game without a good faith basis." *Id.* Conradical claims its reputation has been damaged and that it has suffered actual damages, humiliation, and embarrassment. *Id.* at 58.

Alfieri moves to dismiss Conradical's defamation claim arguing: (1) Conradical cannot sue Alfieri in her individual capacity because it has not alleged Alfieri personally engaged in defamatory conduct; (2) Alfieri's statements characterizing Conradical's conduct and making legal contentions are unactionable opinions; (3) no reasonable person could consider the statements in the publication to be defamatory; and (4) Conradical has admitted facts that make the allegedly defamatory statements literally or substantially true. Dkt. 24, at 6-7.

## II.      LEGAL STANDARD

### A.      12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the

plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely

granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III.   DISCUSSION

Under Texas law, to prevail on a defamation claim, a plaintiff must establish that: "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement; and (4) damages (unless the statement constitutes defamation per se)." *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)).

When a challenged publication involves a matter of public concern, the plaintiff must point to evidence that would allow a factfinder to conclude that the challenged statements are false— "that is, that the gist of the statements was not substantially true." *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 711 (Tex. 2016). To determine the gist of an allegedly defamatory publication, courts are instructed to "construe the publication as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *D Mag.*, 529 S.W.3d at 434 (quotations omitted). "It is well settled that the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (quotations omitted). And whether a publication is "defamatory," even if assumed to be false, is a matter of law for the Court. *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987) ("The

threshold question then, which is a question of law, is whether [the challenged] statements are reasonably capable of a defamatory meaning."). Finally, "[a] defamatory statement is one that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020) (cleaned up).

### A.   Whether Alfieri can be sued in her individual capacity

As a threshold issue, Alfieri raises whether she can be sued directly in her individual capacity. Dkt. 24, at 6. Via footnote she suggests that she can't be sued directly as the owner of a limited liability company unless Conradical pierces the corporate veil. *Id.* at 12. Alfieri contends the counterclaim lacks "factual allegations showing her personal engagement in the defamatory conduct or a basis to support piercing the corporate veil." *Id.*

Under Texas law, owners of limited liability companies are not liable for the torts of the entity, unless the plaintiff can allege some basis for piercing the corporate veil. *See Hong v. Havey*, 551 S.W.3d 875, 885 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Bates Energy Oil & Gas v. Complete Oildfield Svcs.*, 361 F. Supp. 3d 633, 665 (W.D. Tex. 2019). However, a corporate agent or employee is "personally liable for tortious acts which he directs or participates in during his employment." *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1985) (recognizing rule and holding employee individually liable for penning a libelous letter in the course and scope of his employment); *see also Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002)

(noting Texas's longstanding rule that a corporate agent is personally liable for his own fraudulent or tortious acts); *Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex. App.—Corpus Christi 2002, pet. denied) ("The law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation.").

Here, Conradical alleges that the defamatory statements were made by Alfieri herself. Dkt. 21, at 57 (Conradical's Second Amended Answer and Counterclaims stating: "Ms. Alfieri made these false and defamatory statements with malice or intentionally or, alternatively, by negligently failing to ascertain or state the truth."). Alfieri does not deny making the statements. Dkt. 24, at 7 (Alfieri's Motion to Dismiss stating: "in the video, Ms. Alfieri made statements, including....") Conradical, therefore, sufficiently alleges that Alfieri herself engaged in allegedly tortious conduct such that she can be held individually liable.

### B.    Whether Conradical Has Stated a Claim for Defamation Per Se or Per Quod

The next issue is whether Conradical has stated a claim for defamation per se or per quod which affects Conradical's burden to plead damages. *In re Lipsky*, 460 S.W.3d at 596. Whether a statement qualifies as defamation per se or per quod is generally a question of law. *Id.* A statement is considered defamation per se if, on its face, it falls within one of the following four categories: (1) it falsely charges a person with the commission of a crime, *see, e.g.*, *Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984); (2) it falsely imputes that a person has a loathsome disease, *see, e.g.*, *Memon v. Shaikh*, 401 S.W.3d 407, 421 (Tex. App.—Houston [14th

Dist.] 2013, no pet.); (3) it falsely imputes sexual misconduct, *see, e.g.*, *id.*; or (4) it injures a person in their office, profession, or occupation, *see, e.g.*, *Bedford v. Spassoff*, 520 S.W.3d 901, 905 (Tex. 2017). Damages are presumed if the publication is defamation per se. *In re Lipsky*, 460 S.W.3d at 596. If a challenged publication is determined to be defamation per quod, however, damages must be proven as an element of the claim.

Alfieri argues that the publication at issue is not defamatory per se "because it does not falsely assert any of the four categories, namely a crime a loathsome disease, any sexual misconduct, or any professional injury." Dkt. 24, at 12. She contends that her publication pertains only to the nature of Conradical's actions and does not impute corporate fraud, deceit, or dishonesty as required for the "office, profession, or occupation" category of defamation per se statements. Dkt. 34, at 4. Therefore, damages should not be presumed, and Conradical must allege specific damages. *Id.*

Conradical responds that Alfieri's statements do fall within the category of statements injuring "a person, their office, profession, or occupation." Dkt. 33, at 15. Specifically:

> Alfieri's defamatory statements assert Conradical never expressed dissatisfaction with the game, used her husband's death as an excuse to terminate the contract, unlawfully prevented the distribution of the game, and sabotaged efforts to fix the game. On top of that, Alfieri contextualized these statements by reminding Digerati's followers that Conradical was given money to develop the game by crowdsourcing and Digerati. In other words, Alfieri claimed Conradical took people's money, never complained about problems with the game, made a fake excuse to terminate the license, and torpedoed the game.

*Id.*

11

Turning to Conradical's pleadings, Conradical has pleaded Alfieri's publication was defamatory because:

> it conveys that Conradical took money from crowdsourcing individuals and from Digerati to develop the game, said nothing negative to Digerati about quality issues, and then blindsided Digerati by taking down the game and using Alfieri's husband's death as an excuse, while preventing Digerati from improving the game.

Dkt. 21, at 51.

Conradical claims Alfieri's statements further imply that "Conradical undermined the game without a good faith basis." *Id.* Conradical alleges Alfieri's statements "harm[ed] Conradical's reputation[,] impeach[ed] Conradical's honesty," and caused "pecuniary losses in the form of lost sales with respect to *The Outbound Ghost* and harm to its business reputation." *Id.* at 58.

The Court finds that Conradical has pleaded that the statements injured its profession or occupation and that Conradical has therefore pleaded defamation per se. *See* Restatement (Second) of Torts § 573 (1977) ("Statements concerning merchants that question their solvency or honesty in business come within the rule stated in this Section, as do statements charging any other quality that would have a direct tendency to alienate custom."). Therefore, Conradical is not required to plead specific damages.

### C.    Whether the Statements and Gist are Plausibly Defamatory

#### 1.    The statements

##### a.    Statements (a) and (b)

Alfieri argues that statements (a) and (b) are not capable of defamatory meaning because they constitute a "classic opinion," and no reasonable person of

12

ordinary intelligence would find they injure Conradical's reputation. Dkt. 24, at 14. Alfieri argues "[a]t most, these statements implicitly reflect a lack of clean communications between the parties; however, poor communication is not defamatory." *Id.* Conradical responds that in the months leading up to Alfieri's publication, Conradical continually informed Digerati of quality control issues with *The Outbound Ghost* and warned Digerati that its missteps were harming Conradical's reputation. Dkt. 33, at 11. Therefore, Alfieri's statements that she was "blindsided," found Conradical's negativity "sudden," and saw no indication of dissatisfaction are false and defamatory. *Id.* Conradical argues that even if Alfieri was not personally aware of ongoing issues with the publication of *The Outbound Ghost*, she "negligently or recklessly failed to ascertain or state the truth" and she "knew or should have known her statements are false." *Id.*

For a statement to be actionable in a defamation claim, the statement must "assert an objectively verifiable fact, rather than an opinion[.]" *Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App.—Dallas 2015, no pet.) (citation omitted); *see also Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018) (requiring that a statement be "verifiable as false" to support a defamation claim (citation omitted)). "Thus, statements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are opinions." *Dall. Morning News*, 554 S.W.3d at 639 (citation omitted); *see also Jones v. Compass Bancshares Inc.*, 339 F. App'x 410, 412 (5th Cir. 2009) (per curiam) (holding that a "vague and subjective" statement is

13

"incapable of being defamatory"). "Whether a statement is an opinion is a question of law." *Dall. Morning News*, 554 S.W.3d at 639 (citation omitted).

The Court finds that statements (a) and (b) concern Alfieri's subjective view of the relationship between Conradical and Digerati. Whether one party's "negativity" is sudden to the point of being blindsiding, whether the parties' relationship as they worked to develop and publish the game was "cooperative and mutually pleasant," and whether Alfieri saw an indication of dissatisfaction are issues that are not verifiable as false.[4] Because Alfieri's views of the working relationship between the parties is not susceptible to a determination of truth or falsity, statements (a) and (b) are not actionable as defamatory statements. *Berrios v. Cox*, No. EP-23-CV-63-KC, 2024 WL 89453, at *3 (W.D. Tex. Jan. 8, 2024) ("[A] defamatory statement is one that is both injurious to one's reputation and 'sufficiently factual to be susceptible of being proved true or false.'" (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990)).

b.      Statement (c)

Alfieri next argues that statement (c) is not actionable because Conradical has admitted it was required to provide written notice and an opportunity to cure before terminating the Licensing Agreement and does not plead that it provided such notice. Dkt. 24, at 15. Therefore, Alfieri's statement that Conradical "wrongly" terminated

---

[4] *Compare Berrios v. Cox*, No. EP-23-CV-63-KC, 2024 WL 89453, at *3 (W.D. Tex. Jan. 8, 2024) (finding statements were concrete enough to "be susceptible to a determination of their veracity" where the sender of an email made a series of allegations of misconduct by the plaintiff, for example, that a retention board recommended plaintiff "be removed from the Army Reserves"; that plaintiff "misled her superiors in the Border Patrol about th[e retention] board result"; that plaintiff "was [c]riminally titled in the Army Reserves ... for abusive sexual contact with a subordinate"; and that plaintiff "made false official statements" and "provided false information to the state of Colorado").

the Licensing Agreement is supported by Conradical's admissions. *Id.* Alfieri further argues that Digerati did cite the death of Nick Alfieri as a reason for terminating the Licensing Agreement; therefore, her statement is "not capable of a defamatory meaning by a reasonable person, and at a minimum, [is] substantially true." *Id.*

Conradical responds that statement (c) is "false by implication" and the pleadings indicate that a "growing frustration coupled with Digerati's breach of the Licensing Agreement's quality requirements" resulted in "proper termination of [the] agreement." Dkt. 12, at 19. Conradical further argues that "the fact that [Nick Alfieri]'s death may have contributed to Digerati's quality control issues does not mean that Conradical terminated the license because of the sudden death of [Nick Alfieri] in and of itself." Dkt. 33, at 12. Conradical states that Alfieri's statement is defamatory because they falsely imply "Conradical did not terminate based on Digerati's breaches of the Licensing Agreement. *Id.*

At the heart of statement (c) is Alfieri's contention that Conradical "wrongly" terminated the Licensing Agreement and a claim that Conradical was "attempting to use the tragic and sudden death of [Nick Alfieri] as grounds for termination." Dkt. 21, at 47-48. To the extent Alfieri characterized Conradical's termination of the Licensing Agreement as wrongful, she stated a legal opinion about whether the Licensing Agreement was terminable as opposed to a verifiable factual assertion. Where the parties dispute whether Alfieri's characterization is a correct statement of law, the statement is not an appropriate basis for a defamation claim. *Hellmuth v. Efficiency Energy, L.L.C.*, No. CV H-14-2945, 2016 WL 642352, at *3 (S.D. Tex. Feb.

18, 2016) ("The correctness of a party's opinion on an undecided legal issue, however, is not an appropriate basis for a defamation … action"); *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 383 (Tex. App—Houston [1st Dist.] 2005, no pet.) (explaining that, to support a defamation claim, a statement must contain false, defamatory facts, rather than mere opinions or characterizations).

As to the second part of Alfieri's statement concerning Conradical's "attempting to use the tragic and sudden death of [Nick Alfieri] as grounds for termination," Conradical argues that the assertion is defamatory because Conradical terminated the Licensing Agreement based on breaches of the Licensing Agreement, not the death of Nick Alfieri. Dkt. 33, at 12. Alfieri responds that the statement concerning Nick Alfieri's death is substantially true. Dkt. 24, at 15.

A showing by the defendant of substantial truth will defeat a plaintiff's defamation claim. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex. 1990). The "substantial truth doctrine precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in details." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). "The test used in deciding whether a broadcast [or publication] is substantially true involves consideration of whether the alleged defamatory statement was more damaging to [the plaintiff's] reputation, in the mind of the average listener [or reader], than a truthful statement would have been." *McIlvain*, 794 S.W.2d at 16.

Here, the record reveals that Alfieri's statement is substantially true. Conradical did terminate the Licensing Agreement, in part, because of the death of

Nick Alfieri and the resultant change in control at Digerati. As noted above, Conradical's Breach of Contract Notice stated Conradical was terminating the Licensing Agreement because of a "change in control" after the death of Nick Alfieri. Dkt. 2-2, at 2. As explained by Conradical in its Breach of Contract Notice, Nick Alfieri's "unfortunate demise [had] a noticeable impact [on] the [Digerati]'s situation and ability to properly distribute [*The Outbound Ghost*] and otherwise perform its obligations under the contract." *Id.* at 3. Based on this record, the Court finds that Alfieri's allegedly defamatory statement is no more damaging to Conradical's reputation than a truthful statement would have been. Therefore, Alfieri has made a showing of substantial truth defeating the defamation claim to the extent it is based on Alfieri's statement about Conradical's using the death of Nick Alfieri as the basis for terminating the Licensing Agreement.

The Court finds that the context of statement (c) supports the conclusion that the statement is both not objectively verifiable and a true statement of the events that occurred between the parties. Therefore, the statement is not an actionable basis for Conradical's defamation claim.

### c. Statement (d)

As to statement (d), Alfieri argues that the statement is not plausibly false because the record shows that Conradical indicated its approval of the version of *The Outbound Ghost* posted to Steam yet has admitted that it modified the Steam page to say the version of the game was "no longer authorized." Dkt. 24, at 16. Alfieri argues the facts on the face of the counterclaim support her statement that

Conradical "unlawfully tampered with the Steam page and attempted to take down the console versions as well," warranting dismissal of a defamation claim based on statement (d). *Id.* Conradical admits that it modified the Steam page and published takedown notices but denies that its postings were unlawful. Dkt. 33, at 13.

As with statement (c), in statement (d) Alfieri is expressing a legal opinion as to the lawfulness of Conradical's postings, and thus, the statement is not an actionable basis for Conradical's defamation claim.

> d.    Statement (e)

Lastly, as to statement (e), Alfieri argues that Conradical has alleged facts demonstrating that statement (e) pertains to another party (Nintendo), not Conradical, and is therefore not actionable. Dkt. 24, at 17. Specifically, Alfieri argues that two statements in the pleadings prove Nintendo was the subject of statement (e). The first is Digerati's December 4, 2022, statement that "the patch … is still in approval with Nintendo and should be released in the coming weeks." *Id.* The second is Conradical's statement that "Digerati ha[d] not made any material changes to *The Outbound Ghost* since at least December 13, 2022." *Id.* Somehow, Alfieri claims, these statements prove Nintendo is the subject of statement (e) concerning attempts to sabotage Digerati's patches to the game. *Id.*

Conradical responds first by arguing that statement (e) is false because Conradical "could not have attempted to sabotage Digerati's efforts to make improvements to the game because Digerati never made any such effort ...." Dkt. 33, at 12. Conradical next responds that "[n]othing suggests a reasonable viewer would

interpret the 'sabotage' statement, in the context of a two-minute video about Conradical, to refer to Nintendo." *Id.*

The Court agrees with Conradical. Viewing the statement within the context of Alfieri's video addressing *The Outbound Ghost* and Digerati's relationship with Conradical, a reasonable viewer would interpret the statement as an implicit reference to Conradical. *Tatum*, 554 S.W.3d at 626-631 (defining defamation by implication as a subset of textual defamation that occurs "[w]hen a publication implicitly communicates a defamatory statement" and stating that in cases of defamation by implication "the judge's task is to determine whether the implication the plaintiff alleges is among the implications that the objectively reasonable reader would draw"). Further, because the statement asserts Conradical "sabotaged" efforts to fix the game, and both parties seemingly agree that Conradical did not attempt to sabotage Digerati's efforts, the statement is defamatory. *Innovative Block of S. Tex., Ltd.*, 603 S.W.3d at 417 ("[a] defamatory statement is one that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." (cleaned up). Statement (e) is therefore an actionable basis for Conradical's defamation claim.

2.     The gist

Alfieri moves to dismiss Conradical's defamation claim based on the gist of the publication arguing that no reasonable person would conclude the gist as: "Conradical undermined the game without a good faith basis." Dkt. 24, at 19. She claims, instead, that the only reasonable interpretation is that "Digerati is responding to negativity

from Defendants." *Id.* Conradical disputes this interpretation, arguing that the entirety of the video "is dedicated to a false narrative that Conradical took money from Digerati and crowdsourcing to develop the game and then torpedoed the game in bad faith using Alfieri's husband's death as an excuse." Dkt. 33, at 13. The Court agrees with Conradical as to the meaning of the gist of Alfieri's publication.

Much of Alfieri's argument lies in her contention that it would be clear to a reasonable viewer that her publication is a response to "negativity" and "public statements" from Conradical. Dkt. 34, at 10. However, in the video Alfieri does not claim she is responding to Conradical, nor does she cite any public statements from Conradical. A reasonable viewer would not have context in which to understand Alfieri's publication as a mere response. Next, Alfieri argues that the gist of the publication is not plausibly defamatory because no reasonable person would understand "statement (e)'s use of 'sabotage' with respect to '[Digerati's] efforts,' as implying that Conradical intentionally sabotaged *The Outbound Ghost* in bad faith." *Id.* However, the Court has found that statement (e) could be plausibly understood to refer to Conradical and that the use of the word "sabotage" with respect to Conradical's actions is defamatory. Thus, Alfieri's arguments concerning Conradical's proposed gist fail.

The Court finds that the gist of Alfieri's publication has a plausibly defamatory meaning, and the publication is therefore actionable. *See, e.g.*, *Turner*, 38 S.W.3d at 115 (concluding "a plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a

substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way").

\*       \*       \*

Alfieri's Motion to Dismiss, Dkt. 24, is **GRANTED** with respect to statements (a), (b), (c), and (d), and **DENIED** with respect to statement (e) and the gist of the publication. Conradical's defamation claim on the basis of statement (e) and the gist of the publication may proceed.

SIGNED March 20, 2024.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE

21